STEPHEN W MANNING, OSB No. 013373
stephen@innovationlawlab.org,
smanning@ilgrp.com
TESS HELLGREN, OSB No. 191622
tess@innovationlawlab.org
JORDAN CUNNINGS, OSB No. 182928
jordan@innovationlawlab.org
KELSEY LYNN PROVO, OSB No. 145107
kelsey@innovationlawlab.org
NELLY GARCIA ORJUELA, OSB No. 223308
nelly@innovationlawlab.org
INNOVATION LAW LAB
333 SW 5th Ave., Suite 200
Portland, OR 97204-1748
Telephone: +1 503-922-3042

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## EUGENE DIVISION

| | |
|---|---|
| CLEAR CLINIC and PINEROS Y CAMPESINOS UNIDOS DEL NOROESTE, <br><br> *Plaintiffs,* <br><br> v. <br><br> KRISTI NOEM, Secretary of the Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY ("DHS"); TODD LYONS, Acting Director of Immigration Customs Enforcement; CAMMILLA WAMSLEY, Seattle Field Office Director, Immigration and Customs Enforcement and Removal Operations; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT ("ICE"); PETE FLORES, Acting Commissioner of Customs and Border Protection; and U.S. CUSTOMS AND BORDER PROTECTION ("CBP"), <br><br> *Defendants.* | Case No. 25-1906 <br><br><br> DECLARATION OF ALENA A. TUPPER IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER |

**DECLARATION OF ALENA A. TUPPER, EXECUTIVE DIRECTOR OF CLEAR CLINIC**

I, Alena (Leni) A. Tupper, upon my personal knowledge, hereby declare under penalty of perjury as follows:

1. I am over the age of 18 and make this declaration based upon my personal knowledge.

2. I am a licensed attorney and member in good standing of the Oregon State Bar; I am also admitted to practice before the United States Court of Appeals for the Ninth Circuit.

3. I am the Founder and Executive Director of the CLEAR Clinic. The CLEAR Clinic is a legal services nonprofit that provides free legal services in the areas of immigration justice, criminal & court record relief, and housing justice. We provide immigration legal services as part of our core mission and business activities and have done so since our founding as part of Portland Community College (PCC) in 2020. We are now a separate, independent 501(c)(3) tax-exempt nonprofit corporation. Our mission is to provide free legal services to Oregonians to reduce the legal barriers to success and full participation in our community.

4. I have been the CLEAR Clinic Director since the founding of the organization. My responsibilities as Executive Director include managing operations for the organization, including immigration legal operations; initiating, developing, and shaping the organization's advocacy priorities to meet the needs of our client communities; determining practice areas and resource allocation; providing programmatic leadership across practice areas to ensure impactful, efficient, high-quality, client-centered services; and directing programs, including planning, staffing, and implementation to align with the organization's mission and vision.

5. I have extensive experience in immigration law and the direct representation of immigrants in removal proceedings, including people in immigration detention. I worked as an attorney advisor at the Portland Immigration Court through the U.S. Department of Justice's Attorney General Honor's Program from 2010-2012 and then as an immigration lawyer practicing removal defense at a private law firm from 2012 to late 2016. In 2016, I became full-time faculty in the Paralegal Program at PCC, where I continue to teach part time. At PCC I have taught immigration law, among other courses, and developed the Paralegal Program's first clinical courses, in which students obtain hands-on legal experience by providing free legal assistance to the community in high-need areas, including immigration law. The PCC clinical program offered free legal clinic events in the community and soon obtained funding to provide ongoing services. The CLEAR Clinic arose from this program and has continued to grow since becoming independent from PCC.

DECLARATION OF ALENA TUPPER ISO PLAINTIFFS' MOTION FOR TRO

6. At the CLEAR Clinic, I currently supervise an immigration staff of 16 people: nine immigration attorneys and seven non-attorney staff members. We provide legal services in approximately 1,000 immigration cases each year.

**CLEAR Clinic's Immigration Programming & Involvement in a Rapid Response Network**

7. The CLEAR Clinic provides free, low-barrier legal services to our community members, including immigration legal needs. Our immigration legal services program includes both limited-scope and full-scope legal services for people in removal or deportation proceedings in Oregon, including Oregonians detained at the Northwest Immigration Processing Center (NWIPC) in Tacoma, Washington; DACA renewals and other limited-scope legal services for DACA recipients; and limited-scope immigrant-worker related legal services including broad-scale work permit requests and renewals.

8. The CLEAR Clinic prioritizes providing immigration legal services to people at greatest risk of deportation and detention. I know firsthand, as a former attorney advisor in immigration court, as well as through my experience as a deportation defense attorney and in my role as the CLEAR Clinic Director, that legal representation can mean the difference between securing release from detention and succeeding on an application for an immigration benefit and facing prolonged detention and deportation to an often dangerous situation. Immigrants with legal representation are far more likely to be released from immigration detention and succeed in their removal defense than those who are unrepresented. According to an American Immigration Council study, 63% of non-detained represented immigrants were granted relief in immigration court, while only 13% of unrepresented immigrants were granted relief. (*see* Ingrid Eagly & Steven Shafer, *Access to Counsel in Immigration Court*, American Immigration Counsel (September 28, 2016), https://www.americanimmigrationcouncil.org/report/access-counsel-immigration-court/). And tellingly, immigrants appearing before the Portland Immigration Court without legal representation are nearly four times more likely to lose their cases and face deportation than those who have an attorney, while those who are fighting their case from detention without an attorney are more than 17 times more likely to be ordered removed. (*see* TRAC Immigration, *Outcomes of Immigration Court Proceedings*, https://tracreports.org/phptools/immigration/closure/). Because we know the difference that legal representation can make for our most vulnerable community members, the CLEAR Clinic has prioritized serving immigrant Oregonians at greatest risk of deportation and ICE detention.

9. When community members in Oregon are detained by ICE, they are transferred out of state to the NWIPC in Tacoma, Washington, or to other detention locations. Based on my previous immigration legal experience, once a person is transferred from the Portland ICE field office to another detention location, those individuals can be difficult to locate,

difficult to access, and their deportation proceedings are streamlined. Additionally, it has become increasingly difficult and almost impossible for detained individuals to secure release from detention on bond, which means those who are transferred out of state and detained must fight their deportation from detention.

10. In 2025, under the current Presidential administration, immigrant communities in Oregon have seen a massive increase in ICE detentions. Before spring 2025, it was rare that CLEAR Clinic attorneys needed to provide rapid response and intervention at the Portland ICE field office, or for community members arrested by ICE in the community. Since about June 2025, however, CLEAR Clinic attorneys have had to go regularly to the Portland ICE field office to provide legal screenings and advice to current and prospective clients detained by ICE. Most of this rapid response legal work is in response to the unforeseen detention of community members, meaning that CLEAR Clinic attorneys are pulled from other existing casework and pre-planned responsibilities in order to travel to the Portland ICE field office to serve individuals' legal needs given the risk of rapid transfer out of the state. Accordingly, the CLEAR Clinic has had to make concerted efforts to shift its resources to solidify our rapid response legal work for individuals detained by ICE, as well as our relationships with community-based organizations and individuals engaging in the larger community defense rapid response efforts.

11. Since ICE detentions increased in spring 2025, Oregon has developed a dedicated rapid response network of community-based immigrant justice organizations, volunteers, organizers, and lawyers. CLEAR Clinic is part of Oregon's rapid response system for ICE detentions and provides free legal screenings and advice to anyone detained by ICE in Oregon. A state-wide rapid response hotline receives hundreds of calls every month reporting suspected ICE raids, ICE detentions, and other immigration enforcement activity. When ICE enforcement actions are suspected, hotline dispatchers deploy legal observers to verify the ICE activity, and when ICE enforcement actions are verified, hotline dispatchers deploy rapid response legal intervention by immigration attorneys, including CLEAR Clinic attorneys. This rapid response network also directly connects immigrants reporting to ICE for in-person check-ins at the Portland ICE field office with rapid response legal intervention, which includes CLEAR Clinic attorneys.

12. Any community member detained by ICE in Oregon is eligible for free legal services through this rapid response system. Accordingly, any community member detained by ICE is a prospective client of the CLEAR Clinic. The rapid response legal services we provide consist of a comprehensive legal screening and analysis and can include full or limited-scope representation on immigration applications, petitions, and litigation challenging detention. These legal services also include advocacy to secure the

DECLARATION OF ALENA TUPPER ISO PLAINTIFFS' MOTION FOR TRO
Page 4

community member's release from ICE custody prior to transfer to an out-of-state immigration detention center.

13. The attorneys at the CLEAR Clinic who engage in rapid response efforts include an attorney with over ten years of immigration law experience, including significant representation of individuals detained by ICE; immigration lawyers with two to three years of immigration law experience focused on removal defense who received extensive training through an immigration law fellowship; and a newer immigration attorney with a background as a public defender and substantial experience representing detained clients in various settings.

**CLEAR Clinic's 2025 Rapid Response Legal Services**

14. All CLEAR Clinic immigration attorneys are trained in how to conduct comprehensive legal screenings for immigration relief options and how to assess potential issues in clients' cases. CLEAR Clinic attorneys screen for dozens of different forms of immigration relief options, including citizenship, eligibility for permanent residence, eligibility for various forms of relief for victims of crime or human trafficking, eligibility for asylum and other forms of humanitarian protection, and other lawful immigration pathways. These immigration legal screenings are intended to assess pathways for relief from removal or deportation and avoid ongoing detention whenever possible.

15. As part of our role in Oregon's rapid response efforts, our lawyer-responders are trained to conduct these comprehensive legal screenings for people detained by ICE. Our rapid response legal screenings are not that different from the typical legal screenings conducted at our office. We have, over the years, conducted hundreds of free comprehensive immigration legal screenings for non-citizens in Oregon. The difference in the rapid response context is that our lawyers provide (or attempt to provide) the screening on site at an ICE facility in Oregon and engage in advocacy to secure a client's release from ICE custody prior to transfer out of state. It is even more crucial now that clients receive this screening and speak with an attorney before their transfer because of this administration's practice of moving people rapidly to detention centers in remote states, to Guantanamo Bay, or even to prisons in distant countries they have never been to.

16. Thorough immigration legal screenings typically take about an hour, due to the variety of pathways to relief, as well as any inadmissibility and other issues we screen for. In the detained context, we are also screening for and considering opportunities for advocacy to request release from the Portland ICE field office on Macadam before ICE out-of-state transfer. This means we are screening for equities and discretionary factors, as well as all legal pathways to relief. For clients and prospective clients detained at the Portland ICE

DECLARATION OF ALENA TUPPER ISO PLAINTIFFS' MOTION FOR TRO
Page 5

field office, even when we are able to conduct a legal screening, ICE gives our attorneys, at most, 30 minutes of meeting time. This prevents our attorneys from conducting the legal screening in the thorough manner that we normally would.

17. All CLEAR Clinic attorneys are trained to provide trauma-informed legal care. Most of our clients have suffered trauma, ranging from severe persecution in their home countries to poverty, discrimination, racial profiling, and in some cases, violence during their detention by ICE. In many cases, such as for asylum claims, the pathway to immigration status and relief from removal is directly tied to the trauma a person has suffered. In order to conduct thorough and effective immigration legal screenings, CLEAR Clinic attorneys need to be able to talk to clients about those traumas. Thus, to provide effective, trauma-informed legal services, our attorneys need to meet with clients in person, in a confidential setting, for a minimum of one hour, for a thorough and effective immigration legal screening. Having enough time to take this trauma-informed approach to an immigration legal screening is particularly important in the detained context, in which individuals are often distraught and may be retraumatized by their incarceration, impacting their ability to focus and engage in the intake process.

**Access to Counsel Requirements**

18. Based on my prior experience and knowledge, skill, and belief as an attorney, ICE is required to give our attorneys access to clients and prospective clients at the Portland ICE field office before they are transferred out of state and booked into an overnight immigration detention center, pursuant to the Immigration and Nationality Act and the First and Fifth Amendments to the U.S. Constitution.

19. Meaningful access to counsel, as required by the legal framework outlined above, for clients and prospective clients in ICE detention, should include the following: 1) prompt, in-person contact with a named client or prospective client, 2) in a confidential space, 3) for a minimum of one hour, 4) with appropriate language access, including interpretation if needed, 5) before transfer to an overnight ICE detention center. In addition, as attorneys we need to have access to all the relevant documents for our client, such as the I-213 Record of Deportable/Inadmissible Alien, and any relevant documents and information about why our client has been detained. These circumstances and this information constitute the bare minimum necessary to provide effective and meaningful legal advocacy for clients; to provide a full immigration legal screening; and to address any potential defenses to detention or relief from removal. Further, although our responding attorneys have generally been bilingual in Spanish and English, not all our attorneys are, and not all our clients are fluent in Spanish or English. Accordingly, effective access to counsel for our clients and prospective clients would also include, at a

DECLARATION OF ALENA TUPPER ISO PLAINTIFFS' MOTION FOR TRO
Page 6

minimum, the opportunity for telephonic interpretation. This opportunity has never been provided to our clients or responding attorneys at the Portland ICE field office.

20. Meaningful access to our clients, as described above, means the difference between our attorneys being able to provide accurate and meaningful legal services and defense to those entitled to counsel under the law, and having our community members detained, sometimes until the conclusion of their immigration proceedings, and often deported back to the harm and persecution they fled, and separated permanently from their families and communities. As a community-based legal service provider whose mission is to reduce legal barriers to success and well-being for our community members, this lack of access to our clients and prospective clients presents a complete inability to carry out our core organizational activity of effective legal representation for those individuals.

21. CLEAR Clinic rapid-response lawyers are trained in and familiar with their right to access clients and prospective clients, as well as the rights of people detained by ICE to access counsel. All CLEAR Clinic attorneys have been trained on the ICE Performance-Based National Detention Standards, specifically Standard 5.5 (2025), which provides that "Facilities shall allow detainees to meet privately with their current or prospective legal representatives and legal assistants, and also with their consular officials." Further, our attorneys are intimately familiar with the Constitutional protections available to all people in the U.S, particularly people whose liberty has been restrained through detention. These rights include the Fourth Amendment right to be free from unreasonable search and seizure; the Fifth Amendment due process guarantee, which includes a right to counsel for those in immigration proceedings; and First Amendment freedoms, which confer a well-established right to hire, consult, and communicate with counsel, and to have counsel speak freely and confidentially with their clients and advise them of their rights. CLEAR Clinic attorneys are also trained in U.S. immigration laws, which reaffirm these rights (s*ee* , e.g. 8 U.S.C. § 1362; 8 U.S.C. § 1229a(b)(4)(A) (guaranteeing people in removal proceedings the right to counsel at no expense to the federal government).

**Deprivation of Access to Clients and Prospective Clients**

22. Starting in late spring 2025, as ICE detentions have ramped up throughout Oregon, the CLEAR Clinic made efforts to send our attorneys to the Portland ICE field office to provide rapid response legal support and ICE advocacy whenever possible. These efforts have included providing legal interventions for existing clients as well as for prospective clients. Our prospective clients include all Oregonians at risk of ICE detention or deportation, due to our mission and vision of providing free, open access legal services to our community members who have been most pushed to the margins.

DECLARATION OF ALENA TUPPER ISO PLAINTIFFS' MOTION FOR TRO
Page 7

23. CLEAR Clinic immigration attorneys have responded or attempted to respond to ICE detentions for about 20 people in the past four to five months. On every occasion, our attorneys have been denied full, and often any, access to our clients and prospective clients at the Portland ICE field office. Our attorneys have been left sitting in the lobby of the field office, sometimes for hours, sometimes holding G-28 Notice of Entry of Appearance as Attorney forms signed by both the client and the attorney, while ICE agents stonewall and give the attorney conflicting information about why access will not be granted.

24. Even when ICE does grant us access, the meeting opportunity is always brief and never enough time to conduct a full intake or fully advocate for the client's interests. ICE has repeatedly told CLEAR Clinic attorneys, in the limited circumstances when we are granted access, that they can only meet with clients for ten minutes. We have never been allowed to meet with anyone for more than 30 minutes. We are not provided a confidential meeting space to allow our clients and prospective clients to confide in us about their trauma and potential immigration claims. We are not provided with interpretation options. We are not provided with information about why ICE has detained the client or prospective client.

25. Importantly, CLEAR Clinic attorneys have never been allowed to "pass papers back and forth" with prospective or current clients, so they are not able to review critical documents regarding the government's alleged reason for detention, any allegations or charges of inadmissibility or removability, or other documents that would allow the attorney to review the legality of the detention. Despite repeated requests, ICE refuses to tell our attorneys why our clients and prospective clients are being detained. Without critical documentation or information about the rationale or legality of these detentions, our attorneys are unable to engage in effective legal advocacy for our clients and prospective clients, and we are unable to fully assess and advise clients on their options.

26. On at least one occasion, after our attorneys arrived at the Portland ICE field, requested to meet with a client, and waited in the lobby, officers took the client out the back door of the ICE field office and transferred him out of state to the NWIPC.

27. In late September 2025, ICE told our responding attorney, Josephine Moberg, that the detained client she was attempting to meet with had refused a visit from a lawyer. I advised Attorney Moberg to tell ICE that she wanted to hear any waiver of rights directly from the client. After multiple requests, ICE finally allowed Attoryney Moberg to speak with the client, who verified that he never refused a visit from a lawyer, and had in fact, repeatedly requested to speak with one.

DECLARATION OF ALENA TUPPER ISO PLAINTIFFS' MOTION FOR TRO
Page 8

28. Additionally, there have been multiple occasions at the Portland ICE field office where we are unable to even communicate with prospective clients because of their imminent transfer. For example, on October 15, 2025, I directed one of the CLEAR Clinic attorneys to meet with multiple prospective clients at the Portland facility, following community reports of their detention in Woodburn. Although we were aware of at least four prospective clients who had been detained, our attorney was able to meet with only one of them before officers told her that "everyone is already gone."

29. While at the Portland ICE field office on October 15, 2025, a CLEAR Clinic attorney witnessed vans with Washington license plates pull up to the facility and saw many men lined up be transferred, but we were unable to meet with them. If our attorney had been given access to these individuals, she would have been ready and able to conduct legal intakes and offer appropriate legal services based on these prospective clients' facts and circumstances. Instead, we have now lost the opportunity to advise these people of their legal rights and are unlikely, without great additional effort, to be able to locate them and provide follow-up legal services.

**Impacts to CLEAR Clinic from the Lack of Access to Clients and Prospective Clients**

30. ICE's denial of access to our clients and prospective clients has interfered with our core organizational activity of providing legal services to immigrant community members at highest risk of detention and deportation. First and foremost, the inability to meet with clients and prospective clients prevents the CLEAR Clinic from being able to prepare those individuals' immigration cases or seek their release from ICE detention.

31. Further, the CLEAR Clinic has diverted time, money, and resources to engage in rapid response legal interventions for ICE detentions, many of which have been unsuccessful. I estimate that we have spent at least 65 hours of attorney time on attempts to access clients detained at the Portland ICE office; the majority of this time has been spent waiting to access clients, often unsuccessfully.

32. I and other CLEAR Clinic attorneys have spent many additional hours strategizing on how to gain access to our current and prospective clients detained at the Portland ICE field office. This includes corresponding with state and federal agents to request access to clients, corresponding and working with partner organizations and attorneys to secure access for client visits, and informing state and federal congressional representatives about the issues of access to legal visits, in addition to the hours spent waiting in person at the Portland ICE field office only to be denied access.

33. The resources we have reallocated to rapid legal response for ICE detentions, as well as the difficulty in accessing clients and prospective clients who are detained in Oregon, have made it difficult to continue operating all of our core programs. This work diverts

CLEAR staff and resources from other critical programs, both in our immigration and non-immigration work.

34. Based on the steady increase in ICE detentions we have seen in Oregon throughout 2025, the federal government's intent to federalize the Oregon National Guard and send other states' National Guard troops to Oregon, and the drastic increases in ICE raids and detentions in other similarly situated cities like Chicago, Illinois, we believe that Portland may be the subject of mass ICE raids and detentions in the coming months. If we continue to be denied meaningful access to clients and prospective clients, these massive raids will inflict further harm on our core operations and our ability to provide free legal services to our clients and community members, both those detained by ICE and other clients we are not able to assist due to this diversion of resources.

35. When CLEAR Clinic attorneys are not granted access to our clients and prospective clients, and are instead transferred to the NWIPC in Tacoma, our attorneys end up dedicating countless hours to pursuing their release. Attorneys must either arrange legal calls through the NWIPC detention center, which sometimes requires putting money on clients' accounts, or visit in person so we can speak with them. Further, securing clients' release from the NWIPC has frequently required our attorneys to find local counsel outside Oregon and pay for Pro Hac Vice admission to federal court for the Western District of Washington in order to file federal habeas corpus petitions challenging their detention. If we were able to fully access our clients before their transfer out of state, we would be able to identify where an individual is subject to unlawful detention and have the opportunity to file such a challenge in the district of Oregon without additional time, expense, and coordination – which often precludes us from filing such a challenge, even when we ordinarily would offer this service to a detained client. Further, these resources have been diverted from other clients and CLEAR Clinic programming.

36. When CLEAR Clinic clients and prospective clients who are detained by ICE are not provided with meaningful access to counsel, which includes an individualized legal screening with an attorney in a confidential meeting space, any necessary interpretation services, and a full opportunity to review relevant documents and be apprised of the reason for their detention, they face a real and imminent risk of prolonged detention and ultimately deportation – even if they have legal remedies available. These same access issues also negatively impact the CLEAR Clinic's operations and our ability to effectively and efficiently represent both our clients or prospective clients detained by ICE, and all our other clients and prospective client community members, due to the diversion of resources these access issues have caused.

DECLARATION OF ALENA TUPPER ISO PLAINTIFFS' MOTION FOR TRO
Page 10

I DECLARE UNDER PENALTY OF PERJURY AND UNDER THE LAWS OF THE UNITED STATES THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.


Executed in Portland, Oregon on October 16, 2025.

_____

ALENA A. TUPPER

Executive Director, CLEAR Clinic


DECLARATION OF ALENA TUPPER ISO PLAINTIFFS' MOTION FOR TRO
Page 11