**SCOTT E. BRADFORD, OSB #062824**
United States Attorney
District of Oregon
**SARAH E. FELDMAN, OSB # 141458**
**MICHAEL J. JETER, OSB # 165413**
Assistant United States Attorneys
Sarah.Feldman@usdoj.gov
Michael.Jeter@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2936
Telephone: (503) 727-1000
        Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| CLEAR CLINIC; PINEROS Y CAMPESINOS UNIDOES DEL NOROESTE,<br><br>                    Plaintiffs,<br><br>v.<br><br>KRISTI NOEM; TODD LYONS; CAMMILLA WAMSLEY; PETE FLORES; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOM ENFORCEMENT; U.S. CUSTOMS AND BORDER PROTECTION,<br><br>                    Defendants. | Case No. 6:25-cv-01906-AA<br><br>**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

INTRODUCTION ..................................................................................................... 1

BACKGROUND ......................................................................................................... 4

I.    DHS's Authority to Arrest Individuals Based on Probable Cause
      Without a Judicial Warrant ........................................................................... 4

II.   DHS's Broad Discretionary Authority to Place and Transfer Detainees ......... 5

III.  DHS's Facilities in Oregon and Tacoma, Washington ..................................... 7

IV.   Attorney Access at ICE's Facilities in Oregon and Tacoma............................. 8

LEGAL STANDARDS .............................................................................................. 10

ARGUMENT ............................................................................................................. 12

I.    Plaintiffs Are Unlikely to Succeed on the Merits .......................................... 12

      A.   Plaintiffs Lack Article III Standing........................................................ 12

      B.   Plaintiffs are Unlikely to Succeed on the Merits of Their Fifth
           Amendment Right to Counsel Claim...................................................... 18

      C.   Plaintiffs are Unlikely to Succeed on the Merits of Their First
           Amendment Claims................................................................................. 21

      D.   Plaintiffs are Unlikely to Succeed on Their Combined
           APA/INA Claim ..................................................................................... 25

II.   Plaintiffs Fail to Establish a Likelihood of Irreparable Harm........................ 28

III.  The Balance of Equities and Public Interest Disfavor a Temporary
      Restraining Order ......................................................................................... 30

IV.   Plaintiffs' Proposed Injunction is Improper .................................................. 33

V.    Plaintiffs Must Post a Bond........................................................................... 36

CONCLUSION............................................................................................................ 36

WORD COUNT CERTIFICATE ................................................................. 37

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Abel v. United States*, 362 U.S. 217 (1960) ................................................................ 5

*All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) .......................... 11

*Allen v. Wright*, 468 U.S. 737 (1984) .................................................................... 13, 14

*Arizona v. United States*, 567 U.S. 387 (2012) ...................................................... 5, 27

*Arrey v. Barr*, 916 F.3d 1149 (9th Cir. 2019) .............................................................. 18

*Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770 (9th Cir. 2000) .................. 25

*Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*,
    950 F.2d 1401 (9th Cir. 1991) ................................................................................ 30

*Assurance Wireless USA, L.P. v. Reynolds*, 100 F.4th 1024 (9th Cir. 2024) ....... 11, 12

*Bennett v. Spear*, 520 U.S. 154 (1997) ........................................................................ 26

*Biwot v. Gonzales*, 403 F.3d 1094 (9th Cir. 2005) ...................................................... 28

*Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211 (D.C. Cir. 1981) .................. 31

*Boy Scouts of Am. v. Dale*, 530 U.S. 640 (2000) ........................................................ 22

*California v. Azar*, 911 F.3d 558 (9th Cir. 2018) ........................................................ 33

*Caribbean Marine Serv. Co., Inc. v. Baldrige*, 844 F.2d 668 (9th Cir 1988) ............. 29

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) .............................................. 13, 18

*Comm. of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434 (9th Cir.) ........................ 19, 34

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006) ................................................ 12

Demore v. Kim, *538 U.S. 510 (2018)* ........................................................................... 31

*Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486 (9th Cir. 1996) ............. 33

*Food & Drug Admin. v. All. for Hippocratic Med.*,
   602 U.S. 367 (2024) ........................................................ 13, 14, 15, 17, 30

*Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13
   (D.C. Cir. 2006) ............................................................................... 26

*Gallo Cattle Co. v. U.S. Dep't of Agric.*, 159 F.3d 1194 (9th Cir. 1998) ................... 25

*Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015) .................................. 11

*GEO Group v. Newsom*, 50 F.4th 745 (9th Cir. 2022) ...................................... 6, 19, 20

*Gill v. Whitford*, 585 U.S. 48 (2018) ........................................................ 33

*Harisiades v. Shaughnessy*, 342 U.S. 580 (1952) ........................................... 27

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ..................................... 15

*Inst. for Fisheries Res. v. Hahn*, 424 F. Supp. 3d 740 (N.D. Cal. 2019) ................... 25

*Juliana v. United States*, 947 F.3d 1159 (9th Cir. 2020) ................................. 13

*Kariye v. Mayorkas*, 650 F. Supp. 3d 865 (C.D. Cal. 2022) ................................ 23

*Kerry v. Din*, 576 U.S. 86 (2015) ........................................................... 27

*Laird v. Tatum*, 408 U.S. 1 (1972) ............................................... 13, 17, 21

*Laws. for Fair Reciprocal Admission v. United States*, 141 F.4th 1056
   (9th Cir. 2025) ................................................................................ 16

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990) .................................... 26

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) .................................... 13, 18

*Lyon v. U.S. Immigr. & Customs Enf't*, 171 F. Supp. 3d 961 (N.D. Cal. 2016) ......... 18

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F. 3d 873
   (9th Cir. 2009) ................................................................................ 11

*Maryland v. King*, 567 U.S. 1301 (2012) .................................................... 33

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010) .......................... 13, 29

*Morales-Izuierdo v. Gonzales*, 486 F.3d 484 (9th Cir. 2007) ..................................... 19

*Munaf v. Geren*, 553 U.S. 674 (2008) ......................................................................... 10

*NAACP v. Button*, 371 U.S. 415 (1963) ................................................................. 22, 25

*Nevada v. United States*, 364 F. Supp. 3d 1146 (D. Nev. 2019)................................ 29

*Nken v. Holder*, 556 U.S. 418 (2009) ......................................................................... 31

*Oakland Trib., Inc. v. Chron. Pub. Co.*, 762 F.2d 1374 (9th Cir. 1985).................... 29

*O'Brien, Inc. v. Sec. & Exch. Comm'n*, 704 F.2d 1065 (9th Cir. 1983)..................... 26

*Orantes-Hernandez v. Thornburgh*, 919 F.2d 549 (9th Cir. 1990)............................ 19

*Oregon Nat. Desert Ass'n v. Bushue*, 594 F. Supp. 3d 1259 (D. Or. 2022)............... 29

*Preminger v. Principi*, 422 F.3d 815 (9th Cir. 2005) ................................................. 33

*Procunier v. Martinez*, 416 U.S. 396 (1973) .............................................................. 32

*Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999).............. 27

*Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984) ........................................................... 21

*Sampson v. Murray*, 415 U.S. 61 (1974) .................................................................... 30

*Stanley v. Univ. of S. Cal.*, 13 F.3d 1313 (9th Cir. 1994) .......................................... 11

*Stormans, Inc. v. Selecky*, 586 F.3d 1109 (9th Cir. 2009).......................................... 31

*Tejeda-Mata v. Immigration and Naturalization Service*, 626 F.2d 721
(9th Cir. 1980) .......................................................................................................... 5

*Turner Broadcasting System, Inc. v. FCC*, 520 U.S. 180 (1997) ............................... 22

*Turner v. Safely*, 482 U.S. 78 (1987) ......................................................................... 22

*Ubiquity Press Inc. v. Baran*, No 8:20-cv-01809-JLS-DFM, 2020 WL 8172983
(C.D. Cal. Dec. 20, 2020) ...................................................................................... 31

*United States v. Arango*, 09-178 TUC DCB, 2015 WL 11120855
(D. Ariz. Jan. 7, 2015) ........................................................................................... 31

*United States v. Arizona*, 641 F.3d 339 (9th Cir. 2011) ............................................... 5

*United States v. Barajas-Alvarado*, 655 F.3d 1077 (9th Cir. 2011) .................... 18, 19

*United States v. Solano-Godines*, 120 F.3d 957 (9th Cir. 1997) ................................ 18

*United States v. Van Poyck*, 77 F.3d 285 (9th Cir. 1996) ........................................... 25

*Univ. of Haw. Pro. Assembly v. Cayetano*, 183 F.3d 1096 (9th Cir. 1999) ................ 31

*Valdez v. Rosenbaum*, 302 F.3d 1039 (9th Cir. 2002) ................................................ 24

*Warth v. Seldin*, 422 U.S. 490 (1975) ......................................................................... 13

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ............ 11, 28, 29, 30, 31, 33

## FEDERAL STATUTES

5 U.S.C. § 551(13) ....................................................................................................... 26

5 U.S.C. § 704 .............................................................................................................. 25

8 U.S.C. § 1226(a) ......................................................................................................... 4

8 U.S.C. § 1229a(b)(4)(A) ........................................................................................... 18

8 U.S.C. § 1231(g) .............................................................................................. 5, 28, 34

8 U.S.C. § 1252 ............................................................................................................ 27

8 U.S.C. § 1357(a)(2) ..................................................................................................... 5

8 U.S.C. § 1362 ............................................................................................................ 18

## STATE STATUTES

Or. Rev. Stat § 180.805 ....................................................................................... 7, 8, 9, 10

Or. Rev. Stat § 181A.820 ...................................................................................... 7, 8, 9, 10

Or. Rev. Stat § 181A.823 ...................................................................................... 7, 8, 9, 10

Or. Rev. Stat § 181A.826 ...................................................................................... 7, 8, 9, 10

# FEDERAL RULES

Fed. R. Civ. P. 65(c) ..................................................................................................... 36

Defendants Kristi Noem, Todd Lyons, Cammilla Wamsley, Peter Flores, U.S. Department of Homeland Security ("DHS"), U.S. Immigration and Customs Enforcement ("ICE"), and U.S. Customs and Border Protection ("CBP") (collectively, "Defendants"), hereby respond to Plaintiffs' Motion for Temporary Restraining Order ("Pls.' Mot."), ECF No. 2.

## INTRODUCTION

Plaintiffs CLEAR Clinic ("CLEAR") and Pineros y Campesinos Unidos Del Noroeste ("PCUN") contend that Defendants are violating the law by not providing immigration detainees with sufficient access to counsel. To remedy that alleged wrong, they seek a temporary injunction forcing Defendants to: (1) not transfer *any individual* apprehended by Defendants in Oregon out of the state for three business days; (2) provide unidentified "described individuals" access to unnamed attorneys; and (3) send apprehended individuals' identity and location to Plaintiffs and the Court within three hours of detention. Plaintiffs' motion fails on multiple grounds and, at minimum, the relief they seek is indefensibly overbroad and inequitable. The Court should therefore deny the motion outright or, at least, limit the scope of any relief that is ordered.

To start, no individual detained by Defendants or claiming imminent apprehension within Oregon is a party to this lawsuit. Plaintiffs, as attorney and community organizations, lack organizational standing to bring this lawsuit and seek relief on behalf of hypothetically detained unnamed individuals.

Even if Plaintiffs could establish standing, their claims have no merit. The

**PAGE 1 -    DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER**

Fifth Amendment to the United States Constitution does not entitle detainees to unrestricted attorney access in the time, place, and manner of their choosing. And Defendants' policies are more than sufficient to protect detainees' legitimate rights to access counsel. Plaintiffs are unlikely to succeed on the merits of their First Amendment claims because any temporary, short-term restriction on access to clients or counsel falls far short of government action that significantly burdens Plaintiffs' right to associate. And the government has an important interest in booking and safely transporting detainees from the field offices in Oregon to the detention center in Tacoma, which is equipped for longer term stays.

Plaintiffs are unlikely to succeed on the merits of their APA/INA claim because (1) they cannot point to a discrete, final agency action subject to challenge under the APA, and (2) the INA's right-to-counsel provisions do not mandate the immediate access Plaintiffs now request.

Even if the Court concludes that Plaintiffs are likely to succeed on the merits, their proposed TRO is grossly overbroad and does not match the alleged harms they identify. The thrust of Plaintiffs' complaint is that detainees are not being given sufficient access to attorneys. The way to remedy that harm would be to mandate increased access in some fashion. But there is absolutely no reason for the Court to restrict Defendants from detaining individuals in particular locations. Whether a detainee is held in Oregon or Washington does not impact his ability to interact with a lawyer; there is simply no connection between attorney access and whether an individual is transferred out of state. Indeed, at the detention facility in Tacoma,

ICE provides several means by which detainees may access their attorneys that are routinely utilized by such detainees.  As explained further below, the part of the requested relief prohibiting transfer appears to be a backdoor effort to preclude any immigration-related detention in Oregon at all. At minimum, then, the Court should deny that portion of the requested relief.

Likewise, Plaintiffs have not demonstrated irreparable harm warranting the extraordinary injunctive relief. Hypothetical violations of a non-party's constitutional rights are not irreparable harms to Plaintiffs. Further, the time, money, and resources Plaintiffs' claim are irreparable harm to their "core business activities" is merely a creative recasting of well-established monetary harms that are per-se reparable under the law and do not justify injunctive relief.

Finally, the balance of equities and public interest disfavor an injunction and Plaintiffs' requested relief is overbroad, unworkable, potentially contrary to law, and otherwise improper. As to the transfer prohibition in particular, ICE does not have any overnight detention facilities within Oregon. Any alien arrested in Oregon that ICE determines will remain in custody must be transferred out of state. Almost all adult aliens taken into ICE custody in Oregon are transferred to the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, which is the closest immigration detention facility. NWIPC is equipped for overnight detention and has secure means through which attorneys routinely consult with their clients.

It is not realistic and potentially illegal to require ICE to detain arrested individuals in Oregon for three business days. An injunction would force ICE to

**PAGE 3 -    DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'**
**MOTION FOR A TEMPORARY RESTRAINING ORDER**

detain individuals at facilities that are not staffed nor equipped to handle 72-hour detentions. Oregon's ICE facilities do not have space, beds, detainee showers, cafeterias, or established medical transport. At ICE's Portland facility, the land use permit generally prohibits ICE from detaining anyone there for more than 12 hours. The City of Portland is pursuing a land-use enforcement action against ICE for allegedly holding detainees beyond the 12-hour period, seeking, *inter alia*, to revoke the conditional use permit.

To be clear, because ICE does not have facilities in Oregon to hold detainees for 72 hours or longer and Oregon's sanctuary laws have prevented ICE from establishing facilities in the state, if Plaintiffs' injunction is granted ICE may be forced to immediately release all individuals it apprehends statewide. That poses an intolerable threat. Individuals for whom ICE has probable cause to arrest will be released from custody back into the community. This would pose public safety risks and dramatically interfere with ICE's exercise of its lawful authority and legal mandate to enforce the nation's immigration laws. The public interest therefore weighs strongly against the requested injunction, especially the portion prohibiting transfer of detainees outside Oregon.

## BACKGROUND

### I.    DHS's Authority to Arrest Individuals Based on Probable Cause Without a Judicial Warrant

DHS has clear statutory authority to arrest individuals who are believed to be removable from the United States. Specifically, 8 U.S.C. § 1226(a) grants DHS the authority to arrest and detain individuals pending a decision on their removal.

**PAGE 4 -    DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**

Additionally, 8 U.S.C. § 1357(a)(2) authorizes immigration officers to arrest individuals without a warrant if there is reason to believe the individual is in violation of immigration laws and likely to escape before a warrant can be obtained. Importantly, arrests made for immigration enforcement purposes are administrative in nature and do not require a judicial warrant. The administrative nature of immigration arrests has been upheld by courts, which have recognized that immigration enforcement is distinct from criminal law enforcement. For example, in *Abel v. United States*, 362 U.S. 217 (1960), the Supreme Court held that immigration officers may arrest individuals without a warrant for administrative purposes, such as deportation proceedings, provided the arrest complies with statutory requirements. The Court emphasized that administrative arrests are authorized under immigration law and do not require the same level of judicial oversight as criminal arrests. *See Arizona v. United States*, 567 U.S. 387 (2012); *United States v. Arizona*, 641 F.3d 339, 349–50 (9th Cir. 2011); *Tejeda-Mata v. Immigration and Naturalization Service*, 626 F.2d 721 (9th Cir. 1980).

## II.    DHS's Broad Discretionary Authority to Place and Transfer Detainees

DHS has broad authority under 8 U.S.C. § 1231(g) to determine the placement and transfer of detainees to appropriate detention facilities. Section 1231(g) explicitly authorizes DHS to arrange for appropriate places of detention for individuals detained pending removal or a decision on removal. *See also* 2011 U.S. Immigration and Customs Enforcement, Performance-Based National Detention Standards 2011 (rev. 2016), https://www.ice.gov/doclib/detention-standards/2011/

**PAGE 5 -     DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**

pbnds2011r2016.pdf. This includes the authority to acquire, build, lease, and operate detention facilities to meet operational needs. Placement and transfer decisions are made based on operational priorities, including proximity to immigration courts, facility capacity, security needs, medical care, and the ability to meet detention standards. For example, detainees may be placed in facilities near immigration courts to ensure efficient processing and participation in removal proceedings. Transfers occur when detainees need to be relocated to other facilities due to medical care, overcrowding, operational necessity, or security concerns. For instance, detainees requiring long-term or specialized medical care may be transferred to facilities like the Northwest ICE Processing Center in Tacoma, Washington, which is equipped to provide advanced care.

The Ninth Circuit's decision in *GEO Group v. Newsom*, 50 F.4th 745 (9th Cir. 2022), further reinforces DHS/ICE's authority over detention and transfers. In *Geo Group*, the court held that California's AB 32, which banned private detention facilities, was preempted by federal law. The court emphasized that federal immigration law grants DHS/ICE's exclusive authority to manage detention operations, including the ability to contract with private entities and determine appropriate detention locations.

Based on the above, DHS has clear statutory and regulatory authority to arrest individuals, determine the location of detention, transfer detainees, and enforce detention standards.

///

**PAGE 6 -    DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER**

### III.    DHS's Facilities in Oregon and Tacoma, Washington

Oregon's Sanctuary laws and policies, including Or. Rev. Stat §§ 180.805, 181A.820, 181A.823, and 181A.826, prohibit local governments, private entities, and law enforcement agencies from entering into agreements with ICE for immigration detention services. Consequently, with no dedicated facilities in operation within Oregon, ICE is no longer capable of providing overnight or dedicated long-term immigration detention space in the state. *See* Declaration of Jeffrey Chan ("Chan Decl.") ¶ 7.

As a result, ICE relies solely on short-term 12-hour maximum holding areas within ERO's three field offices in Portland, Medford and Eugene. The field offices are processing centers and, as such, the holding rooms within them are not designed or equipped for routine overnight or extended detention. They do not provide access to beds, showers, on-site medical clinics and mental health care, full-service kitchens, law libraries, virtual visitation equipment, and recreational areas typically found in dedicated detention centers. Chan Decl. ¶ 8. The Portland office is leased pursuant to a conditional use permit that explicitly limits detainee holds to no more than 12 hours. Chan Decl. ¶ 10.

Due to the absence of in-state detention facilities and the 12-hour limit, detainees apprehended in Oregon are generally transferred to NWIPC within hours of processing. Chan Decl. ¶¶ 11–12. These transfers ensure compliance with local rules and detention standards. The NWIPC provides medical screening, outdoor

recreation and is otherwise the best location to place detainees for a variety of logistical and operational reasons. Chan Decl. ¶ 12.

## IV.    Attorney Access at ICE's Facilities in Oregon and Tacoma

If a detainee has already been transferred from Oregon due to the 12-hour limit, in-person access can be arranged at Tacoma. The NWIPC provides robust legal access programs including a Virtual Attorney Visitation ("VAV") program that enables legal representatives to schedule client meetings in advance and add interpreters to calls, video teleconferencing for attorney visits, and legal orientation programs. Chan Decl. ¶¶ 17, 22–23. Given the better infrastructure at NWIPC, access to counsel is generally easier to arrange there versus Oregon.

Attorney access to detainees at Oregon's holding facilities is limited during the intake process while ICE is actively booking and processing the individuals, which accounts for the majority of the time detainees spend at those facilities prior to transfer to NWIPC. Chan Decl. ¶ 13. Phones are available for detainees in the holding rooms at all three Oregon offices for collect calls and one free phone call prior to transport to NWIPC. Chan Decl. ¶ 14. All three offices have visitation rooms for attorney-client visits. Eugene and Medford have one visitation room each and Portland has three. Chan Decl. ¶ 15.

An attorney seeking to visit a detainee at an Oregon ICE office must demonstrate an established attorney-client relationship with the individual. Chan Decl. ¶ 16. This is most often done through a Notice of Attorney or Representation (Form G-28) signed by the detainee. *Id.* ICE will also accept other means of

**PAGE 8 -    DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER**

establishment such as retainer agreements or a Notice of Entry of Appearance as an Attorney on file with the Executive Office of Immigration Review. *Id.* The Form G-28 contains several fields for biographic information to be provided about the individual by the attorney including name, A-number, date of birth, country of birth, and address. *Id.* ICE will accept unsigned Form G-28s for detainees where the attorney can provide minimum basic biographic information about the individual. *Id.*

As a matter of policy, ICE does not deny access to counsel and grants access to attorneys presenting valid Form G-28s where feasible. Denials, if any, are isolated incidents that may occur for legitimate reasons such as incomplete documentation, ongoing processing, security risks, or the detainee's refusal. Chan Decl. ¶ 17.

There are several operational, logistical, and security reasons that ICE cannot always accommodate immediate in-person visitation requests at the Oregon processing facilities prior to transport to NWIPC. Chan Decl. ¶ 8. Transportation is limited and ICE coordinates transport between the three Oregon offices for efficiency and to minimize wait and transfer times for detainees. *Id.* Safety and security concerns may also impact attorney access at Oregon's ICE offices. Since June 2025 protests have targeted all Oregon offices, forcing ICE to close them to the public to protect the safety of officers and other individuals therein. The Portland office was closed for three weeks from June 13 to July 7, 2025, as a result of physical damage inflicted by protestors on the building. *Id.* On July 1, 2025, the

**PAGE 9 -   DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER**

Eugene office was closed to the public after protestors blockaded ICE personnel inside for several hours, preventing exit. *Id.*

Consequently, ICE has had to prioritize speedy and efficient processing of those arrested in Oregon to minimize safety risks to its officers and individuals in ICE custody. Chan Decl. ¶ 20. ICE officers and vehicles have become frequent targets for protestors who harass, vandalize, and attempt to prevent ICE from moving individuals from the Oregon facilities. *Id.* The longer an individual remains in custody at an Oregon ICE facility prior to transport, the greater the risk to officer and detainee safety as more protestors are drawn to those locations and become more likely to physically disrupt operations. *Id.* For this reason, ICE is expediting processing and transportation to NWIPC. *Id.*

As soon as practicable after detainee intake, typically within hours, the detainee's information is made publicly available on the ICE Online Detainee Locator System ("ODLS"). Chan Decl. ¶ 21. ODLS provides an efficient and streamlined means by which attorneys may locate and access their clients who are detained at ICE facilities.

## LEGAL STANDARDS

A preliminary injunction is an "extraordinary and drastic remedy" that is never awarded as of right. *Munaf v. Geren*, 553 U.S. 674, 688–90 (2008) (citations and quotation omitted). There are two types of preliminary injunctions: (1) a prohibitory injunction that "preserve[s] the status quo pending a determination of the action on the merits," and (2) a mandatory injunction that "orders a responsible

party to take action." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F. 3d 873, 878–79 (9th Cir. 2009) (citation modified) (alteration in original). A mandatory injunction "'goes well beyond simply maintaining the status quo pendente lite [and] is particularly disfavored.'" *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) (cleaned up). Indeed, "[i]n general, mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases." *Marlyn Nutraceuticals*, 571 F. 3d at 879 (internal quotation omitted). The moving party "must establish that the law and facts *clearly favor* [his] position, not simply that [he] is likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (emphasis original). Where a plaintiff seeks mandatory injunctive relief, "courts should be extremely cautious." *Stanley*, 13 F.3d at 1319 (9th Cir. 1994).

Plaintiffs seeking a preliminary injunction must establish each of the following: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The final two factors "merge where a government agency is a party." *Assurance Wireless USA, L.P. v. Reynolds*, 100 F.4th 1024, 1031 (9th Cir. 2024).

An injunction may be "appropriate, alternatively, where: (1) Plaintiffs raise "serious questions going to the merits;" (2) the balance of equities "tips sharply" in the Plaintiffs' favor; and (3) Plaintiffs "satisfy the other *Winter* factors." *All. for the*

*Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011) (citations omitted).

Here, however, the "serious questions" standard does not apply because "[t]his 'less

demanding' merits standard requires serious factual questions that need to be

resolved in the case." *Assurance Wireless*, 100 F.4th at 1031. "Thus, parties do not

show serious questions when they raise a 'merely plausible claim,' nor can a district

court 'forego legal analysis just because it has not identified precedent that places

the question beyond debate.'" *Id.*

## ARGUMENT

## I.    Plaintiffs Are Unlikely to Succeed on the Merits

The Court should deny the TRO because Plaintiffs are unlikely to succeed on

the merits for three reasons.  First, they lack standing to seek the broad prospective

injunctive relief that they seek.  Second, they have not established that Defendants'

policies on access to counsel violate the Constitution or statutory law.  Finally, all

that aside, the requested TRO is overbroad insofar as it purports to bar Defendants

from detaining aliens in NWIPC; indeed, that part of the relief is counterproductive

given that NWIPC allows *greater* opportunities for attorney access.

### A.    Plaintiffs Lack Article III Standing

"No principle is more fundamental to the judiciary's proper role in our system

of government than the constitutional limitation of federal-court jurisdiction to

actual cases or controversies." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341

(2006) (internal quotation marks omitted). This constitutional limitation requires

plaintiffs to demonstrate they have standing to sue so that courts do not operate as

an open forum for "general complaints about the way in which the government goes about its business." *Allen v. Wright*, 468 U.S. 737, 760 (1984). "To have standing under Article III, a plaintiff must have (1) a concrete and particularized injury that (2) is caused by the challenged conduct and (3) is likely redressable by a favorable judicial decision." *Juliana v. United States*, 947 F.3d 1159, 1168 (9th Cir. 2020).

To support standing, an injury must be "concrete, particularized, and actual or imminent." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)). When the alleged injury arises from an "exercise of governmental power" that is "regulatory, proscriptive, or compulsory in nature," the "complainant" must be "presently or prospectively subject to the regulations, proscriptions, or compulsions" at issue. *Laird v. Tatum*, 408 U.S. 1, 11 (1972). "[T]he injury must affect 'the plaintiff in a personal and individual way' and not be a generalized grievance." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) (quoting *Lujan*, 504 U.S. at 560, n.1). "And when a plaintiff seeks prospective relief such as an injunction, the plaintiff must establish a sufficient likelihood of future injury." *Id.*

Plaintiffs do not have standing to obtain relief on behalf of non-party hypothetical individuals, and anecdotal concerns about past conduct not before this Court cannot supply a basis for injunctive relief for others. "[P]laintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

**PAGE 13 -   DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER**

Organizations such as Plaintiffs are held to the "usual standards for injury in fact, causation, and redressability that apply to individuals." *Id.* at 393–94. Where the Plaintiffs are not themselves "the object of the [challenged] government action or inaction" standing is "ordinarily 'substantially more difficult' to establish." *Lujan*, 504 at 462 (quoting *Allen v. Wright*, 468 U.S. 737, 758 (1984)).

Claims 1, 2, and 4 pertain to the rights of unidentified individuals who are not parties to this lawsuit. Claims 1 and 2 pertain to the First and Fifth Amendment rights of individuals detained by Defendants. Claim 4 likewise concerns the rights of noncitizens under the INA and APA. Plaintiffs do not attempt to establish standing to bring claims based on Defendants' alleged harms to those nonparties.

Plaintiffs rely primarily on *Food & Drug Admin. v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024), to advance their cause. *See* Pls.' Mot. 18–19. Plaintiffs' reliance on *Hippocratic Medicine* is misplaced. In fact, that decision undercuts their case. There, the Supreme Court considered plaintiff medical associations' claims of organizational standing in the context of government action they claimed impaired their ability to provide services and achieve their organizational mission. 602 U.S. at 393–94. The medical associations argued that the government action caused them to "expend considerable time, energy, and resources" to the detriment of their other priorities. *Id.* at 394. The Supreme Court held that the argument "does not work to demonstrate standing." *Id.* The Court held that organizations cannot "spend its way into standing" and "manufacture its

own standing in this way." *Id.*

Plaintiffs invoke *Hippocratic Medicine* for the proposition that organizational standing may be established where government action impairs its core activities. *See* Pls.' Mot. 18. That passage, however, was taken from *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), which the Court in *Hippocratic Medicine* was careful to distinguish and held should not be extended beyond the context of that case. *Id.* at 395–96.

*Havens* concerned a housing counseling organization's claim that an apartment complex owner had *provided plaintiff's black employees false information about apartment availability "a practice known as racial steering." Id.* at 395 (emphasis added). The Court recognized that when defendant gave plaintiff's employees false information about apartment availability, that interfered with the plaintiff's ability to provide counseling services. The Court analogized that scenario to "a retailer who sues a manufacturer for selling defective goods to the retailer." *Id.* In *Hippocratic Medicine*, however, the Supreme Court concluded that "*Havens* was an unusual case, and this Court has been careful not to extend the *Havens* holding beyond its context." *Id.*

Here too, *Havens* does not apply, and Plaintiffs lack injuries in fact to establish standing as to claims 1, 2, and 4.

In claim 1 Plaintiffs allege that "[i]ndividuals detained by Defendants have a right to hire and consult with attorneys." Compl. ¶ 87. They further allege that PCUN's "individual members are harmed by these violations because they fear

deprivation of their liberty" and that CLEAR is harmed because they are "unable to provide pro bono legal services to people detained by ICE before they are transferred outside the state of Oregon. Compl. ¶¶ 89–90. These allegations do not describe concrete and particularized harms incurred by Plaintiffs sufficient to establish standing. As the face of the Complaint and Plaintiffs' motion state, the Fifth Amendment right to counsel is a right held by detained individuals—not their attorneys nor community organizations. *See, e.g., Laws. for Fair Reciprocal Admission v. United States*, 141 F.4th 1056, 1065 (9th Cir. 2025) (denying organizational standing in the Sixth Amendment context and concluding that the right attaches to the individuals, "not their lawyers"); U.S. Const. amend. V ("No *person shall be deprived* of life, liberty, or property, without due process of law.") (emphasis added).

No detainee is a party to this case. No current or prospective[1] CLEAR client is a named Plaintiff, nor has CLEAR provided any admissible evidence that any particular individual client is, or will be, imminently detained in a manner inconsistent with the Fifth Amendment. Even if CLEAR supplied such evidence, CLEAR would still lack organizational standing. Declarations from CLEAR and non-CLEAR attorneys providing vague and unverifiable anecdotes about past

---

[1] "Prospective" clients do not include hypothetical individuals who may at some undetermined point in the future engage with CLEAR about retaining one of their attorneys for legal services. The term "prospective client" means an individual who discussed with a CLEAR attorney about the possibility of forming an attorney-client relationship. *See* Or. Rules of Prof'l Conduct R.1.18. It is unclear whether any of the "prospective" clients identified in Plaintiffs' declarations satisfy the true definition of prospective client under Oregon's Rules of Professional Conduct.

**PAGE 16 -   DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER**

detainees are insufficient to establish a likelihood of imminent harm under the Fifth Amendment to any Plaintiff in this matter. *See generally* ECF Nos. 4–7.

Similarly, PCUN's generalized claim that its members fear possible future deprivation of their Fifth Amendment rights does not describe a concrete and particularized injury to PCUN under Article III. *See Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) ("Allegations of a subjective chill are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm; the federal courts established pursuant to Article III of the Constitution do not render advisory opinions." (quotation marks omitted)). Here too, no individual PCUN member is a named Plaintiff in this lawsuit nor has any such individual supplied admissible evidence demonstrating a concrete and particularized imminent harm under the Fifth Amendment. *See generally* Declaration of Reyna Lopez ("Lopez Decl."), ECF No. 8.; *Hippocratic Medicine*, 602 U.S. at 394 (recognizing that organizations cannot rely on frustration of mission or diversion of resources to establish standing).

The arguments above apply with equal force to PCUN's First Amendment claim and Plaintiffs' APA/INA claim.[2]  PCUN's declaration broadly describing the organization's activities and members' generalized concerns are insufficient to establish injury in fact under the First Amendment to warrant the extraordinary

---

[2] The provision of the APA Plaintiffs invoke concern the individual's constitutional rights and the INA provision concerns the rights guaranteed to noncitizens. *See* Compl. ¶¶ 105–06. Neither provide causes of actions for attorney or community organizations based on the rights of non-party individuals.

**PAGE 17 -    DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER**

relief of a mandatory injunction against the government. *Lujan*, 504 U.S. 562–65 (recognizing that where the plaintiff is not the object of the government action, standing is "substantially more difficult" and concrete and particularized evidence of "actual or imminent" injury is required); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (reiterating that "threatened injury must be *certainly impending* to constitute injury in fact" and that "allegations of *possible* future injury" are not sufficient) (cleaned up) (citations omitted).

**B.    *Plaintiffs are Unlikely to Succeed on the Merits of Their Fifth Amendment Right to Counsel Claim.***

Even assuming Plaintiffs have standing to bring a Fifth Amendment claim on behalf of unnamed nonparty individuals, their claim is nevertheless without merit. There is a statutory right to retained counsel in immigration proceedings that is rooted in the Due Process Clause. *See Arrey v. Barr*, 916 F.3d 1149, 1157 (9th Cir. 2019) (citing 8 U.S.C. § 1362); 8 U.S.C. § 1229a(b)(4)(A). Removal proceedings are civil in nature and litigants in those proceedings retain no right to counsel under the Sixth Amendment, are not entitled to *Miranda* warnings, and are otherwise not entitled to the "full panoply of procedural and substantive safeguards which are provided in criminal proceedings." *Lyon v. U.S. Immigr. & Customs Enf't*, 171 F. Supp. 3d 961, 975 (N.D. Cal. 2016) (quoting *United States v. Solano-Godines*, 120 F.3d 957, 960 (9th Cir. 1997); *see also United States v. Barajas-Alvarado*, 655 F.3d 1077, 1088 (9th Cir. 2011) (finding no procedural or constitutional due process violations based on lack of counsel during expedited removal proceedings). Where there has been "a denial of the privilege to be represented by counsel" courts have

**PAGE 18 -    DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER**

ordered new removal proceedings. *Comm. of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1439 (9th Cir.), amended, 807 F.2d 769 (9th Cir. 1986). "The key factor present in each of these cases showing a constitutional deprivation is the existence of an established, on-going attorney-client relationship." *Id.*

This statutory right, however, does not enshrine unfettered and immediate in-person access to detainees at a particular location and can be satisfied though alternative means of communication such as telephone and virtual access. *Barajas-Alvarado*, 655 F.3d at 1078; *Morales-Izueirdo v. Gonzales*, 486 F.3d 484 (9th Cir. 2007) (finding no right to counsel during the initial stages of reinstatement proceedings during which immigration officers performed ministerial tasks). Where means of attorney access are reasonably available, an individual cannot be said to have experienced a denial of counsel under the Fifth Amendment. *See Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 554, 565 (9th Cir. 1990).

Importantly, Plaintiffs do not argue that detainees lack access to legal counsel under the Fifth Amendment at the NWIPC in Tacoma, Washington. Rather, they focus solely on Oregon's 12-hour ICE holding facilities that are used for processing before transfer to NWIPC. Defendants have discretionary authority to transfer detainees from Oregon to the NWIPC detention facility and the "transfer of unrepresented aliens, standing alone, does not violate the due process clause or any statutory privilege." *Comm. of Cent. Am. Refugees*, 795 F.2d at 1439–40; *GEO Group v. Newsom*, 50 F.4th 745, 752–55 (9th Cir. 2022).

Defendants provide robust access to counsel at the NWIPC consistent with

**PAGE 19 -   DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER**

the Fifth Amendment. That facility has in-person visitation rooms detainees routinely use to confer with legal counsel. Chan Decl. ¶ 22. Its VAV program allows legal representatives, assistants, and interpreters to schedule confidential meetings via video platforms such as Zoom or WebEx through ICE's online Detention Facility Appointment Scheduler or by email in exigent circumstances. *Id.* Phones and electronic tablets enabled to permit virtual calls are also provided for detainee use in every housing unit at the NWIPC. *Id.* Moreover, the Tacoma Immigration Court is co-located within the NWIPC and attorneys representing individuals before that court may request to appear remotely via telephone or Webex for all hearings. Chan Decl. ¶ 23. Plaintiffs cannot succeed on the merits of their denial of counsel claim when they have convenient and effective means to consult with their clients at the NWIPC.

Plaintiffs claim that Defendants have "denied them the ability to obtain and meaningfully communicate with counsel before their transfer out of district," but that is not correct. *See* Pls.' Mot. 10. Defendants do provide constitutionally sufficient access to detainees at ICE's Oregon facilities. All three Oregon facilities have in-person visitation rooms. Chan Decl. ¶¶ 14–15. Phones are available for detainee use in holding rooms for collect calls and one free phone call is typically provided prior to transport to NWIPC. Chan Decl. ¶ 14. When feasible, Defendants grant access to attorneys seeking to consult with their clients upon evidence of an attorney-client relationship such as a Form G-28, retainer agreement, or notice of appearance before EOIR. Chan Decl. ¶ 16. Incidents of denial are due to legitimate

reasons such as incomplete documentation of an attorney-client relationship, active booking of the detainee, active transfer to NWIPC, as well as safety and security incidents. Chan Decl. ¶¶ 17–19.

Any isolated incidents of short-term lack of in-person legal visits at Oregon's holding facilities does not violate detainees' access to counsel, and it is undisputed that aliens detained in Oregon and transferred to NWIPC have robust access to legal counsel. Attorney access at NWIPC remedies any temporary interference with accessing legal counsel due to operational considerations and in light of Oregon State law.

C.    **Plaintiffs are Unlikely to Succeed on the Merits of Their First Amendment Claims.**

Plaintiff PCUN brings a claim under the First Amendment seeking prospective relief, arguing that members who may be detained in the future may not be able to communicate with counsel while at the Oregon field offices before transfer to a detention facility. Pls.' Mot. 15. Plaintiff CLEAR Clinic also seeks prospective relief, arguing that prospective clients' "imminent transfer" from the Oregon field offices results in a lost opportunity to advise clients and prospective clients. *Id.* 16. Plaintiffs are unlikely to succeed on the merits of their First Amendment claims.

"[I]mplicit in the right to engage in activities protected by the First Amendment" is "a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984) (collecting cases). The right of

**PAGE 21 -    DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**

expressive association, however, "is not absolute." *Boy Scouts of Am. v. Dale*, 530
U.S. 640, 648 (2000).

Content-neutral restrictions on speech—time, place, and manner
restrictions—are subject to an intermediate level of scrutiny, and will be upheld if
they advance "important governmental interests unrelated to the suppression of
free speech and do [ ] not burden substantially more speech than necessary to
further those interests." *Turner Broadcasting System, Inc. v. FCC*, 520 U.S. 180,
189 (1997).

Moreover, while the First Amendment protects attorneys' rights to
disseminate legal information and provide counsel to clients, these rights are
subject to reasonable restrictions that serve legitimate government interests, such
as maintaining security, operational efficiency, and facilitating timely transfers. *See
NAACP v. Button*, 371 U.S. 415, 437 (1963); *Turner v. Safely*, 482 U.S. 78, 89.

In this case, Plaintiffs do not point to any formal restrictions on speech, but
rather to isolated past content-neutral actions. For that reason alone, Plaintiffs'
First Amendment claims are likely to fail.

Even if Plaintiffs could point to a time, place, and manner restriction on
speech itself, any alleged temporary restriction falls far short of government action
that significantly burdens Plaintiffs' right to associate. There is no evidence that
Plaintiffs are unable to access counsel once they have reached the detention facility
in Tacoma. And the government has provided evidence that Plaintiffs' members
have a robust opportunity to communicate regarding their immigration proceedings

**PAGE 22 -   DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER**

following the initial booking and transfer process. *See* Chan Decl. ¶¶ 22, 25.

Moreover, any temporary burden on Plaintiffs' ability to consult with an attorney or advise a client here serves important governmental interests. It is well-established that the government has an important interest in protecting its borders and enforcing the nation's immigration laws. *Kariye v. Mayorkas*, 650 F. Supp. 3d 865, 909 (C.D. Cal. 2022) (collecting cases). The government too has an interest in the safety and security of its law enforcement officers and those it detains. Given that the field offices in this district are not equipped to hold detainees for more than several hours, and in light of the disruptive protests that have created unsafe situations at the Portland field office and others, the government has a significant interest in transporting detainees as quickly as possible to a detention facility. *See generally* Chan Decl. These temporary, short-lived disruptions in the ability to consult with counsel or clients result from necessary booking and transfer activities as well as legitimate safety-related concerns and do not overly burden a detainee's access to counsel in connection with immigration proceedings.

Plaintiffs' articulation of the alleged harm here too is unconvincing. Plaintiff CLEAR contends that it "lost the opportunity to advise" detainees "of their legal rights and is unlikely, without great additional effort, to be able to locate them and provide follow-up legal services." Pls.' Mot. at 16. However, the government maintains an online detainee locator system through which attorneys can locate clients or potential clients. Chan Decl. ¶ 21. The government has transferred many detainees to the detention facility in Tacoma, Washington—the closest facility to

the District of Oregon. Plaintiff CLEAR also relies heavily on the argument that their ability to advise prospective clients has been impacted, but as noted above, Plaintiff provides little evidence that the detainees they seek to contact are actual or prospective clients under Oregon's Rules of Professional conduct.

Plaintiff PCUN argues that "it is especially harmful to not have access to an attorney when [detainees] are going through a complicated legal process and in the custody of the government." Pls.' Br. at 15. But Plaintiff's contention is overbroad. Though access to counsel may be limited for a brief processing and transfer period, there is nothing in the record supporting the notion that PCUN members would be prevented from accessing counsel at the Tacoma facility or elsewhere during the time leading up to an immigration hearing. And in fact, the evidence in the record shows that detainees have ample opportunity to contact counsel while detained in Tacoma. *See* Chan Decl. ¶¶ 22, 25.

A case cited by Plaintiffs, *Valdez v. Rosenbaum*, 302 F.3d 1039 (9th Cir. 2002), reinforces the government's position. While *Valdez* involves criminal detention rather than civil detention as involved here, the Ninth Circuit held that detainees retain First Amendment rights, but these rights are subject to reasonable restrictions that serve legitimate government interests, such as maintaining security and operational efficiency. Policies such as requiring signed G-28 forms, limiting visitation hours, and facilitating timely transfers are reasonable measures consistent with *Valdez*. And alternative methods of communication, such as phone calls or virtual visitation, can satisfy constitutional requirements even if in-person

access is temporarily restricted due to operational constraints. *United States v. Van Poyck*, 77 F.3d 285 (9th Cir. 1996).

Plaintiffs' First Amendment claims fails because the right to advocate for lawful means of vindicating legal rights does not extend to unrestricted access to detained individuals. *Button*, 371 U.S. at 437. Defendants' policies provide reasonable alternatives, including phone calls, virtual visitation, and access to legal resources at NWIPC. Attorneys can still advise clients within operational constraints. The First Amendment does not guarantee unrestricted access to potential clients who have not affirmatively retained counsel, as such access would impose an undue burden on detention operations.

For these reasons, Plaintiffs are unlikely to succeed on the merits of their First Amendment claims.

### D.      Plaintiffs are Unlikely to Succeed on Their Combined APA/INA Claim.

The APA provides a limited waiver of the government's sovereign immunity for "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704; *Gallo Cattle Co. v. U.S. Dep't of Agric.*, 159 F.3d 1194, 1198 (9th Cir. 1998) (quoting 5 U.S.C. § 704). "Section 704 reflects a congressional policy against premature judicial intervention into the administrative process, and in favor of courts resolving only disputes with concrete legal stakes." *Inst. for Fisheries Res. v. Hahn*, 424 F. Supp. 3d 740, 747 (N.D. Cal. 2019). District court review is "inappropriate [where] 'final agency action,' a prerequisite for judicial review, had not yet occurred." *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 781 (9th

Cir. 2000) (citing *O'Brien, Inc. v. Sec. & Exch. Comm'n*, 704 F.2d 1065, 1067 n.6 (9th Cir. 1983), *rev'd* on other grounds (further citation omitted)). In addition, agency action requires a specific "rule, order, license, sanction, relief, or the equivalent." 5 U.S.C. § 551(13).

As the Supreme Court has emphasized, the APA therefore does not permit "general judicial review of [an agency's] day-to-day operations." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 899 (1990). Nor does the APA authorize agencies to oversee "the common business of managing government programs." *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 20 (D.C. Cir. 2006).

"As a general matter, two conditions must be satisfied for agency action to be final." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (cleaned up). First, "the action must mark the 'consummation' of the agency's decisionmaking process," and "must not be of a merely tentative or interlocutory nature." *Id.* (citation omitted). Second, "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Id.* at 178 (citation omitted).

Here, Plaintiffs challenge at most an operational decision by the agency that has the practical effect of restricting access to counsel for a short period of time during processing and transfer. This is not a discrete, identifiable, final agency action subject to challenge under the APA, but rather a challenge to day-to-day operational decisions and conduct that the Supreme Court has advised do not fall within the APA's jurisdiction. *See Lujan*, 497 U.S. at 899. The Court should decline to review such actions, which would bring within the scope of the APA nearly every

**PAGE 26 -   DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER**

aspect of ICE's continuing and constantly changing operations at its facility. The consequences would be untenable.

Even if the Court finds a reviewable final agency action, Plaintiff will be unable to establish that any practice or policy at the ICE field offices violates the APA by infringing on the right to assistance of counsel under the INA.

A principal feature of the removal system is the broad discretion exercised by immigration officials. *Arizona v. United States*, 567 U.S. 387, 396 (2012); *see id.* at 409 (holding that decisions "touch[ing] on foreign relations . . . must be made with one voice"). Indeed, "any policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government." *Harisiades v. Shaughnessy*, 342 U.S. 580, 588–89 (1952). Here, Plaintiffs' requested relief implicates the Executive Branch's "broad power over the creation and administration of the immigration system," which necessarily includes discretion to determine where individuals will be detained to execute their removal orders. *Kerry v. Din*, 576 U.S. 86, 106 (2015) (Kennedy, J., concurring in judgment). The Executive's discretionary authority to administer the removal process is further reinforced by the statute that governs judicial review of removal orders—8 U.S.C. § 1252. That statute is replete with provisions "aimed at protecting the Executive's discretion from the courts—indeed, that can fairly be said to be the theme of the legislation." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 486 (1999) (emphasis added) (citing, *e.g.,* 8 U.S.C. § 1252(a)(A); § 1252(a)(2)(B); §

**PAGE 27 -  DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER**

1252(a)(2)(C), § 1252(b)(4)(D)). This concern with protecting the Executive's discretion appears as well in 8 U.S.C. § 1231(g), which gives the Attorney General broad latitude to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." 8 U.S.C. § 1231(g) (emphasis added).

Under the INA, the right to counsel in immigration proceedings, including proceedings in which aliens are seeking asylum, requires that an alien be provided "reasonable time to locate counsel and permit counsel to prepare for the hearing." *Biwot v. Gonzales*, 403 F.3d 1094, 1098 (9th Cir. 2005). But it does not require immediate access to, or by, counsel at the moment of detention. Rather, the right to counsel to prepare for immigration proceedings must be balanced with the Attorney General's broad discretionary authority and latitude to arrange for appropriate places of detention.

Plaintiffs' contentions, taken as true, do not arise to a deprivation of counsel in advance of an immigration hearing under the INA. Plaintiffs have not alleged or shown that they would be unable to obtain counsel for or assist clients with immigration proceedings after detainees have arrived at a detention facility.

Accordingly, Plaintiff's combined APA and INA claim is likely to fail on the merits.

## II.    Plaintiffs Fail to Establish a Likelihood of Irreparable Harm

To meet their burden for a preliminary injunction, Plaintiffs must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original). "Speculative injury does not

**PAGE 28 -   DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER**

constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Caribbean Marine Serv. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir 1988). This is because a preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing" that Plaintiffs are "entitled to such relief." *Winter*, 555 U.S. at 22. Courts cannot presume irreparable harm: there must be a satisfactory showing— "No such thumb on the scales is warranted." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 157 (2010). "Allegations of irreparable harm must be supported with actual evidence, and not merely conclusory statements or unsupported allegations." *Nevada v. United States*, 364 F. Supp. 3d 1146, 1151 (D. Nev. 2019).

As an initial matter, Plaintiffs' delay in seeking preliminary relief following the initiation of the challenged conduct weighs heavily against any argument that they might suffer imminent, irreparable injury absent emergency relief. *See Oakland Trib., Inc. v. Chron. Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm[.]"); *Oregon Nat. Desert Ass'n v. Bushue*, 594 F. Supp. 3d 1259, 1266 (D. Or. 2022) (recognizing that a two-month delay in filing for injunctive relief after the plaintiffs knew of the government's action "counsels against a finding of likely irreparable harm"). Here, Plaintiffs challenge policies, practices, and procedures going back to January 2025, ten months prior to filing the instant suit. *See* Compl. ¶¶ 35–37.

Plaintiffs' alleged infringements of constitutional and statutory rights are

insufficient to establish irreparable harm where the plaintiffs have not demonstrated a likelihood of success to warrant an injunction. *Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1412 (9th Cir. 1991).

Plaintiffs also claim they will suffer irreparable harm in the forms of expended attorney "time, money, and resources." Compl. ¶¶ 77–78. In their Motion, CLEAR recasts these alleged harms as their "core business activities" in an attempt to circumvent well-established precedent that such financial harms are per-se reparable. *Compare* Compl. ¶¶ 77–78, *with* Pl.'s Mot. 19. "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974). For the same reasons discussed above regarding lack of concrete injury in the standing context, here too Plaintiffs cannot claim irreparable harm in the form of speculative and hypothetical future constitutional injuries to non-parties. *See supra* Part I (citing *Hippocratic Med.,* 602 U.S. at 393–94 (recognizing that impaired ability to provide services and achieve their organization mission are insufficient)).

## III.  The Balance of Equities and Public Interest Disfavor a Temporary Restraining Order

In preliminary injunction proceedings, a party seeking injunctive relief "must [also] establish . . . that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. To determine how the balance of equities tips, "a court must identify the possible harm caused by the

**PAGE 30 -   DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER**

preliminary injunction against the possibility of the harm caused by not issuing it."
*Univ. of Haw. Pro. Assembly v. Cayetano*, 183 F.3d 1096, 1108 (9th Cir. 1999). A
court must then weigh "the hardships of each party against one another." *Id.* "In
exercising their sound discretion, courts of equity should pay particular regard for
the public consequences in employing the extraordinary remedy of injunction."
*Winter*, 555 U.S. at 24 (internal quotation omitted).

But, even if Plaintiffs could satisfy one or both of the first two factors, the
remaining factors tip decisively in Defendants' favor. There is a recognized public
interest in the enforcement of United States law, including the immigration laws.
*Nken*, 556 U.S. at 435-36 ("In considering [the merged final two stay factors], courts
must be mindful that the Government's role as the respondent in every removal
proceeding does not make the public interest in each individual one negligible.")
*Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211, 1221 (D.C. Cir. 1981) ("The
Supreme Court has recognized that the public interest in enforcement of the
immigration laws is significant."). The government has a compelling interest in the
steady enforcement of its immigration laws. *See, e.g., Demore*, 538 U.S. at 523;
*Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1140 (9th Cir. 2009) (holding that the
court "should give due weight to the serious consideration of the public interest" in
enacted laws); *see also Ubiquity Press Inc. v. Baran*, No 8:20-cv-01809-JLS-DFM,
2020 WL 8172983, at *4 (C.D. Cal. Dec. 20, 2020) (explaining that "the public
interest in the United States' enforcement of its immigration laws is high"); *United
States v. Arango*, CV 09-178 TUC DCB, 2015 WL 11120855, at 2 (D. Ariz. Jan. 7,

**PAGE 31 -   DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER**

2015) (finding that "the Government's interest in enforcing immigration laws is enormous").

Moreover, in the context of detention, the Supreme Court has recognized that "the problems of prisons . . . require expertise, comprehensive planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Procunier v. Martinez*, 416 U.S. 396, 404-05 (1973). "[C]ourts," by contrast, "are ill equipped to deal with the increasingly urgent problems of prison administration and reform." *Id.* at 405.

Plaintiffs' request for injunctive relief to afford detainees attorney access by requiring Defendants to hold said detainees in Oregon for three business days is a smokescreen. It cannot be overstated that the injunction Plaintiffs seek, if granted, would likely require Defendants to release all individuals it apprehends in Oregon because there are no overnight facilities in the state. *See* Chan Decl. ¶¶ 7–9, 24. Such an injunction would be tantamount to preventing Defendants from detaining aliens in Oregon and effectively prevent the federal government from enforcing the nation's immigration laws. Chan Decl. ¶ 24. Plaintiffs seek an end run around the law and demand an overbroad statewide injunction applicable to all individuals Defendants may apprehend and force Defendants to release individuals for whom it has probable cause and legal authority to detain.

The speculative risks of harms to Plaintiffs and other hypothetical individuals not before this Court must be weighed against the obstruction of legitimate government functions that could result if the Court entered Plaintiffs'

proposed injunction. *See Winter*, 555 U.S. at 24. The possible harms to Defendants by an injunction here are especially acute given that the three-day detention period Plaintiffs propose would have the predicable effect of precluding Defendants from enforcing the INA in Oregon. While it is "always in the public interest to protect constitutional rights," barring transfer to NWIPC would not actually protect those rights, *see supra*. But doing so would drastically undermine the public interest in enforcement of existing laws and protection of public safety. *See Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). Indeed, "[a]ny time a [government] is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (cleaned up).

## IV.    Plaintiffs' Proposed Injunction is Improper.

Even if the Court were to disagree with Defendants' arguments and conclude an injunction was appropriate, any preliminary relief granted must be no broader than necessary to remedy any demonstrated irreparable harms to Plaintiffs in this case. *See Gill v. Whitford*, 585 U.S. 48, 73 (2018); *see also California v. Azar*, 911 F.3d 558, 583 (9th Cir. 2018) ("highlight[ing] several concerns associated with overbroad injunctions"); *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1501 (9th Cir. 1996) ("[I]njunctive relief generally should be limited to apply only to named plaintiffs where there is no class certification.").

The Court, therefore, should decline Plaintiffs' invitations to enter an injunction forcing Defendants to take actions regarding "any individual" within the

state of Oregon apprehended by Defendants. Each component of Plaintiffs'
requested threefold injunction is overbroad, unworkable, potentially contrary to
law, and otherwise improper. Plaintiffs have not brought a putative class-action on
behalf of all individuals who are, or may be, apprehended by Defendants within the
state of Oregon. There has been no class certification nor motion for one. If the
Court is inclined to grant injunctive relief it should be narrowly tailored to apply
solely to CLEAR clients with established attorney-client relationships while still
allowing their transfer to NWIPC.

Regarding the three-business-day holding period and judicial warrant
requirement, as discussed above, ICE's holding facilities in Oregon are not equipped
for multi-day detentions. Chan Decl. ¶¶ 8–10. Upon apprehension in Oregon,
detainees are processed at a holding facility and immediately transferred to the
NWIPC in Tacoma. The NWIPC is equipped with overnight detention facilities and
provides detainees with ample access to their attorneys. Chan Decl. ¶¶ 12, 16, 22,
25. Defendants are vested with express statutory authority to determine to place
and transfer detainees. 8 U.S.C. § 1231(g); *see also Comm. of Cent. Am. Refugees v.
I.N.S.*, 795 F.2d 1434, 1439–40 (9th Cir.), amended, 807 F.2d 769 (9th Cir. 1986).

As all parties are aware, ICE arrests are overwhelmingly based on probable
cause and are thus executed without judicial warrants. *See supra* Background I.
Plaintiffs purported injuries would not be redressed by the requested judicial relief.
CLEAR clients and PCUN members will not gain greater access to legal counsel in
Oregon. The relief will not vindicate any purported constitutional or statutory right.

What it will do is require the release of apprehended aliens without any individualized determination as to the legality of that individual's legal status. Chan Decl. ¶ 24.

Plaintiffs' second requested injunctive relief simply states that the Court should require Defendants to provide "constitutionally sufficient access" to CLEAR clients and prospective clients in Defendants' custody. *See* Pls.' Mot. 2. Defendants provide detainees with several methods through which they can consult with legal counsel including in-person visits, phone access, teleconferences, virtual meetings, email, and interpreter services. Chan Decl. ¶¶ 17, 22. Nevertheless, it is well established that public officials and law enforcement officers have a duty to follow the constitution, and a vague injunction merely reaffirming that duty is duplicative, ineffectual, and moot.

Finally, Plaintiffs' request that Defendants inform them and this Court of the identity and location of every individual apprehended in Oregon within three hours which potentially violates privacy laws and is overbroad, impractical, and mooted by ICE's preexisting Online Detainee Locator System ("ODLS"). Chan Decl. ¶ 21. Plaintiffs seek the information of individuals who are neither CLEAR clients nor PCUN members. If the Court is inclined to grant injunctive relief, here too it should be narrowly fashioned to include notice to Plaintiffs regarding their own clients and members. Plaintiffs should be required to provide Defendants with a list of clients and members that field agents can cross-reference. Further a three-hour window for notice is arbitrary and unnecessary. Defendants typically publish detainee

**PAGE 35 -   DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER**

information on ODLS within hours. Chan Decl. ¶ 21.

## V.    Plaintiffs Must Post a Bond

If the Court is inclined to grant a temporary restraining order, it must do so "only if the movant gives security in an amount that the court considers proper to pay the posts and damages sustained by any party to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Accordingly, the Court should require Plaintiffs to post a bond pursuant to Rule 65(c).

**CONCLUSION**

Based on the foregoing, Defendants respectfully request that the Court deny Plaintiffs' Motion for a Temporary Restraining Order.

DATED this 20th day of October 2025.

SCOTT E. BRADFORD
United States Attorney
District of Oregon

*/s/ Sarah E. Feldman*
SARAH E. FELDMAN
Assistant United States Attorney
Attorneys for Defendants

## WORD COUNT CERTIFICATE

The preceding memorandum complies with the applicable word-count limit under LR 7-2(b), because it contains 9,190 words, based on the word-count function of the word processing system used to prepare the memorandum.  This word count includes headings, footnotes, and quotations, but excludes the caption, table of contents, table of authorities, signature block, and certificates of counsel.

Respectfully submitted this 20th day of October 2025.

SCOTT E. BRADFORD
United States Attorney
District of Oregon

*/s/ Sarah E. Feldman*
SARAH E. FELDMAN
Assistant United States Attorney
Counsel for Defendants