STEPHEN W MANNING, OSB No. 013373
stephen@innovationlawlab.org,smanning@ilgrp.com
TESS HELLGREN, OSB No. 191622
tess@innovationlawlab.org
JORDAN CUNNINGS, OSB No. 182928
jordan@innovationlawlab.org
KELSEY LYNN PROVO, OSB No. 145107
kelsey@innovationlawlab.org
NELLY GARCIA ORJUELA, OSB No. 223308
nelly@innovationlawlab.org
INNOVATION LAW LAB
333 SW 5th Ave., Suite 200
Portland, OR 97204-1748
Telephone: +1 503-922-3042

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### Eugene Division

| | |
|---|---|
| CLEAR CLINIC, PINEROS Y CAMPESINOS UNIDOS DEL NOROESTE, and LEON X, individually and on behalf of others similarly situated;<br><br>*Plaintiffs,*<br><br>v.<br><br>KRISTI NOEM, Secretary of the Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY ("DHS"); TODD LYONS, Acting Director of Immigration Customs Enforcement; CAMMILLA WAMSLEY, Seattle Field Office Director, Immigration and Customs Enforcement and Removal Operations; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT ("ICE"); PETE FLORES, Acting Commissioner of Customs and Border Protection; and U.S. CUSTOMS AND BORDER PROTECTION ("CBP"),<br><br>*Defendants.* | Case No. 6:25-cv-01906-AA<br><br>**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

## TABLE OF CONTENTS

I.     **INTRODUCTION** ...................................................................1

II.    **BACKGROUND** ....................................................................**5**

A.    Defendants' Policies and Practices Obstruct Access to Counsel............5

B.    The Impact of Defendants' Policies and Practices on Leon X and the Proposed Class ........................................................................9

III.   **ARGUMENT** .......................................................................**10**

     A.    Plaintiffs' Proposed Class Satisfies the Requirements of Rule 23(a). .......................................................................11

     B.    Plaintiffs' Proposed Class Satisfies the Requirements of Rule 23(b)(2). ....................................................................20

IV.   **CONCLUSION** ...................................................................**23**

# TABLE OF AUTHORITIES

**Cases**

*Adair v. England*, 2019 F.R.D. 5 (D.D.C. 2002) ........................................................... 23

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) ............................... 4, 19

*Caput v. NTT Security US Inc.*, 2019 WL 3308771 (C.D. Cal. Apr. 19, 2019)........................... 15

*Chhoeun v. Marin*, No. SACV 17-1898-CJC, 2018 WL 6265014 (C.D. Cal. Aug.

    14, 2018) ....................................................................................................... 16

*Doe v. Wolf*, 424 F. Supp. 3d 1028 (S.D. Cal. 2020).................................................... 5

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) .................................. 16

*Evon v. Law Offs. of Sidney Mickell*, 688 F.3d 1015 (9th Cir. 2012) .......................... 16

*Fraihat v. U.S. Immigr. & Customs Enf't*, 445 F. Supp. 3d 709 (C.D. Cal. 2020)................ 13, 18

*Freedman v. Louisiana-Pacific Corp.*, 922 F. Supp. 377 (D. Or. 1996) ...................... 11

*Giles v. St. Charles Health Sys., Inc.*, 294 F.R.D. 585 (D.Or. 2013)........................... 13

*Gray v. County of Riverside*, 2014 WL 5304915 (C.D. Cal. Sept. 2, 2014).......................... 4, 23

*Greater Los Angeles Agency on Deafness, Inc. v. Reel Servs. Mgmt. LLC*, 2014

    WL 12561074 (C.D. Cal. May 6, 2014) ............................................................ 20

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ...................................... 17, 18

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992)....................................... 17

*Harris v. Palm Springs Alpine Ests., Inc.*, 329 F.2d 909 (9th Cir. 1964) ................... 11

*Hernandez v. Lynch*, No. EDCV16-620-JGB, 2016 WL 7116611  (C.D. Cal. Nov.

10, 2016) .................................................................................................................. 17

*In re ConAgra Foods, Inc*., 302 F.R.D. 537 (C.D. Cal. 2014)...................................... 11

*In re Cooper Co. Inc. Sec. Litig.*, 254 F.R.D. 628 (C.D. Cal. 2009) ............................ 12

*In re Yahoo Mail Lit.*, 308 F.R.D. 577 (N.D. Cal. 2015)............................................. 21

*Inland Empire—Immigrant Youth Collective v. Nielsen*, 2018 WL 1061408  (C.D.

Cal. Feb. 26, 2018)............................................................................................. 15, 16

*Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161 (9th Cir. 2014) ........................................ 14

*Jordan v. Cty. of Los Angeles*, 669 F.2d 1311 (9th Cir. 1982) .................................... 12

*Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*,

244 F.3d 1152 (9th Cir. 2001) .............................................................................. 19

*Lynch v. Rank*, 604 F. Supp. 30 (N.D. Cal. 1984) ................................................. 12, 19

*Lyon v. U.S. Immigr. & Customs Enf't*, 300 F.R.D. 628 (N.D. Cal. 2014) ............ 17, 21

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) ................................... 14

*McCluskey v. Trs. of Red Dot Corp. Emp. Stock Ownership Plan & Tr.*, 268

F.R.D. 670 (W.D. Wash. 2010) ............................................................................ 13

*Moreno Gonzalez et. al. v. Noem*, No. 1:25-cv-13323, ECF 49 (N.D .Ill. Nov. 5,

2025) ................................................................................................................. 11, 20

*Ms. L. v. U.S Immigration & Customs Enf't ("ICE")*, 330 F.R.D. 284 (S.D. Cal.

2019) ................................................................................................................. 11, 22

*Murphy v. Precision Castparts Corp.*, 2018 WL 3151426  (D. Or. June 6, 2018)

    (Beckerman, J.), *report and recommendation adopted*, 2018 WL 3150675 (D.

    Or. June 27, 2018);....................................................................................... 14

*O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311 (C.D. Cal. 1998) ............................ 20

*Orantes-Hernandez v. Smith*, 541 F. Supp. 351 (C.D. Cal. 1982).................................. 5

*Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc.*,

    188 F.R.D. 365 (D. Or. 1998) ............................................................................. 11

*Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) ............................................................ 14

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010) ......................................... 13, 17, 21

*Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996 (9th Cir. 2018)...................................... 18

*Saravia v. Sessions*, 280 F. Supp. 3d 1168 (N.D. Cal. 2017) .................................. 12, 22

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) ............... 10, 11

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ............................................. 13, 16

*Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998).............................................. 16, 18, 21

*Weinberger v. Thornton*, 114 F.R.D. 599 (S.D. Cal. 1986).......................................... 17

*Wit v. United Behavioral Health*, 317 F.R.D. 106 (N.D. Cal. 2016)........................... 5, 14

**Other Authorities**

American Immigration Council, *Immigrants in Oregon* (2023)....................................... 2

Madeleine Moore and Rachel Alexander, *Salem sees at least 16 immigrants*

    *arrested on Veterans Day, groups say,* Salem Reporter (Nov. 11, 2025) ............................. 10

Mia Maldonado, *Oregon sees largest immigration raid under Trump 2.0 in Woodburn, group says*, Oregon Capital Chronicle (Oct. 31, 2025) ...................................... 10

Nicole Foy, *We Found That More Than 170 U.S. Citizens Have Been Held by Immigration Agents. They've Been Kicked, Dragged and Detained for Days*, ProPublica (Oct. 16, 2025) ................................................................................... 2

Oregon Commission on Hispanic Affairs, *Biennium Report* (2023) ............................................. 2

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
AND MEMORANDUM OF LAW IN SUPPORT OF MOTION**

Plaintiffs respectfully move this Court, pursuant to Federal Rule of Civil Procedure 23, to certify the following class with Plaintiff Leon X appointed as class representative and appointing the undersigned counsel as class counsel:

> All persons, since October 16, 2025 who have been arrested or are at risk of arrest for alleged civil immigration violations in the District of Oregon by Defendants or entities working in concert with them.

In accordance with Local Rule 7-1, Plaintiffs' counsel conferred with Defendants' counsel by video conference on November 12, 2025. Defendants' counsel represented that Defendants oppose this motion.

## I.    INTRODUCTION

Since mid-October 2025, Defendants have deployed numerous violent operations aimed at arresting and depriving Oregonians of Due Process rights, based solely on their perceived origin. Individuals arrested in these civil immigration enforcement actions are swiftly transported away out of the state and away from their families and resources, including legal representation. Defendants' actions are by design; they understand that by denying and limiting access to attorneys, individuals are more likely to remain detained and move swiftly toward deportation, in line with the Trump Administration's express quotas.

Alongside Organizational Plaintiffs, Individual Plaintiff Leon X brings this challenge on behalf of himself and similarly situated individuals. He seeks to represent an overarching class of individuals who have been arrested or are at risk of civil immigration arrest in Oregon and deprived of subsequent access to counsel before their transfer away from the District of Oregon. Through this case, Leon X seeks protection of his full right to meaningfully access counsel if subject to civil immigration detention, in accordance with U.S. law. To that end, Plaintiff Leon X respectfully moves this Court, pursuant to Federal Rule of Civil Procedure 23, to certify the following class of individuals (the "Access Class"):

> All persons, since October 16, 2025 who have been arrested or are at risk of arrest for alleged civil immigration violations in the District of Oregon by Defendants or entities working in concert with them.

Plaintiff Leon X further requests that the Court appoint him as representative of the Access Class and appoint the undersigned counsel as class counsel.

The proposed case readily meets the threshold requirements of Rule 23(a).

**Numerosity.** The proposed class is so numerous that joinder of all members is impracticable under Rule 23(a)(1). Oregon has a large immigrant population; according to data from the American Immigration Council, around 404,200 people in the state are foreign-born residents, which is nearly 10% of the state's total population. *See* American Immigration Council, *Immigrants in Oregon* (2023), *available at* https://map.americanimmigrationcouncil.org/locations/oregon/. Approximately one quarter of Oregon's immigrant population is estimated to be undocumented, and it is estimated that 89,000 U.S.-citizen Oregonians live in mixed-status households. *Id.* Almost 600,000 Oregonians are Latine, making up 14% of the state's total population. Oregon Commission on Hispanic Affairs, *Biennium Report* (2023), *available at* https://www.oregon.gov/oac/ocha/Documents/OCHA%202023%20Biennium%20Report%20%228%29.pdf. Thousands of Oregonians are thus vulnerable to being racially profiled and caught in Defendants' immigration enforcement dragnet, regardless of their current immigration or even citizenship status;[1] without prompt legal assistance or access to counsel, they are likely to face unlawful detention and even swift deportation without Due Process.

**Commonality.** The class claims raise numerous common questions of law and fact under Rule 23(a)(2). Each member of the proposed class will be harmed because of Defendants' policies and practices that obstruct access to counsel for Oregonians detained in Defendants' civil

---

[1] *See* Nicole Foy, *We Found That More Than 170 U.S. Citizens Have Been Held by Immigration Agents. They've Been Kicked, Dragged and Detained for Days*, ProPublica (Oct. 16, 2025), https://www.propublica.org/article/immigration-dhs-american-citizens-arrested-detained-against-will.

immigration enforcement actions. At its core, this case seeks to enforce the right to access to counsel, which impacts each and every class member. Common questions of law include whether Defendants are violating class members' right to counsel in contravention of the Fifth Amendment, the First Amendment, and the rights enshrined in the Immigration and Nationality Act ("INA") and its implementing regulations. Common answers as to the legality of Defendants' policies and practices and their implementation will drive the resolution of this litigation.

Common questions of fact pertaining to access to counsel include whether there is a policy/practice of denying access to counsel in Oregon before transferring detained noncitizens out of state; whether Defendants' policy/practice of denying access to counsel in Oregon is actively intended to undermine noncitizens' rights to counsel, including precluding their ability to timely file habeas petitions to challenge their unlawful custody in the District of Oregon; whether Defendants' widespread immigration arrests since October 16, 2025, are in accordance with law, including Defendants' statutory authority for warrantless arrest pursuant to 8 U.S.C. § 1157; whether recent First Amendment activity outside the ICE Field Offices poses a security concern that reasonably requires ICE to rush individuals out of the state, and whether any such activity has been actually observed to "escalate" when an individual is detained at an ICE Office; whether and when individuals detained by Defendants in Oregon can meaningfully access counsel after being transferred out of Oregon, including at the Tacoma NWIPC; and whether individuals detained by Defendants can be timely located by counsel following their transfer out of Oregon.

**Typicality.** Plaintiff's claims are typical of the claims of the class under Rule 23(a)(3). Since October 16, 2025, Respondents have engaged in widespread and indiscriminate efforts to detain non-citizens and deprive them of their Due Process rights to comply with quotas set by the Trump administration and achieve the goal of implementing the "largest deportation program of criminals in the history of America."[5] Moreover, Respondents have directed agents to push boundaries and increase numbers aggressively, including pushing collateral detentions.[18] By prioritizing numbers, Respondents have ignored the law and granted agents sweeping discretion to achieve this goal. Plaintiff Leon X asserts the same claims under the U.S. Constitution, the APA,

and the INA as the members of the proposed class. These claims arise from the same course of Defendants' conduct, and Leon X is united with putative class members in his interest in his right to counsel and in the injury that would result from its obstruction.

**Adequacy.** Leon X will fairly and adequately protect the class under Rule 23(a)(4), as he seeks relief on behalf of the class as a whole and has no interests antagonistic to other putative class members. Plaintiff Leon X seeks declaratory and injunctive relief that would benefit the class as a whole. His attorneys, proposed class counsel, have extensive experience in immigration law, civil rights litigation, and class action representation, including in other cases before this Court.

**Ascertainability.** Though not required in the Ninth Circuit, *see Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124-25 (9th Cir. 2017), the proposed class is ascertainable as it is defined by clear and objective criteria.

In addition, the proposed class meets the requirements of both Federal Rules of Civil Procedure 23(b)(1)(A) and 23(b)(2). Plaintiffs' proposed class satisfies Rule 23(b)(2) because Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Defendants' policies and practices deny access to counsel to individuals subject to arrest in civil immigration enforcement actions. This case also qualifies for certification under Rule 23(b)(1)(A) because Defendants have adopted a consistent set of policies and practices through which they obstruct access to counsel for putative class members; bringing separate action risks "inconsistent or varying adjudications . . . that would establish incompatible standards of conduct" for Defendants. F.R.C.P. 23(b)(1)(A). Through their denial of access to counsel, Defendants have denied putative class members their statutory and constitutional rights. Putative class members seek identical declaratory and injunctive relief that would remedy their harms in a single stroke.

Accordingly, this Court should grant class certification under Rules 23(b)(1)(A) and 23(b)(2) for purposes of entering Plaintiffs' requested class-wide preliminary and permanent injunctions. *See Gray v. County of Riverside*, 2014 WL 5304915, at *37 (C.D. Cal. Sept. 2, 2014)

(certification under 23(b)(1)(A) appropriate where "many individuals, all challenging a single government policy, bring separate suits for injunctive relief"); *Wit v. United Behavioral Health*, 317 F.R.D. 106 (N.D. Cal. 2016) (certification under Rule 23(b)(2) appropriate for purpose of entering injunctive relief where the plaintiff established that prerequisites in Rule 23(a) were also met). Numerous courts in this Circuit have certified similar actions brought by noncitizens challenging denial of counsel access while in government custody. *See, e.g.*, *Doe v. Wolf*, 424 F. Supp. 3d 1028, 1034–35 (S.D. Cal. 2020) (certifying class of individuals in Customs and Border Protection ("CBP") custody awaiting non-refoulement interviews under MPP 1.0 and challenging denial of access to legal representation); *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982) (provisionally certifying a class of Salvadoran citizens eligible to apply for asylum who have been or will be taken into immigration custody and challenge lack of advisals of right to apply for asylum). Plaintiffs respectfully request that this Court similarly certify the class proposed here.[2]

## II.    BACKGROUND

### A.  Defendants' Policies and Practices Obstruct Access to Counsel

Defendants' policies and practices effectively deny access to counsel by completely denying or severely limiting attorney visitation hours at the Oregon ICE Field Offices; moreover, Defendants process noncitizens, with the intent of depriving them of counsel, at locations where telephones are not made available. Without access to counsel, proposed class members, including Plaintiff PCUN's "members who may be taken into custody will be forced to make decisions about their rights without understanding what they may may be waiving or declining." ECF 3, Declaration of Reyna Lopez, ("Lopez Decl.") ¶ 24; *see also* ECF 26, Declaration of Debbie Denise Cabrales ("Cabrales Decl.") ¶ 14 (PCUN member describing how important it is to assist members of the community to secure legal representation quickly to "access due process and be heard

---

[2] In the alternative, the Court should provisionally certify the class for the purpose of entering a preliminary injunction. *Carrillo v. Schneider Logistics, Inc.*, 2012 WL 556309, at *9 (C.D. Cal. Jan. 31, 2012) ("courts routinely grant provisional class certification for purposes of entering injunctive relief"), *aff'd*, 501 F. App'x 713 (9th Cir. 2012). Provisional certification is not necessary here, however, because all requirements of Rule 23 are readily satisfied.

instead of being rapidly disappeared into the detention system"); Declaration of Marlina Campos ("Campos Decl.") ¶ 9 (expressing concern for two PCUN members who might give up their legal rights as they were denied access to counsel after detention).

Attorneys attempting to provide legal representation at the ICE Eugene Field Office have reported consistent denials of access to prospective and current clients. *See* ECF 18-1, Declaration of Katrina Noel Kilgren ("Kilgren Decl.") ¶ 4; *see also* Declaration of Katrina Kilgren in Support of Preliminary Injunction ("Kilgren Supp. Decl.") ¶¶ 3-12. Moreover, their ability to even *access* the building has drastically been impeded by Defendants in the past six months. Kilgren Decl. ¶¶ 5-6; Kilgren Supp. Decl. ¶ 11. In response to a Congressional inquiry, the Field Office Director has confirmed that officers in Eugene do not allow attorneys to meet with clients or prospective clients in the "secure area" of the Eugene Office.[3] And according to the Eugene Office Supervisory Detention and Deportation Officer, people detained at the Eugene Office do not have the right to an attorney and ICE will not delay transport to provide detained individuals access to counsel. Kilgren Supp. Decl. ¶ 11.

Defendants have also consistently denied access to counsel at the Portland ICE Field Office. *See, e.g.*, ECF 7, Declaration of Alena Tupper ("Tupper Decl.") ¶¶ 9, 30-36; ECF 33, Supplemental Declaration of Josephine Moberg ("Moberg Supp. Decl.") ¶¶ 7-19 (deprivation of access to U.S.-citizen client on October 17); ECF 5, Declaration of Josephine Moberg ("Moberg Decl.") ¶ 4 (summarizing multiple denials); ¶¶ 15-21 (denying access and falsely telling Moberg that her client refused a visit). Defendants have repeatedly denied client meetings, *see* Moberg Decl. ¶ 21; Tupper Decl. ¶ 26; ECF 31, Declaration of Sara Eddie ("Eddie Decl.") ¶¶ 2-10;

---

[3] Troublingly, the Field Office Director also informed the Congressional office that there had been no check-ins involving attorneys at the Eugene Office for the past month – which is untrue based on the personal experience of attorney Katrina Kilgren. Kilgren Decl. ¶ 7. This is not the first time that Defendants have provided inaccurate information to another branch of government; they have previously asserted to this Court on a separate matter that ICE officers allow access to attorneys with a valid G-28 form, when local attorneys have been denied access consistently over the past four months even when providing such forms. *Id.* ¶¶ 8-12.

Declaration of Yessenia Martinez ("Martinez Decl.") ¶ 6, and pre-representational meetings alike, *see* Tupper Decl. ¶¶ 22-23, 28-29, Moberg Decl. ¶¶ 30-3, Supporting Declaration of Natalie Lerner ("Supp. Lerner Decl.") ¶¶ 3-5, 9, 12. "On every occasion, [CLEAR Clinic] attorneys have been denied full, and often any, access to our clients and prospective clients at the Portland ICE field office[.]" Tupper Decl. ¶ 23; *see also id.* ¶¶ 28-29 (denial of access to four prospective clients on October 15, 2025); Moberg Decl. ¶¶ 5-14 (denial of access to counsel to two prospective clients after waiting in lobby for over an hour); Moberg Decl. ¶¶ 22-31 (denial of access to prospective client with TPS before transferring out of state). Attorneys are not told why their clients or class members are being detained, nor are they allowed to receive and review critical documents pertaining to the class members or clients' cases, which allow attorneys to review the legality of the Defendants' use of executive detention. Moberg. Decl. ¶ 25; Supp. Lerner Decl. Ex. B ¶¶ 11 (describing no-contact room at Portland ICE office, where there is no mechanism through which to pass papers) 22 (request to review clients' paperwork was denied).

Attorneys are often denied access to the Portland and Eugene Offices entirely or are forced to wait for hours, including outside. *See, e.g.,* Kilgren Decl. ¶ 10 (detailing repeated attempts to access detained client at the Eugene Office without any response, resulting in client's ultimate transfer to Tacoma, Washington, without prior access to counsel); Martinez Decl. ¶ 6; Tupper Decl. ¶ 23, *id.* ¶ 27 (ICE transferred client out the back door while attorney waited in the lobby); Moberg Supp Decl. ¶ 8 ("ICE did not permit me to enter the building")*;* Declaration of Claire Fawcett ("Fawcett Decl.") ¶ 7. Defendants also withhold the whereabouts of clients and provide false information in a hide-and-seek practice in which the individual is present in the district when the attorney makes contact, but DHS hides this fact. Eddie Decl. ¶¶ 2-10 (ICE transferred client out of state after falsely telling her client was not being held at Portland ICE Office); ECF 27, Declaration of Emma Gill ("Emma Gill Decl.") ¶ 8 (withholding client's whereabouts and giving her false information); Tupper Decl. ¶¶ 26-27 (ICE transferred client out of state after alleging person had "refused" a visit when client had actually repeatedly requested to speak with a lawyer); Moberg

Supp Decl. ¶¶8-12, 19 (ICE provided conflicting and non-responsive information when she sought to meet with her U.S. Citizen client).

Where ICE does provide detained individuals access to counsel, the length of that access varies greatly, is left to the discretion and control of the jailer, and does not take into account representational needs; meetings can be as little as 60 seconds, Supp. Lerner Decl., Ex. B ¶ 15, and not more than 30 minutes and not in a confidential meeting space, Tupper Decl. ¶ 24. *See also* Tupper Supp. Decl. ¶ 9 (explaining that when attorneys are not entirely denied access to clients and prospective clients, access is "restricted to about a ten-minute meeting with each person"); Moberg Decl. ¶¶ 30-31 (recounting prospective client meeting being cut visit short, preventing provision of meaningful legal advice); Declaration of Esmeralda Santos ("Santos Decl.") ¶ 3 (recounting client's transfer to Tacoma immediately following ICE officer's termination of client meeting after only four minutes);  Supp. Lerner Decl. Exs. A-D (attorneys describing their experience on October 30, 2025 when ICE interrupted their interview with a client after only a few minutes, and when they requested more time, the ICE officer said they could have just 60 seconds before ICE transported their client out of the facility).

Defendants' policies and practices following transfer outside of Oregon also continue to deny access to counsel by limiting access at detention facilities and disappearing detained class members at ICE facilities across the country within its expansive detention network. While there is rapid movement from the Oregon ICE Facilities to the NWIPC, Defendants further limit access to counsel through delays in updating the ICE Online Detainee Locator System ("ODLS"). *See, e.g.*, Declaration of Elisabeth Sethi ("Sethi Decl.") ¶ 5; Miranda Decl. ¶ 5; Third Declaration of Alena Tupper Third ("Third Tupper Decl.") ¶ 5; ECF 29, Declaration of Natalie ("Lerner Decl.") ¶¶ 14-18. Attorneys have difficulties accessing clients and class members detained at the NWIPC both in virtual and in-person visitation.  *See* ECF 28, Declaration of Kathleen Marie Lowman Pritchard ("Pritchard Decl.") ¶¶ 4, 8, 10-17; Tupper Supp Decl. ¶ 13-18. Further, rapid transfers from NWIPC to other detention locations across the country effectively prevent attorneys from accessing their clients.  *See* Pritchard Decl. ¶¶ 4 (describing ICE practice of transferring clients

and prospective clients from Tacoma to detention centers across the country and even outside of the country), 17 (client transferred to Fort Bliss); Lerner Decl. ¶¶ 14-19 (Oregonian transferred to Arizona and then to Mississippi); Gill Decl. ¶ 15 (multiple Oregonians transferred to facilities in Louisianna, Mississippi, and Texas); Supporting Declaration of Sara Denniston Eddie ("Eddie Supp. Decl.") ¶¶ 6-9 (client transferred from Tacoma to various locations in New Mexico); Sethi Decl. ¶ 2, 6 (client transferred from Tacoma to "staging" area in Arizona, then to the Florence Corrections Center); Declaration of Luis Garcia ("Garcia Decl.") ¶¶ 6-13 (client transferred from Tacoma to New Mexico); Santos Decl. ¶¶ 6-7 (client transferred from Tacoma to Louisiana within a week of detention; another client transferred back and forth between Tacoma and Alaska); Declaration of Jose G. Miranda ("Miranda Decl.") ¶¶ 8-9 (detailing difficulty in connecting Oregonians with counsel when their location is unknown or where ICE re-transfers between facilities).

### B. The Impact of Defendants' Policies and Practices on Leon X and the Proposed Class

Because of Defendants' policies, patterns, and practices of denying detained people access to counsel, Plaintiff Leon X and proposed class members are now living in fear.

In recent weeks, Defendants' enforcement practices have become increasingly aggressive, with masked immigration agents targeting farmworkers and Latino communities for illegal stops and arrests, followed by rapid transfers outside of Oregon before those arrested can speak with counsel. Over the past month, ICE presence in Latinx communities and enforcement activity have sharply risen. *See* Lopez Decl. ¶¶ 25, 28-29; ECF 34, Supplemental Declaration of Reyna Lopez ("Lopez Supp. Decl.) ¶¶ 4-5; ECF 24, Declaration of Alyssa Walker-Keller ("Walker Decl.") ¶ 4 (documenting over 1,500 calls to the PIRC hotline and 67 confirmed detentions where every caller requested legal assistance between October 16 and 21, 2025 alone);  Declaration of Merlina Campos ("Campos Decl.") ¶¶ 5-6; Supp. Lerner Decl. ¶¶ 9-11. On October 30, 2025, Defendants conducted the single largest immigration raid in Oregon under this administration, arresting over

30 people in Woodburn.[4] Campos Decl. ¶¶ 5-6; Supp. Lerner Decl. ¶¶ 9-11. On November 11, 2025, Defendants conducted one of the largest ICE raids in Salem, Oregon targeting farmworkers.[5]

Without the ability to speak with counsel before they are transferred away, individuals who are arrested lose the opportunity to raise the arguments that could keep them in Oregon and prevent them from disappearing into Defendants' vast detention apparatus. In spite of having two deferred actions (through DACA and a pending application for U Nonimmigrant Status), Leon X reasonably fears he too will be detained by Defendants and whisked out of state before he can access his immigration attorneys. Declaration of Leon X ("Leon Decl.") ¶¶ 7-8.

Proposed class members include Plaintiff PCUN's members, many of whom are Latinx or in mixed-status families. Lopez Decl. ¶¶ 14, 20. Like Leon X, these individuals are "incredibly fearful" that they will be subjected to immigration arrests and denied the opportunity to work with counsel to fight to stay in Oregon with their families and community. Lopez Supp. Decl. ¶¶ 7-8. To avoid this prospect, PCUN's members have stopped attending the organization's programming, stopped going to work, taking their children to school, or doing any activity that will require them to leave their homes. *See* Lopez Supp. Decl. ¶¶ 5, 9-10 (describing fear among PCUN's members), *see also* Campos Decl. ¶¶ 12-24.

## III.     ARGUMENT

A plaintiff whose lawsuit meets the requirements of Rule 23 has a "categorical" right "to pursue his claim as a class action." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). To meet these requirements, the "suit must satisfy the criteria set forth in

---

[4] *See* Mia Maldonado, *Oregon sees largest immigration raid under Trump 2.0 in Woodburn, group says*, Oregon Capital Chronicle (Oct. 31, 2025), https://oregoncapitalchronicle.com/2025/10/31/oregon-sees-largest-immigration-raid-under-trump-2-0-in-woodburn-group-says/.

[5] See Madeleine Moore and Rachel Alexander, *Salem sees at least 16 immigrants arrested on Veterans Day, groups say,* Salem Reporter (Nov. 11, 2025), https://www.salemreporter.com/2025/11/11/salem-sees-at-least-16-immigrants-arrested-on-veterans-day-groups-say/, https://perma.cc/AU9T-6TH3 (last visited Nov. 12, 2025)

[Rule 23(a)] (*i.e.*, numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." *Id*.

For the reasons discussed below, Plaintiffs' proposed class satisfies all four Rule 23(a) prerequisites. The proposed class likewise meets the requirements for certification under Rule 23(b)(2). The Court should therefore certify the proposed Access Class, in line with numerous court decisions certifying similar classes in similar actions challenging the federal government's implementation of immigration enforcement actions. *See, e.g.*, *Ms. L. v. U.S Immigration & Customs Enf't ("ICE")*, 330 F.R.D. 284, 292-93 (S.D. Cal. 2019) (certifying class consisting of parents who entered the U.S. at or between designated ports of entry who (1) have been, are, or will be detained in immigration custody by the DHS, and (2) have a minor child who is or will be separated from them absent a determination that the parent is unfit or presents a danger to the child); *cf. Moreno Gonzalez et. al. v. Noem*, No. 1:25-cv-13323, ECF 49 (N.D .Ill. Nov. 5, 2025) (granting relief, via TRO, to plaintiffs and putative class members detained at temporary ICE holding facility, including measures to improve access to counsel).

**A.    Plaintiffs' Proposed Class Satisfies the Requirements of Rule 23(a).**

**1.  The Proposed Class Satisfies the Numerosity Requirement.**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticability does not mean impossibility," only the "difficulty or inconvenience in joining all members of the class." *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 568 (C.D. Cal. 2014) (quoting *Harris v. Palm Springs Alpine Ests., Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964)). "Plaintiffs need not be able to identify all Class Members, so long as there are enough to make joinder impracticable." *Freedman v. Louisiana-Pacific Corp*., 922 F. Supp. 377, 398 (D. Or. 1996). Although there is no numerical cutoff to determine whether a class is sufficiently numerous, courts in the Ninth Circuit and in this district generally presume sufficient numerosity when the plaintiff class contains forty or more members. *See, e.g.*, *Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc.*, 188 F.R.D. 365, 372 (D. Or. 1998);

*In re Cooper Co. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009); *see also Jordan v. Cty. of Los Angeles*, 669 F.2d 1311, 1319-20 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982)*.*

Plaintiffs here do not need to identify a precise number of class members in order to be granted class certification. "Where a plaintiff seeks 'only injunctive and declaratory relief, the numerosity requirement is relaxed and plaintiffs may rely on reasonable inferences arising from plaintiffs' other evidence that the number of unknown and future members is sufficient to make joinder impracticable.'" *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1203 (N.D. Cal. 2017) (quoting *Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr.*, 317 F.R.D. 91, 100 (N.D. Cal. 2016)), *aff'd*, 867 F.3d 1093 (9th Cir. 2017). Similarly, "a court may draw a reasonable inference of class size from the facts before it." *Lynch v. Rank*, 604 F. Supp. 30, 36 (N.D. Cal. 1984), *aff'd*, 747 F.2d 528 (9th Cir. 1984), *opinion amended on reh'g*, 763 F.2d 1098 (9th Cir. 1985).

The proposed class in this case easily meets the requirements of Rule 23(a)(1). Approximately 10% of the population in Oregon is foreign-born, and thus susceptible to immigration enforcement; of these individuals, one-quarter (approximately 100,000) are estimated to be undocumented. Nor is the class limited to these individuals; individuals in a range of immigration status may be and indeed have been swept up in Defendants' immigration enforcement sweeps.[6]

Joinder of similarly situated individuals is further impeded by the circumstances of this case. In addition to the sheer number of similarly situated individuals, courts may consider putative class members' geographic dispersion, financial resources, and ability to file individual lawsuits

---

[6] *See, e.g.,* Nicole Foy, *We Found That More Than 170 U.S. Citizens Have Been Held by Immigration Agents. They've Been Kicked, Dragged and Detained for Days*, ProPublica (Oct. 16, 2025), https://www.propublica.org/article/immigration-dhs-american-citizens-arrested-detained-against-will; Ryan J. Foley, *After rescinding protections, ICE is moving to deport more immigrants who were victims of crime*, The Associated Press (Sept. 16, 2025), https://www.ap.org/news-highlights/spotlights/2025/after-rescinding-protections-ice-is-moving-to-deport-more-immigrants-who-were-victims-of-crime/ (ICE may now detain U and T visa holders, under new policy).

in determining the impracticability of joinder. *See McCluskey v. Trs. of Red Dot Corp. Emp. Stock Ownership Plan & Tr.*, 268 F.R.D. 670, 674 (W.D. Wash. 2010); *see also Fraihat v. U.S. Immigr. & Customs Enf't*, 445 F. Supp. 3d 709, 737 (C.D. Cal. 2020) (holding that "obstacles to accessing counsel" impeding individual class members from proceeding on their own weighed in favor of finding joinder impracticable), *rev'd on other grounds*, 16 F.4th 613, 635 (9th Cir. 2021); *Rodriguez v. Hayes*, 591 F.3d 1105, 1123 (9th Cir. 2010) (finding numerosity satisfied, in part, because of "the severe practical concerns that would likely attend [prospective immigrant class members] were they forced to proceed alone."). Putative class members here are located across the state of Oregon; a vast number of these individuals meet the income threshold to be eligible for free legal services through Equity Corps of Oregon, meaning their financial resources to independently pursue district court litigation are necessarily limited. Additionally, putative class members, including Plaintiff Leon X, rightfully fear retaliation through immigration enforcement actions if they come forward to bring a lawsuit of this kind. *See* Leon Decl. ¶ 9.

In light of the significant number of individuals likely to be subjected to Defendants' widespread arrests, and the additional circumstances that impede joinder, the proposed Access Class meets the numerosity requirement.

### 2. Proposed Class Members' Claims Raise Questions of Law or Fact Common to the Class

The proposed Access Class meets the requirement of Rule 23(a) because proposed class members claims pose "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requirement "has been construed permissively." *Giles v. St. Charles Health Sys., Inc.*, 294 F.R.D. 585, 590 (D.Or. 2013) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)). "What matters to class certification . . . is not the raising of common questions—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (internal quotation marks omitted). A plaintiff "need not show . . . that every question in the case, or even a preponderance of questions, is capable of class

wide resolution." *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (quotation marks omitted). Rather, even one shared legal issue can be sufficient. *See, e.g.*, *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) (noting that "commonality only requires a single significant question of law or fact"); *Walters*, 145 F.3d at 1046 ("What makes the plaintiffs' claims suitable for a class action is the common allegation that the INS's procedures provide insufficient notice.").

Class members need not be identical in all respects, and commonality may be satisfied, notwithstanding some variation among putative class members' questions of law and fact, where the harm alleged is common to all class members. *Murphy v. Precision Castparts Corp.*, 2018 WL 3151426, at *2 (D. Or. June 6, 2018) (Beckerman, J.), *report and recommendation adopted*, 2018 WL 3150675 (D. Or. June 27, 2018); *Wit*, 317 F.R.D at 127. Accordingly, the existence of "shared legal issues with divergent factual predicates" is sufficient to satisfy Rule 23. *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) (quoting *Hanlon*, 150 F.3d at 1019). In civil rights suits such as this one, commonality is satisfied where "the lawsuit challenges a system-wide practice or policy that affects all of the putative class members. Under such circumstances, individual factual differences among class members pose no obstacle to commonality." *Parsons*, 754 F.3d at 682 (quoting *Rosas v. Baca*, 2012 WL 2061694, at *3 (C.D. Cal. June 7, 2012)).

The proposed Access Class readily satisfies Rule 23(a)(2)'s commonality requirement. All members of the proposed class have been arrested or are at risk of arrest for alleged civil immigration violations and subjected to the same policies or practices that violate the INA, its implementing regulations, and the Constitution. There are thus numerous questions of law and fact common to the proposed class, which predominate over any individual questions, including but not limited to:

- Whether Defendants' widespread immigration arrests since October 16, 2025 are in accordance with law, including Defendants' statutory authority for warrantless arrest pursuant to 8 U.S.C. § 1157;

14

- Whether there is a policy/practice of denying access to counsel in Oregon before transferring detained noncitizens out of state;

- Whether Defendants' policy/practice of denying access to counsel in Oregon is actively intended to undermine noncitizens' rights to counsel, including precluding their ability to timely file habeas petitions to challenge their unlawful custody in the District of Oregon;

- Whether recent First Amendment activity outside the ICE Field Offices poses a security concern that reasonably requires ICE to rush individuals out of the state, and whether any such activity has been actually observed to "escalate" when an individual is detained at an ICE Office;

- Whether and when individuals detained by Defendants in Oregon can meaningfully access counsel after being transferred out of Oregon, including at the Tacoma NWIPC;

- Whether individuals detained by Defendants can be timely located by counsel following their transfer out of Oregon; and

- Whether class members have suffered harm as a result of Defendants' unlawful obstruction of access to counsel.

Any one of these common legal or factual issues, standing alone, is enough to satisfy Rule 23(a)(2)'s permissive standard. *See Inland Empire—Immigrant Youth Collective v. Nielsen*, 2018 WL 1061408, at *8 (C.D. Cal. Feb. 26, 2018) (quoting *Perez-Olano v. Gonzalez*, 248 F.R.D.2 48, 257 (C.D. Cal. 2008)); *Caput v. NTT Security US Inc.*, 2019 WL 3308771, at *2 (C.D. Cal. Apr. 19, 2019) ("For the commonality requirement to be met, there must only be one single issue common to the proposed class." (quoting *Haley v. Medtronic*, 169 F.R.D. 643, 648 (C.D. Cal. 1996) (quotation marks and alterations omitted)).

The claims of Leon X and the putative class members share a common core of facts and address a common injury. Because Leon X, like putative class members, fears immigration arrest for an alleged civil immigration violation resulting in detention and transfer without access to counsel, Leon X and the proposed class members "have suffered the same injury." *Wal-Mart*

15

*Stores,* 564 U.S. at 350 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). And that common injury is clearly "capable of class wide resolution." *Id.*

Should the Court agree that Defendants violated the U.S. Constitution and exceeded their authority under the INA, the APA, or any other law, all individuals who fall within the proposed class will benefit from the requested relief: declaratory and injunctive relief guaranteeing meaningful access to counsel before they are transferred out of the District of Oregon. A common answer as to the legality of the Defendants' policies and practices that obstruct access to counsel will thus "drive the resolution of the litigation." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (quoting *Wal-Mart*, 564 U.S. at 350).

Significantly, courts have made clear that even "[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Evon v. Law Offs. of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012) (citation and internal quotation marks omitted); *see also Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) ("Differences among the class members with respect to the merits of their actual document fraud cases, however, are simply insufficient to defeat the propriety of class certification. What makes the plaintiffs' claims suitable for a class action is the common allegation that the INS's procedures provide insufficient notice."); *see also Chhoeun v. Marin*, No. SACV 17-1898-CJC, 2018 WL 6265014, at *5 (C.D. Cal. Aug. 14, 2018) (commonality satisfied where "[t]he central question in [the] case is whether the Government's policy of revoking proposed class members' release and re-detaining them without any procedural protections is unlawful"); *Inland Empire–Immigrant Youth Collective*, 2018 WL 1061408, at *9 (commonality satisfied where plaintiffs "challenge[d] Defendants' common termination policies and practices as categorically violating the [Administrative Procedure Act] and the Due Process Clause—not the agency's ultimate exercise of discretion with respect to each recipient" (citation and internal quotation marks omitted)). Here, any factual difference that may exist between Leon X and individual putative class members are immaterial to their core claim that Defendants' unlawfully obstruct their right to counsel. *See Hernandez v. Lynch*, No. EDCV16-620-JGB, 2016 WL 7116611, at *19 (C.D. Cal.

16

Nov. 10, 2016) (granting certification in challenge to U.S. immigration officials' policies and practices surrounding bond requirements for detainees even though outcome of individual bond cases would depend on the facts of each case); *Lyon v. U.S. Immigr. & Customs Enf't*, 300 F.R.D. 628, 642 (N.D. Cal. 2014) (holding that the fact that a policy limiting access to counsel is enforced in a less-than-uniform manner does not negate a finding of commonality).

### 3.  Individual Plaintiff's Claims Are Typical of Class Members' Claims

Rule 23(a)(3) requires that "the claims . . . of the representative parties [be] typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). The purpose of this requirement is to "assure[] that the interests of the named representatives align with those of the class" as a whole. *Weinberger v. Thornton*, 114 F.R.D. 599, 603 (S.D. Cal. 1986). The typicality standard is also "permissive" in that the claims of the individual plaintiffs are "typical" if "they are reasonably co-extensive with those of absent class members; [the claims] need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the individual plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quotation marks omitted); *see also Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (typicality satisfied because "though Petitioner and some of the other members of the proposed class are detained under different statutes and are at different points in the remand process . . . they . . . raise similar constitutionally-based arguments and are alleged victims of the same practice of prolonged detention while in immigration proceedings"); *Staley v. Kulongoski*, No. 3:00-cv-00078-ST, Dkt. No. 31, Order at 7 (D. Or. 2000) (plaintiffs alleging systemic violations of the Social Security Act, ADA, Rehabilitation Act, and Due Process Clause "easily" met the typicality requirement by showing that they had all been denied needed Medicaid services).

Individual Plaintiff Leon X satisfies Rule 23(a)(3)'s typicality requirement. Plaintiff Leon X, like all putative class members, is an Oregonian who is at risk of immigration enforcement for

alleged immigration violations and would likely be deprived of meaningful access to counsel if detained. The unlawful barrier imposed on the Plaintiffs—Defendants' obstruction of access to counsel before transfer out of the District of Oregon—will be imposed equally on every class member detained through Defendants' arrests. Therefore, the claims of Leon X are substantially identical to those of the proposed class members. Although putative class members' underlying circumstances may differ in terms of the details of their arrest and in terms of their immigration status and available options, Leon X is nevertheless typical of class members because they will suffer the same substantial, irreparable harm: detention and rapid transfer out of Oregon without access to counsel, potentially leading to prolonged unlawful custody, ongoing restrictions on access to counsel, and deportation without due process of law. Because these common harms arise from the same course of conduct by Defendants, in violation of the same constitutional and statutory protections, Leon X's claims typify the claims of the putative class members.

Moreover, as with commonality, any factual differences between the harms suffered by Leon X and the putative class members are not sufficiently material to defeat typicality. *See Hanlon*, 150 F.3d at 1020 (under "permissive" typicality standard, representative claims need only be "reasonably co-extensive with those of absent class members; they need not be substantially identical."); *Fraihat*, 445 F. Supp. 3d at 739 (holding that the availability of individualized habeas relief to class members did not bar a finding of typicality).

### 4. Individual Plaintiff Leon X Will Fairly and Adequately Protect the Interests of the Proposed Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy depends on "the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." *Walters*, 145 F.3d at 1046 (quotation marks omitted); *see also Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1007 (9th Cir. 2018) ("Determining whether representation is adequate requires the court to consider two questions: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members

and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" (quotation marks omitted)). Plaintiffs' counsel are deemed qualified when they possess experience in previous class actions and cases involving the same area of law. *See Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001); *Lynch*, 604 F. Supp. at 37 (N.D. Cal. 1984). Both Plaintiffs and their counsel satisfy these requirements.

First, Individual Plaintiff Leon X will fairly and adequately protect the interests of the proposed class. Leon X does not seek any unique or additional benefit from this litigation that may make his interests different from or adverse to those of absent class members. Leon Decl. ¶ 10 ("I am not asking for special treatment; I am asking for the same constitutional protections that every person on U.S. soil is supposed to have."). Instead, his aim is to secure injunctive relief that will protect himself and the entire class from Defendants' challenged policies and practices. Accordingly, the proposed class representative lacks any antagonism with the class, and his interests align squarely with the other proposed class members. *See id.* ¶¶ 10-11.

Second, putative class counsel will be able to prosecute this matter vigorously and adequately protect the interests of absent class members. Plaintiffs are represented by counsel from Innovation Law Lab, an organization with a demonstrated commitment to protecting the rights and interests of noncitizens. *See* Declaration of Stephen W. Manning. Proposed class counsel have substantial experience handling complex litigation pertaining to immigrants' rights, including a number of class action lawsuits. *Id.* Class counsel will continue to vigorously represent both the named and absent class members.

### 5.  The Proposed Class is Sufficiently Ascertainable.

Although ascertainability is not required for class certification in the Ninth Circuit, *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017), the proposed class is, nevertheless, sufficiently ascertainable because it is "administratively feasible" to ascertain whether an individual is a member. *Greater Los Angeles Agency on Deafness, Inc. v. Reel Servs. Mgmt. LLC*,

2014 WL 12561074, at *5 (C.D. Cal. May 6, 2014) (quotation marks omitted) (finding ascertainable proposed class of individuals who are deaf or hard of hearing and require closed captioning).

Here, membership in the class is defined by clear and objective criteria—class members are: (a) individuals who have been arrested or are at risk of arrest by Defendants for alleged civil immigration violations, (b) in the District of Oregon, (c) since October 16, 2025. These parameters are "precise, objective, and presently ascertainable." *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998) (quotations omitted) (observing that class definitions for actions maintained under Rule 23(b)(2) involve less precision than actions for damages requiring notice to the class); *see also, e.g.*, *Lamumba Corp. v. City of Oakland*, 2007 WL 3245282, at *4 (N.D. Cal. Nov. 2, 2007) ("Plaintiffs putative class is based on the objective factors of business ownership, race, and indebtedness to the City, and therefore is sufficiently defined."). The fact that some administrative process may be required to identify class members does not undermine ascertainability. *See, e.g.*, *Moreno v. Napolitano*, 2014 WL4911938, at *6-7 (N.D. Ill. Sept. 30, 2014) (finding that the necessity of manually reviewing tens of thousands of detainer forms to identify class members did not undermine ascertainability) (citing *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 539 (6th Cir. 2012)).

**B.    Plaintiffs' Proposed Class Satisfies the Requirements of Rule 23(b)(2).**

In addition to satisfying the four requirements of Rule 23(a), the proposed class also satisfies Rule 23(b). While certification is appropriate where the class fits into only one Rule 23(b) category, the class here meets the requirements of both Rules 23(b)(2) and 23(b)(1)(A).

**1.    Certification is Proper Under Rule 23(b)(2).**

Certification of a class under Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). In the Ninth Circuit, "[i]t is sufficient" that "class members complain of a pattern or

practice that is generally applicable to the class as a whole." *Walters*, 145 F.3d at 1032, 1047. "'The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Lyon v. ICE*, 308 F.R.D. 203, 213 (N.D. Cal. 2015) (quoting *Wal-Mart*, 564 U.S. at 360).

Here, Plaintiff Leon X alleges that Defendants are acting on grounds that "apply generally to the class" because they are broadly applying policies and practices that deny individuals detained in immigration enforcement actions from accessing counsel before they are transferred out of the District of Oregon. Although there may be factual differences between the resulting circumstances of each putative class member, Rule 23(b)(2) asks "only . . . whether class members seek uniform relief from a practice applicable to all of them." *Rodriguez*, 591 F.3d at 1125. That is the case here: Plaintiffs seek only injunctive and declaratory relief to remedy systemic violations of putative class members' statutory and constitutional rights. These remedies do not require individualized determinations of eligibility for relief and would "provide relief to all class members, or to none of them." *Fraihat*, 445 F. Supp. 3d at 741 (rejecting argument that detention of class members under different conditions and at different facilities precluded class certification).

Nor do factual differences among putative class members preclude certification. In contrast to Rule 23(b)(3) classes, "the focus [in a Rule 23(b)(2) class] is not the claims of the individual class members, but rather whether [the Defendants] ha[ve] engaged in a 'common policy.'" *In re Yahoo Mail Lit.*, 308 F.R.D. 577, 599 (N.D. Cal. 2015) (quotation marks omitted). Thus, "[t]he fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2)." *Rodriguez,* 591 F.3d, at 1123. In any case, any material factual differences among the experiences of individual putative class members are minor. *See supra* Part III. A. 2-3 (discussing commonality and typicality of putative class members). And since Leon X seeks uniform relief from a uniformly applicable practice, certification is warranted even where some class members "have suffered . . . different injuries from the challenged practice." *Rodriguez*, 591 F.3d at 1125; *Unknown Parties*,

21

163 F. Supp. 3d at 643 (rejecting argument that plaintiffs were "challeng[ing] . . . various practices amongst [multiple] facilities," because plaintiffs identified the "systemic nature of the conditions" at CBP detention facilities) (internal quotation marks omitted). Indeed, even if such claims "may involve some individualized inquiries," the relevant question for purposes of Rule 23(b)(2) is "the 'indivisible' nature of the claim alleged and the relief sought." *Ms. L. v. U.S. Immigr. & Customs Enf't*,, 331 F.R.D. 529, 541 (S.D. Cal. 2018) (certifying Rule 23(b)(2) class); *Lyon v. U.S. Immigr. & Customs Enf't*, 308 F.R.D. 203, 214 (N.D. Cal. 2015) (rejecting the argument that ICE facilities had different attributes, because "these differences do not negate the fact that Plaintiffs seek relief that is applicable to . . . the entire class."); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1205 (N.D. Cal. 2017) (Rule 23(b)(2) satisfied "[b]ecause a single injunction can protect all class members' procedural due process rights.").

Therefore, the proposed class should be certified under Rule 23(b)(2).

## 2.  Certification is Proper Under Rule 23(b)(1)(A).

The proposed class may also be properly certified under Rule 23(b)(1)(A). Under that provision, class certification is appropriate if the prosecution of separate actions by individual members of the class would create the risk of "inconsistent or varying adjudications … that would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A).

The instant case presents "[a] 'core example' of an action under 23(b)(1)(A)": where "many individuals, all challenging a single government policy, bring separate suits for injunctive relief." *Gray*, 2014 WL 5304915, at *37 (quoting Newberg on Class Actions § 4:11 (5th ed.)). Specifically, the Defendants here have adopted consistent policies and practices through which they seek to bar detained Oregonians from accessing counsel before they are transferred out of state. Individual actions challenging and seeking to define the Defendants' authority to do so present a significant risk of varying adjudications defining obligations and requirements in a manner that is confused and inconsistent, resulting in some individuals being afforded their counsel rights while others are

impeded or obstructed from accessing counsel altogether. Accordingly, certification under 23(b)(1)(A) is appropriate. *Gray*, 2014 WL 5304915, at \*37 (Rule 23(b)(1)(A) certification is appropriate where "if each member of the proposed class litigated their claims individually there would be a risk that each individual case would impose a different standard" on the defendants); *see also, e.g.*, *Hernandez*, 2016 WL 7116611, at \*19 (certifying 23(b)(1)(A) class of plaintiffs challenging U.S. immigration officials' policies and practices surrounding bond requirements for detainees, stating that "[t]he Rule's requirements are easily satisfied here because if each Proposed Class member challenged the policies and practices at issue individually, there is a risk of inconsistent adjudications that would subject Defendants to different rulings on the validity of these policies and practices"); *Adair v. England*, 2019 F.R.D. 5, 12 (D.D.C. 2002) (certifying under 23(b)(1)(A) a class of plaintiffs who challenged a single policy regarding the hiring, retention, and promotion of Navy chaplains, finding that such certification "is most common in cases in which the class seeks declaratory or injunctive relief against the government to provide unitary treatment to all members of a defined group" and cautioning that individual actions "could well lead to a scenario in which the Navy has to follow incompatible standards of conduct" (quotation marks omitted)).

Because Plaintiff Leon X and proposed class members seek injunctive relief against a single government policy and separate adjudications regarding the policy present the risk of "inconsistent or varying adjudications and would establish incompatible standards for the party opposing the class," certification under Rule 23(b)(1)(A) is proper.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion and enter an order certifying the proposed class under Rule 23(b)(2) and/or Rule 23(b)(1)(A); appoint Plaintiff Leon X as class representative; and appoint Plaintiffs' undersigned counsel from Innovation Law Lab as class counsel.

Dated: November 12, 2025.

Respectfully submitted,

*/s/   Stephen W Manning*

STEPHEN W MANNING, OSB No. 013373
stephen@innovationlawlab.org,
smanning@ilgrp.com
TESS HELLGREN, OSB No. 191622
tess@innovationlawlab.org
JORDAN CUNNINGS, OSB No. 182928
jordan@innovationlawlab.org
KELSEY LYNN PROVO, OSB No. 145107
kelsey@innovationlawlab.org
NELLY GARCIA ORJUELA, OSB No. 223308
nelly@innovationlawlab.org
INNOVATION LAW LAB
333 SW 5th Ave., Suite 200
Portland, OR 97204-1748
Telephone: +1 503-922-3042

Attorneys for Plaintiffs