**SCOTT BRADFORD, OSB # 062824**
United States Attorney
District of Oregon
**SARAH E. FELDMAN, OSB # 141458**
**MICHAEL J. JETER, OSB # 165413**
Assistant United States Attorneys
Sarah.Feldman@usdoj.gov
Michael.Jeter@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2936
Telephone: (503) 727-1000
      Attorneys for Respondents

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

| | |
|---|---|
| **CLEAR CLINIC; PINREOS Y CAMPESINOS UNIDOS DEL NOROESTE, and LEON X, on behalf of all similarly situated people,** | Case No.: 6:25-cv-01906AA |
| | **DECLARATION OF SUPERVISORY DETENTION AND DEPORTATION OFFICER JASON WEISS** |
|       Plaintiffs, | |
| v. | |
| **KRISTI NOEM; TODD LYONS; CAMMILLA WAMSLEY; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; U.S. CUSTOMS AND BORDER PROTECTION,** | |
|       Defendants. | |

I, Jason Weiss, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

      1.      I am employed as a Supervisory Detention and Deportation Officer

("SDDO") ") with the U.S. Immigration and Customs Enforcement ("ICE"),

Enforcement and Removal Operations ("ERO") division, assigned to the Eugene

Sub-Office, which falls under the Seattle Field Office Area of Responsibility (AOR). I

have been with ICE since 2011, in the Eugene sub-office since 2012, and have held

various ERO roles involving detention, processing, and removal operations. I have

been an SDDO since December 2024. My duties include overseeing the intake,

processing, and transfer of noncitizens detained in the Eugene, Oregon area,

ensuring compliance with ICE policies, federal laws, and local agreements. I am

familiar with the operations of the Eugene Sub-Office, as well as ICE's processing,

detention and transfer policies, guidance and protocols.

2.      This declaration is submitted in support of Defendants' Opposition to

Plaintiffs' Motion for Preliminary Injunction ("PI") and sets out the current

conditions in Oregon with respect to immigration enforcement operations, including

ICE's detention and transfer practices in Oregon, access to counsel for individuals

arrested in Oregon, and the operational constraints that make the requested relief

infeasible and contrary to law. I have reviewed Plaintiffs' motion for PI and

supporting exhibits.

3.      The statements in this declaration are based on my personal

knowledge, information provided to me in the course of my official duties, and

records maintained by ICE in the ordinary course of business.

**Immigration Enforcement & Detention in Oregon**

4.      Oregon's sanctuary laws and policies, including ORS §§ 180.805,

181A.820, 181A.823, and 181A.826, prohibit local governments, private entities, and

law enforcement agencies from entering into agreements with ICE for immigration detention services. Consequently, with no dedicated facilities in operation within Oregon, ICE is no longer capable of providing overnight or dedicated long-term immigration detention space in the state.

5.     As a result, ICE relies solely on short-term 12-hour maximum holding areas within the Eugene Sub-Office. The Eugene ERO Sub-Office is a processing office and, as such, the hold rooms in it are not designed or equipped for overnight or extended detention. They lack amenities such as beds, showers, medical clinics and mental health personnel, kitchens, law libraries, virtual visitation equipment and recreational areas found in immigration detention centers.

6.     The Eugene ERO Sub-Office is not staffed on 24-hour basis and does not have adequate personnel levels to provide 24-hour staffing for detention purposes. At this time, it has only four fully operational Deportation Officers ("DOs"), two newly hired DOs in training, and one SDDO. ERO Eugene has recently transferred all appointments for individuals reporting on release requirements to the Portland ERO Office due to limited staffing in Eugene in an effort to free personnel to conduct immigration enforcement operations. Any requirements that extend the amount of time that Eugene ERO personnel must spend at the office will significantly impact the agency's ability to conduct enforcement operations in the field.

7.     Due to the absence of in-state detention options and the 12-hour limit, detainees processed in the Eugene, Oregon area are transferred to the Northwest

ICE Processing Center ("NWIPC") in Tacoma, Washington, the closest immigration detention facility.

8.    In practice, most Eugene detainees are transferred within hours of processing to ensure compliance with local rules, to provide access to full detention standards at the NWIPC and for a variety of other logistical and operational reasons. It is approximately a five-hour drive from Eugene to the NWIPC, depending on traffic. The travel time may be longer when individuals arrested in the Eugene area must be taken to Portland to meet transportation vehicles there.

**Attorney Access**

9.    Attorney access to an individual in ICE custody at the ERO Eugene Sub-Office is limited while ERO is actively booking and processing the individual, which often accounts for the majority of time spent in the office prior to transfer. This process includes recording personal information, conducting criminal history checks, taking photographs and fingerprints, and performing screening interviews for medical and mental health assessments.

10.    Individuals are provided a list of free legal service providers during processing. This list is generated by the Executive Office for Immigration Review ("EOIR").[1]

---

[1] Nonprofit organizations, pro bono referral services and private practice attorneys who wish to be included on the list of pro bono legal service providers may apply with EOIR but must meet the requirements, which include, *inter alia*, that the applicant provide a minimum of 50 hours per year of pro bono legal services to individuals at each immigration court where the organization intends to be included on the list. *See* https://www.justice.gov/eoir/list-pro-bono-legal-service-providers (accessed Nov. 20, 2025); 8 C.F.R. § 1003.62(a)(1). Plaintiffs may apply to be included in the existing EOIR legal service providers list, which ICE already distributes.

11.     **Phones**: The ERO Eugene Sub-Office does not currently have phone service within the holding rooms. The lack of phone service within the holding rooms is one reason why ERO Eugene focuses on processing and transferring detainees to the NWIPC quickly. A free phone call is typically provided from an office phone within the Intake room prior to transport to the NWIPC, though if time is limited, that phone call may be provided after the individual arrives at the NWIPC. ERO Eugene may allow a detainee to make more than one phone call if times and circumstances permit.

12.     **Office Hours and Security**: The ERO Eugene Sub-Office sits in a federal building. The building is open to the public 8:00a.m.-4:00p.m. Monday through Friday. However, the ERO Office closes at 3:00p.m. The building is closed to the public on weekends and holidays. Entry to the building and security screening is not provided by ICE.  Security screening, which includes metal detectors, is not available after public hours. Security screening of visitors is necessary to ensure the safety of both ICE personnel and detainees.

13.     After hours access to the Eugene Sub-Office is also limited because climate control within the building is not under ICE control and the building's heating and cooling systems are turned down after hours and on weekends.

14.     **Visitation Rooms and Space Limitations:** The ERO Eugene Sub-Office has one 5'x7' visitation room designated for attorney-client of detained individuals. It has a plexiglass divider separating visitor(s) from detainee for safety

and security purposes. ERO facilitates delivery of documents between attorney and detainee.



15.    The visitation room is not large enough to accommodate group presentations, nor can ICE prioritize access to the one room for attorneys from certain organizations over other attorneys or legal representatives seeking to meet with clients.

16.     The only other detained space in the ERO Eugene Sub-Office is the Intake room outside the holding cells, where ICE officers are actively engaged in interviewing and processing detainees and the two holding rooms. The ERO Eugene Sub-Office has two holding rooms. The first holding room is 14'x8'. The second holding room is 18'x15'. The bathroom facilities take up much of the space within both holding rooms. Attorneys and other members of the public are not permitted for safety and security reasons in the secured holding rooms. Allowing outside access to these areas would violate agency policy. Group presentations in the holding rooms would also disrupt ICE's ability to process detainees and disturb detainees seeking to use the bathroom facilities.

Holding Room 1 has bench seating that accommodates three people. The restroom facilities are behind a metal screen. (see photo below)



Holding Room 2 has bench seating that accommodates approximately 10 people, though full occupancy would result in a lack of privacy for detainees using the restroom facilities, which are behind the metal screen. (see photo below)



17. **<u>Requirements for Attorney Access</u>:** An attorney seeking to visit an individual in custody at the ERO Eugene Sub-Office must establish that they have an attorney-client relationship with that individual. This relationship may be established by various means, the easiest being a Notice of Attorney or Representative (Form G-28) signed by the alien, indicating that individual has agreed for that attorney to represent him or her before the agency. However, ICE will also accept other means, including but not limited to, copies of retainer agreements, or having a Notice of Entry of Appearance as an Attorney (Form EOIR-28 or EOIR Form-27) on file with the Executive Office for Immigration Review

(EOIR). The form G-28 contains a number of biographic fields of information to be provided about the alien that the attorney represents, including the individual's first and last name, A-number, date of birth, country of birth and address. It also contains a section for the alien to sign specifically waiving their privacy rights under the Privacy Act. ERO Eugene will accept unsigned G-28s in detained cases where the attorney can provide a minimum basic amount of biographic information concerning the individual in custody, such as name and A-number or name and date of birth, as required on the form.

18.    ERO Eugene does not systematically deny access to counsel. In the recent enforcement actions, attorneys presenting a valid Form G-28 or other accepted documentation have been granted access. Denials, if any, occur only for legitimate reasons such as incomplete documentation, ongoing processing (e.g., fingerprinting or interviews), security risks, when the only visitation room is already in use by another attorney, where the detainee refuses to meet with an attorney, where such a meeting would delay imminent transfer of the detainee/s, or where the detainee is simply not at the Eugene Sub-Office.

19.    **<u>Factors Impacting Attorney Access:</u>** For a variety of operational, logistical and security reasons, ICE cannot always accommodate visitation requests at the Eugene Sub-Office prior to transport to the NWIPC.

20.    Transportation plays a significant factor in the timing of transfers from the ERO Eugene Sub-Office.  ICE often relies on transportation services provided by a private contractor based out of the NWIPC in Tacoma, Washington.

Transportation personnel are paid by the hour and drivers are also subject to Department of Transportation requirements restricting the number of hours that they can work. *See* Federal Motor Carrier Safety Administration at https://www.fmcsa.dot.gov/regulations/hours-service/summary-hours-service-regulations (accessed Nov. 21, 2025) (stating commercial drivers carrying passengers may drive a maximum of 10 hours after 8 consecutive hours off duty).

21.     Transportation runs from the Eugene area are limited, and ICE often tries to coordinate transport between the three offices for efficiency and best use of time and resources. Individuals processed in Medford must often be transported to the Euguene area so that individuals processed in both locations can be transported together. Similarly, these transportation runs may or may not meet to pick up individuals processed in the Portland office. Travel time from Eugene to Tacoma is approximately five hours. Additional wait times at coordinated locations to transfer detainees takes additional time. Given the travel time and the need to coordinate transport runs, ICE cannot always accommodate visitation requests at the processing offices.

22.     Safety and security concerns may also impact attorney access at ERO offices. For example, during the COVID-19 pandemic, ERO offices were closed to the public due to health and safety concerns, and attorney-client consultation could only be handled remotely by phone. Since early June 2025, disruptive protesters have targeted all three ERO offices in Oregon, periodically forcing ICE to close them to the public to protect the safety of officers and other individuals therein. For

example, the ERO Eugene Sub-Office has had to close several over the summer and

fall of 2025 due to ongoing disruptive protests. *See e.g.* "Two Arrests Made as

Eugene Protest Escalates Into Vandalism and Altercations," available at:

https://katv.com/news/nation-world/two-arrests-made-as-eugene-protest-escalates-

into-vandalism-and-altercations (accessed Nov. 23, 2025) (reporting that the

Eugene federal building was vacated at 12:00p.m. on September 24, 2025 and later

officially closed after anti-ICE protesters began throwing objects at Federal

Protective Service Agents and vandalizing property, ultimately leading to several

arrests); "Man Detained at ICE Protest Accused of Punching Vehicle," available at:

https://lookouteugene-springfield.com/story/justice/2025/08/28/man-detained-at-ice-

protest-accused-of-punching-vehicle-officials-say/ (accessed Nov. 23, 2025)

(reporting on the arrest of an anti-ICE protester outside who allegedly obstructed a

DHS vehicle outside the Eugene federal building and punched the side-view mirror

in mid-August 2025).

     23.    As a result of these types of operational challenges, ICE has also

prioritized the efficient and speedy processing of individuals arrested in Oregon to

minimize risk to the safety of its officers and individuals in ICE custody. ICE

officers and transport vehicles in Oregon have become a particularly frequent target

of protesters, who harass, vandalize and attempt to prevent ICE from moving

individuals from all three Oregon ERO offices. *See e.g.* "Protests Escalate as DHS

Agents Get Physical with Protesters," available at:

https://www.kezi.com/news/local/protest-at-eugene-federal-building-escalates-as-

dhs-agents-get-physical-with-demonstrators/article_b600e840-b551-4ddf-aadf-
bc5912e71fa4.html (accessed Nov. 23, 2025) (describing how anti-ICE protesters
outside the Eugene federal building obstructed a DHS vehicle attempting to leave
the building and how DHS agents had to physically clear a path for the exiting
vehicle); "SUV Drives Through Crowd at Eugene Federal Building During ICE
Protest," available at: https://www.yahoo.com/news/suv-drives-crowd-eugene-
federal-
020807941.html?guce_referrer=aHR0cHM6Ly93d3cuZ29vZ2xlLmNvbS8&guce_refe
rrer_sig=AQAAAE1_GS9Ri69vwFMB89COMxbVbHQVesBSrxttEkU6DpLK0HoWT
7z3oVjJi3fdyImw9gIa6K89DzWIM3RFWK4k8NBKd9PbXWMy3BWssFAIR_eR-
VktuMx9RxV1GeXQCP0dF_sSlYgjtutTnSuQQ4CmJEaDd85l_-0TFmU76Q7GnVge
(reporting on how anti-ICE protesters obstructed and damaged an unmarked ICE
vehicle attempting to leave the Eugene federal building parking lot on July 1, 2025).
At this time, the longer an individual remains in custody in an ERO office in Oregon
prior to transport, the higher the risk to officer and detainee safety as more
protesters are drawn to that location and become more likely to physically attempt
to disrupt operations. For this reason, ICE is limiting the amount of time
individuals remain in ERO offices in Oregon and is processing and transporting
individuals to the NWIPC as expeditiously as possible.

**Infeasibility and Burdens of the Requested PI Relief**

24.    The requested relief would impose undue burden on ICE amid surging
enforcement needs. Requiring ICE to provide time for each arrested individual

processed in the ERO Eugene Sub-Office to meet with an attorney prior to transfer to Tacoma would significantly delay transport, creating additional burden on detained individuals awaiting transport and ICE personnel. Moreover, it is impossible for ICE to comply with an order to allow groups presentations as the ERO Eugene Sub-Office lacks the physical space to accommodate such presentations. Further, requiring transport to wait for such presentations in Eugene would only create additional burden on both detainees and personnel and incur further expenses to the agency in additional personnel and transport costs. The ERO Eugene Sub-Office is not equipped for lengthy detention. It has no kitchens and no on-site medical staff beyond basic first aid.

25.    Rapid transfers to Tacoma are essential to provide detainees with access to PBNDS compliant facilities, including medical and mental health care, recreation, and expanded legal services. The NWIPC offers a variety of options for attorney visits, legal orientation programs, access to a law library and proximity to Seattle-area counsel. Delaying transfers would strain resources, increase costs, and potentially expose ICE to liability under local zoning laws.

26.    ICE's practices in Oregon comply with federal law, ICE policies and guidance, and local agreements. The PI would compromise ICE's ability to carry out its enforcement responsibilities. It would also create irreparable harm to government operations while providing no meaningful benefit, as detainees gain better access to legal resources, including counsel, and due process upon transfer to appropriate facilities.

Executed at Eugene, Oregon on November 26, 2025.

JASON D
WEISS

Digitally signed by
JASON D WEISS
Date: 2025.11.26
13:38:32 -08'00'

Jason Weiss
Supervisory Detention and Deportation Officer
United States Department of Homeland Security
United States Immigration and Customs Enforcement
Eugene, Oregon