**SCOTT BRADFORD, OSB # 062824**
United States Attorney
District of Oregon
**SARAH E. FELDMAN, OSB # 141458**
**MICHAEL J. JETER, OSB # 165413**
Assistant United States Attorneys
Sarah.Feldman@usdoj.gov
Michael.Jeter@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2936
Telephone: (503) 727-1000
        Attorneys for Respondents

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

| | |
|---|---|
| **CLEAR CLINIC; PINREOS Y CAMPESINOS UNIDOS DEL NOROESTE, and LEON X, on behalf of all similarly situated people,**<br><br>Plaintiffs,<br><br>v.<br><br>**KRISTI NOEM; TODD LYONS; CAMMILLA WAMSLEY; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; U.S. CUSTOMS AND BORDER PROTECTION,**<br><br>Defendants. | Case No.: 6:25-cv-01906AA<br><br>**DECLARATION OF SUPERVISORY DETENTION AND DEPORTATION OFFICER DAVID CABRERA JR.** |

I, David Cabrera Jr., pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.   I am employed as a Supervisory Detention and Deportation Officer

("SDDO") with the U.S. Immigration and Customs Enforcement ("ICE"),

Enforcement and Removal Operations ("ERO") division, assigned to the Medford Sub-Office, which falls under the Seattle Field Office Area of Responsibility ("AOR"). I have been with ICE since 2009, in the Medford sub-office since 2019, and have held various ERO roles involving detention, processing, and removal operations. I have been SDDO since December 2024. My duties include overseeing the intake, processing, and transfer of noncitizens detained in the Medford, Oregon area, ensuring compliance with ICE policies, federal laws, and local agreements. I am familiar with the operations of the Medford Sub-Office, as well as ICE's processing, detention and transfer policies, guidance and protocols.

2. This declaration is submitted in support of Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction ("PI") and sets out the current conditions in Oregon with respect to immigration enforcement operations, including ICE's detention and transfer practices in Oregon, access to counsel for individuals arrested in Oregon, and the operational constraints that make the requested relief infeasible and contrary to law. I have reviewed Plaintiffs' motion for PI and supporting exhibits.

3. The statements in this declaration are based on my personal knowledge, information provided to me in the course of my official duties, and records maintained by ICE in the ordinary course of business

**Immigration Enforcement & Detention in Oregon**

4. Oregon's sanctuary laws and policies, including ORS §§ 180.805, 181A.820, 181A.823, and 181A.826, prohibit local governments, private entities, and

law enforcement agencies from entering into agreements with ICE for immigration detention services. Consequently, with no dedicated facilities in operation within Oregon, ICE is no longer capable of providing overnight or dedicated long-term immigration detention space in the state.

5. As a result, ICE relies solely on short-term 12-hour maximum holding areas within the Medford Sub-Office. The Medford ERO Sub-Office is a processing office and, as such, the hold rooms in it are not designed or equipped for overnight or extended detention. They lack amenities such as beds, showers, medical clinics and mental health personnel, kitchens, law libraries, virtual visitation equipment and recreational areas found in immigration detention centers.

6. The Medford ERO Sub-Office is not staffed on 24-hour basis and does not have adequate personnel levels to provide 24-hour staffing for detention purposes. At this time, it has only three fully operational Deportation Officers ("DOs"), one newly hired DO in training, and one SDDO. Any requirements that extend the amount of time that Medford ERO personnel must spend at the office will significantly impact the agency's ability to conduct enforcement operations in the field.

7. Due to the absence of in-state detention options and the 12-hour limit, detainees processed in the Medford, Oregon area are transferred to the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, the closest immigration detention facility.

8.      In practice, most Medford detainees are transferred within hours of processing to ensure compliance with local rules, to provide access to full detention standards at the NWIPC and for a variety of other logistical and operational reasons. Individuals detained in the Medford area are usually transported to Eugene and then detainees from both offices are transferred north. It is approximately a seven hour drive from Medford to the NWIPC. The travel time may be longer if Medford detainees are taken to Portland to meet transportation vehicles there.

**Attorney Access**

9.      Attorney access to an individual in ICE custody at the Medford ERO Sub-Office is limited while ERO is actively booking and processing the individual, which often accounts for the majority of time spent in the office prior to transfer. This process includes recording personal information, conducting criminal history checks, taking photographs and fingerprints, and performing screening interviews for medical and mental health assessments.

10.     Individuals are provided a list of free legal service providers during processing. This list is generated by the Executive Office for Immigration Review ("EOIR").[1] In Medford, we provide individuals the EOIR free legal service provider lists for both Tacoma and Portland.

---

[1] Nonprofit organizations, pro bono referral services and private practice attorneys who wish to be included on the list of pro bono legal service providers may apply with EOIR but must meet the requirements, which include, *inter alia*, that the applicant provide a minimum of 50 hours per year of pro bono legal services to individuals at each immigration court where the organization intends to be included on the list. *See* https://www.justice.gov/eoir/list-pro-bono-legal-service-providers (accessed Nov. 20, 2025); 8

11. **Phones**: The Medford ERO Sub-Office does not currently have phone service within the holding rooms.[2] A free phone call is typically provided from an office phone within the Intake room prior to transport to the NWIPC, though if time is limited, that phone call may be provided after the individual arrives at the NWIPC. ERO Medford may allow a detainee to make more than one phone call if times and circumstances permit.

12. **Office Hours and Security**: The Medford ERO Sub-Office sits in a privately owned building and is open 8:00a.m.-4:00p.m. Monday through Friday. The office is closed on weekends and holidays. Because the entrance to the Medford ERO Sub-Office is on the exterior of the building, ICE controls entry and screening.

13. **Visitation Rooms and Space Limitations:** ERO Medford permits attorneys with fully executed and signed G-28s to accompany their clients to the interview rooms for check in appointments on the nondetained side of the office unless the office is closed for health or security reasons. If the individual is arrested, however, the attorney may not accompany the individual into the secured side of the office for booking and processing. If, as discussed further below, timing of transfer permits, the attorney may conduct visitation after arrest and processing

---

C.F.R. § 1003.62(a)(1). Plaintiffs may apply to be included in the existing EOIR legal service providers list, which ICE already distributes.

[2] There are pay phones within the holding rooms in the Medford Sub-Office but they are not operational. Medford ERO is currently transitioning the office phone system and is exploring whether service can be restored within the hold rooms. The pay phones have not historically been necessary because there are four desk phones in the Intake room available for detainees to make free phone calls.

has been completed, though I personally cannot recall an attorney ever requesting to do so.

14.     The ERO Medford Sub-Office has one visitation room designated for visitation of detained individuals. The room has small privacy panels and can accommodate three visitors if full privacy is not a concern (see photo below). It has a plexiglass divider separating visitor(s) from detainee for safety and security purposes.



15. The visitation room is not large enough to accommodate group presentations, nor can ICE prioritize access to the one room for attorneys from certain organizations over other attorneys seeking to meet with clients.

16. The only other space on the detained side of the Medford ERO Sub-Office is the Intake room outside the holding rooms, where ICE officers actively engage in interviewing and processing detainees and the two holding rooms. The Medford ERO Sub-Office has two holding rooms. Both holding rooms are 21'x17'. The bathroom facilities take up much of the space within both holding rooms. Attorneys and other members of the public are not permitted in the secured holding rooms for safety and security reasons. Allowing outside access to these areas would violate agency policy. Group presentations in the holding rooms would also disrupt ICE's ability to process detainees and disturb detainees seeking to use the restroom facilities.

Holding Room 1 (below). Note: Holding Room 2 has a reverse layout.



17.     **<u>Requirements for Attorney Access</u>:** An attorney seeking to visit an individual in custody at the Medford ERO Sub-Office must establish that they have an attorney-client relationship with that individual. This relationship may be established by various means, the easiest being a Notice of Attorney or Representative (Form G-28) signed by the alien, indicating that individual has agreed for that attorney to represent him or her before the agency. However, ICE will also accept other means, including but not limited to, copies of retainer agreements, or having a Notice of Entry of Appearance as an Attorney (Form EOIR-28 or EOIR Form-27) on file with the Executive Office for Immigration Review (EOIR). The form G-28 contains a number of biographic fields of information to be provided about the alien that the attorney represents, including the individual's first and last name, A-number, date of birth, country of birth and address. It also

contains a section for the alien to sign specifically waiving their privacy rights under the Privacy Act. ERO Medford will accept unsigned G-28s in detained cases where the attorney can provide a minimum basic amount of biographic information concerning the individual in custody, such as name and A-number or name and date of birth, as required on the form.

18. ERO Medford does not systematically deny access to counsel. In the recent enforcement actions, attorneys presenting a valid Form G-28 or other accepted documentation have been granted access. Denials, if any, occur only for legitimate reasons such as incomplete documentation, ongoing processing (e.g., fingerprinting or interviews), security risks, where the detainee refuses to meet with an attorney, where such a meeting would delay imminent transfer of the detainee/s, where the visitation room is already in use, or where the detainee is simply not at the Medford Sub-Office.

19. **Factors Impacting Attorney Access:** For a variety of operational, logistical and security reasons, ICE cannot always accommodate visitation requests at the Medford Sub-Office prior to transport to the NWIPC.

20. Transportation plays a significant factor in the timing of transfers from the ERO Medford Sub-Office. ICE often relies on transportation services provided by a private contractor based out of the NWIPC in Tacoma, Washington. Transportation personnel are paid by the hour and drivers are also subject to Department of Transportation requirements restricting the number of hours that they can work. *See* Federal Motor Carrier Safety Administration at

https://www.fmcsa.dot.gov/regulations/hours-service/summary-hours-service-regulations (accessed Nov. 21, 2025) (stating commercial drivers carrying passengers may drive a maximum of 10 hours after 8 consecutive hours off duty).

21. Transportation runs from the Medford area are limited, and ICE often tries to coordinate transport between the three offices for efficiency and best use of time and resources. Individuals processed in Medford must often be transported to the Eugene area so that individuals processed in both locations can be transported together. Similarly, these transportation runs may or may not meet to pick up individuals processed in the Portland office. Travel time from Medford to Tacoma is approximately seven hours. Additional wait times at coordinated locations to transfer detainees takes additional time. Given the travel time and the need to coordinate transport runs, ICE cannot always accommodate visitation requests at the processing offices.

22. Safety and security concerns may also impact attorney access at ERO offices. For example, the Medford ERO Sub-Office periodically closes during the firefighting season, which runs from approximately May to October, for health and safety reasons. The office sits next to a tarmac used by firefighting planes and, for air quality reasons, cannot be occupied while those planes are running. Individuals arrested in the Medford area while the office is closed are transported directly to the Eugene ERO Sub-Office for processing.

23. As a result of these types of operational challenges, ICE has also prioritized the efficient and speedy processing of individuals arrested in Oregon to

minimize risk to the safety of its officers and individuals in ICE custody. ICE officers and transport vehicles in Oregon have become a particularly frequent target of protesters, who harass, vandalize and attempt to prevent ICE from moving individuals. For example, anti-ICE protesters have taken photographs of ICE vehicles and license plates parked outside the Medford ERO Sub-Office and posted them on social media, and on other occasion, laid down in front of the sallyport blocking a transport bus from leaving the Medford Sub-Office to transfer detainees north. In addition, there have been threats made on social media to kill ICE officers by at least individual in the south Medford area. At this time, the longer an individual remains in custody in an ERO office in Oregon prior to transport, the higher the risk to officer and detainee safety as more protesters are drawn to that location and become more likely to physically attempt to disrupt operations. For this reason, ICE is limiting the amount of time individuals remain in ERO offices in Oregon and is processing and transporting individuals to the NWIPC as expeditiously as possible.

**Infeasibility and Burdens of the Requested PI Relief**

24.     The requested relief would impose undue burden on ICE amid surging enforcement needs. Requiring ICE to provide time for each arrested individual processed in the Medford ERO Sub-Office to meet with an attorney prior to transfer to Tacoma would significantly delay transport, creating additional burden on detained individuals awaiting transport and ICE personnel. Moreover, it is impossible for ICE to comply with an order to allow groups presentations as the

Medford ERO Sub-Office lacks the physical space to accommodate such presentations. Further, requiring transport to wait for such presentations in Medford would only create additional burden on both detainees and personnel and incur further expenses to the agency in additional personnel and transport costs. The Medford ERO Sub-Office is not equipped for lengthy detention. It has no kitchens and no on-site medical staff beyond basic first aid.

25. Rapid transfers to Tacoma are essential to provide detainees with access to PBNDS compliant facilities, including medical and mental health care, recreation, and expanded legal services. The NWIPC offers a variety of options for attorney visits, legal orientation programs, access to a law library and proximity to Seattle-area counsel. Delaying transfers would strain resources, increase costs, and potentially expose ICE to liability under local zoning laws.

26. ICE's practices in Oregon comply with federal law, ICE policies and guidance, and local agreements. The PI would compromise ICE's ability to carry out its enforcement responsibilities. It would also create irreparable harm to government operations while providing no meaningful benefit, as detainees gain better access to legal resources, including counsel, and due process upon transfer to appropriate facilities.

I declare under penalty of perjury that the foregoing declaration is true and correct to the best of my knowledge and belief.

Executed at Medford, Oregon on November 26, 2025.

_David Cabrera Jr., digitally signed 2025.11.26 13:26:04 -08'00'_

David Cabrera Jr.
Supervisory Detention and Deportation Officer
United States Department of Homeland Security
United States Immigration and Customs Enforcement
Medford, Oregon