STEPHEN W MANNING, OSB No. 013373
stephen@innovationlawlab.org,smanning@ilgrp.com
TESS HELLGREN, OSB No. 191622
tess@innovationlawlab.org
JORDAN CUNNINGS, OSB No. 182928
jordan@innovationlawlab.org
KELSEY LYNN PROVO, OSB No. 145107
kelsey@innovationlawlab.org
NELLY GARCIA ORJUELA, OSB No. 223308
nelly@innovationlawlab.org
INNOVATION LAW LAB
333 SW 5th Ave., Suite 200
Portland, OR 97204-1748
Telephone: +1 503-922-3042

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**Eugene Division**

| | |
|---|---|
| CLEAR CLINIC; PINEROS Y CAMPESINOS UNIDOS DEL NOROESTE; and LEON X, on behalf of a class of all similarly situated people,<br>   *Plaintiffs,*<br><br>   v.<br><br>KRISTI NOEM, Secretary of the Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY ("DHS"); TODD LYONS, Acting Director of Immigration Customs Enforcement; CAMMILLA WAMSLEY, Seattle Field Office Director, Immigration and Customs Enforcement and Removal Operations; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT ("ICE"); PETE FLORES, Acting Commissioner of Customs and Border Protection; and U.S. CUSTOMS AND BORDER PROTECTION ("CBP"),<br>   *Defendants.* | Case No. 6:25-cv-01906-AA<br><br>**DECLARATION OF LYNN STOPHER IN SUPPORT OF PLAINTIFFS' PRELIMINIARY INJUNCTION** |

**DECLARATION OF LYNN STOPHER IN SUPPORT OF
PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

I, Lynn Stopher, upon my personal knowledge, hereby declare under penalty of perjury as follows:

1. I am an attorney licensed and in good standing to practice in the State of Illinois. I am a supervising attorney at the Northwest Immigrant Rights Project ("NWIRP") in Washington state. I am over 18 years of age and have personal knowledge of the facts described herein. I have been practicing immigration law for approximately seven years. For the last three years, I have focused my practice on providing representation for individuals detained at the Northwest ICE Processing Center in Tacoma, Washington.

2. In my capacity as a supervising attorney at NWIRP, I am responsible for providing "Know Your Rights" ("KYR") presentations and other legal services to individuals detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington.

3. NWIRP is currently the sole legal services provider authorized by ICE to conduct group KYR presentations for individuals detained at the NWIPC. These presentations are critical, as they are often the very first, and sometimes the only, opportunity for detained individuals to learn about their legal rights and the immigration court removal process, other than the instructions they receive from the immigration judge in court.

4. Historically, under a Legal Orientation Program ("LOP") contract, NWIRP had a more robust presence at the NWIPC and received a daily roster of identifying information for detained individuals, including names and alien registration numbers ("A numbers"), which allowed for effective scheduling and outreach. That contract was terminated in April 2025, but around September 2025, ICE approved NWIRP's request to provide detained individuals KYR

2

presentation at the NWIPC absent the LOP contract. NWIRP began providing biweekly KYR presentations in October 2025.

5. While the opportunity to resume providing KYRs has been important for many persons detained at NWIPC, especially following a period where no such services were offered, the current operational framework for providing KYR presentations at the NWIPC presents challenges that make it difficult to access many of the individuals detained at NWIPC. Over the past two months, I have observed systemic barriers that severely limit detainees' access to accurate and critical legal information.

*Chronic Under-Attendance at KYR Presentations*

6. Under the current system, NWIRP provides ICE and GEO a proposed list of attendees approximately 24 hours in advance of the presentation. In recognition of space and security constraints, NWIRP generally requests the attendance of approximately 40 detainees at any given presentation. The list contains the individuals' full names, primary language, and – when possible – their alien registration number.

7. Due to a combination of the factors described below, we rarely reach this capacity for presentations   For example, on December 2, 2025, 26 individuals attended our KYR presentation; on December 4, 2025, only 17 people attended; on December 9, 2025, only 13 attendees were present; on December 11, 2025, only 19 attendees were present. This chronic under-attendance reflects missed opportunities to provide legal orientation to individuals in urgent need, but due in part to the issues described below, we have not been able to increase attendance rates at our presentations.

*Lack of Efficient Information-Sharing*

8. Previously, under the LOP contract, GEO Group routinely provided NWIRP with NWIPC rosters that included individuals' alien registration numbers. Now, NWIRP no longer has

access to those rosters. Instead, NWIRP must rely on detainees or their loved ones to proactively contact NWIRP to alert us of their presence at the facility and to request legal assistance or a legal orientation. Even though the vast majority of detained persons at NWIPC are unrepresented, and thus are especially in need of these orientations, we estimate that less than one quarter of detained individuals are able to contact NWIRP to ask that they be included on our list for a KYR presentation, though it is impossible to confirm without access to the rosters.

9.   Furthermore, NWIRP must rely on those individuals to affirmatively provide us the A number of the detainee, or we must attempt to obtain this information through other means ourselves, which is often impossible to do.

10.  When NWIRP is unable to ascertain a detainee's A number, GEO typically will not call the detainee for a KYR presentation. Since we resumed presentations at the NWIPC in October, NWIRP staff members have repeatedly experienced that GEO staff will not call detainees to our presentations unless the detainee's A number is noted on our proposed list of attendees. Officers generally are unwilling to check for individuals by name.

11.  The lack of information here presents an insurmountable barrier for many, as a significant number of detained individuals may not even have been aware of their A number at the time of the presentation.

*Ineffective Call-Out Procedures*

12.  Even for those individuals for whom we do know the A number, their presence at the presentation is not guaranteed. Detainees on the KYR presentation list are not always notified of the presentation or brought to the multi-purpose room for the presentation. Our intake coordinators frequently receive complaints via our helpline from detained individuals who were on our KYR list but never called to the presentation.

13. Furthermore, call-outs often occur during mealtimes, medication distributions, and recreation periods. Our intake coordinators have received reports that detained individuals are forced to choose between eating or going outside and attending our presentation.

*Misinformation and Fear Within the NWIPC*

14. Detainees also report that ICE officers and GEO staff have provided incorrect information about participation in our presentations. Detainees have informed our intake coordinators that guards have referred to the KYR presentation as an "ICE orientation", which deters attendance due to fear and mistrust of ICE.

*Impact of Rapid Transfers on Detainee Access*

15. ICE's ongoing rapid transfer of detainees from NWIPC to other detention centers throughout the U.S. creates additional challenges for our KYR program. On December 11, 2025, nine individuals who were confirmed to be located at the NWIPC as late as December 10, 2025, were no longer in custody at the facility by the time I arrived to give the presentation. We have reason to believe that six of those individuals were eligible for legal services through the Equity Corps of Oregon (ECO) program. Of those six individuals, NWIRP was not aware of the country of origin for five of them (this information is needed to identify a detainee in the ICE locator system) and, thus, we were unable to confirm whether they are still in ICE custody at all, or where they may have been transferred. When individuals are no longer in NWIPC custody at the point of our KYR, their spaces at the presentations go unfilled.

16. Transfers also sever critical legal advocacy for vulnerable individuals. Last week, for instance, NWIRP was contacted to assist a detained Oregonian who is deaf, mute, and does not know American Sign Language. There was a clear basis to advocate for this individual's immediate release under applicable legal standard and for government-appointed counsel under

*Franco-Gonzalez v. Holder*, No. cv-10-02211-DMG, 2014 WL 5475097 (C.D. Cal. Oct. 29, 2014); however, before we could provide any meaningful consultation, ICE transferred him to a facility in Texas. Now, any advocacy for his release will be far more difficult, if not impossible.

***Systemic Constraints to Accessing Counsel***

17. The barriers to meaningful attorney access extends well beyond our KYR program. Wait times for in-person attorney visits at the NWIPC routinely take three to five hours. Scheduled meetings, including virtual visits, are frequently canceled or delayed due to technical issues. Although the facility has seven attorney visitation rooms, at least two of those are routinely reserved for immigration court hearings and others are regularly reserved for other purposes. GEO guards have repeatedly told attorneys and NWIRP staff that no rooms are available even when it is apparent that there are empty attorney visit rooms.

18. Detainees at the NWIPC face systemic barriers to legal knowledge in an environment characterized by disorganization, inefficiency, institutionalized fear and confusion, and structural indifference to meaningful access. This reality stands in stark contrast to any portrayal of a system that facilitates full and fair access to counsel.

19. Unfortunately, if the logistical and institutional barriers detailed above remain unaddressed, NWIRP's KYR program will not practically be capable of reaching most detainees at the NWIPC. Combined with the severely constrained conditions for confidential meetings, the circumstances at the NWIPC systematically deprive individuals of meaningful access to legal information at critical stages of their proceedings.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed in Tacoma, Washington, on December 15, 2025.

_____
Lynn Stopher