**SCOTT E. BRADFORD, OSB #062824**
United States Attorney
District of Oregon
**SARAH E. FELDMAN, OSB # 141458**
**MICHAEL J. JETER, OSB # 165413**
**JOSHUA KELLER, NYSB #4297396**
Assistant United States Attorneys
Sarah.Feldman@usdoj.gov
Michael.Jeter@usdoj.gov
Joshua.Keller@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2936
Telephone: (503) 727-1000
        Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **CLEAR CLINIC; PINEROS Y CAMPESINOS UNIDOS DEL NOROESTE; and LEON X, on behalf of a class of all similarly situated people,** | Case No. 6:25-cv-01906-AA |
| Plaintiffs, | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| v. | |
| **KRISTI NOEM; TODD LYONS; LAURA HERMOSILLO; PETE FLORES; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOM ENFORCEMENT; U.S. CUSTOMS AND BORDER PROTECTION,** | |
| Defendants. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................. 1

BACKGROUND ............................................................................................... 4

CLASS CERTIFICATION LEGAL STANDARD .................................................... 4

ARGUMENT ................................................................................................... 5

    I.      Leon X Lacks Article III Standing as He Cannot Demonstrate the Requisite
           Injury-in-Fact for the Harm Alleged ........................................................... 5

    II.     8 U.S.C. § 1252(f)(1) Bars Classwide Injunctive Relief and Prohibits the District
           Court from Enjoining Defendants' Actions to Commence Removal Proceedings
           and Execute Removal Orders ....................................................................... 8

    III.    Plaintiffs Fail to Meet All Rule 23(a) Requirements .................................. 10

          A.   The Class Definition is Overbroad ....................................................... 10

          B.   The Proposed Class Lacks the Commonality Required Under
              Rules 23(a)(2) .................................................................................. 12

              i.      Plaintiffs fail to establish a uniform policy or practice that is common
                   to the proposed class ................................................................. 12

              ii.     No "Common Questions" satisfy commonality for the putative class
                   claims ...................................................................................... 15

              iii.    The legal relief available to putative class members is not common .. 19

          C.   Leon X's Claims Are Not Typical of the Claims of the Proposed Class ........... 21

          D.   Leon X is Not an Adequate Class Representative ........................................... 23

    IV.    The Proposed Class Does Not Satisfy Rule 23(b)(2)'s Requirements .................... 24

    V.     Plaintiffs have not met their burden under Rule 23(b)(1)(A) .............................. 26

    CONCLUSION ............................................................................................ 28

    WORD COUNT CERTIFICATE .................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adair v. England,*
  209 F.R.D. 5 (D.D.C. 2002) ................................................................. 26
*Allen v. Wright,*
  468 U.S. 737 (1984) ........................................................................... 6
*AmChem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) ...................................................................... 5, 23
*Ass'n v. Reno,*
  199 F.3d 1352 (D.C. Cir. 2000) ......................................................... 21
*Bell v. Wolfish,*
  441 U.S. 520 (1979) ..................................................................... 16, 17
*Biwot v. Gonzales,*
  403 F.3d 1094 (9th Cir. 2005) ........................................................... 19
*Black Lives Matter Los Angeles v. City of Los Angeles,*
  113 F.4th 1249 (9th Cir. 2024)........................................................... 15
*Califano v. Yamasaki,*
  442 U.S. 682 (1979) ............................................................................ 4
*Carnegie v. Plummer,*
  No. 95-cv-1884, 1997 WL 638449 (N.D. Cal. Oct. 6, 1997) .................... 16
*Casey v. Lewis,*
  4 F.3d 1516 (9th Cir. 1993) ............................................................... 16
*City of Los Angeles v. Lyons,*
  461 U.S. 95 (1983) .............................................................................. 8
*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) ............................................................................ 8
*Crawford v. Honig,*
  37 F.3d 485 (9th Cir. 1994) ............................................................... 23
*Dep't of Homeland Sec. v. Thuraissigiam,*
  591 U.S. 103 (2020) ........................................................................... 21
*DL v. District of Columbia,*
  713 F.3d 120 (D.C. Cir. 2013) ........................................................... 13
*Ellis v. Costco Wholesale Corp.,*
  657 F.3d 970 (9th Cir. 2011) .................................................... 5, 13, 25
*Food & Drug Admin. v. All. for Hippocratic Med.,*
  602 U.S. 367 (2024) ............................................................................ 6
*Garland v. Aleman Gonzalez,*
  596 U.S. 543 (2022) ...................................................................... 9, 10
*Gen. Tel. Co. of Sw. v. Falcon,*
  457 U.S. 147 (1982) ..................................................................... 4, 22

*Grundmeyer v. Allstate Prop. & Cas. Ins. Co.*,
   No. 15-cv-0464, 2015 WL 9487928 (W.D. Wash. Sept. 29, 2015) ............................ 7
*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ................................................................................. 12
*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ........................................................................... 21, 22
*In re Navy Chaplaincy*,
   306 F.R.D. 33 (D.D.C. 2014) ........................................................................... 13, 27
*Jennings v. Rodriguez*,
   583 U.S. 281 (2018) ................................................................................................ 19
*Johnson v. District of Columbia*,
   248 F.R.D. 46 (D.D.C. 2008) .................................................................................... 8
*Juliana v. United States*,
   947 F.3d 1159 (9th Cir. 2020) .................................................................................. 6
*Las Americas Immigrant Advoc. Ctr. v. Wolf*,
   507 F. Supp. 3d 1 (D.D.C. 2020) ............................................................................ 19
*Lightfoot v. D.C.*,
   273 F.R.D. 314 (D.D.C. 2011) ................................................................................ 13
*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) .................................................................................................. 6
*Lujan v. G & G Fire Sprinklers, Inc.*,
   532 U.S. 189 (2001) ................................................................................................ 19
*Lyon v. United States Immigr. & Customs Enf't*,
   300 F.R.D. 628 (N.D. Cal. 2014) ............................................................................ 17
*Mercado v. Noem*,
   2025 WL 2658779 (S.D.N.Y. Sept. 17, 2025)................................................... 11, 16
*Messner v. Northshore Univ. HealthSystem*,
   669 F.3d 802 (7th Cir. 2012) .................................................................................. 11
*Morales-Izquierdo v. Gonzales*,
   486 F.3d 484 (9th Cir. 2007) .................................................................................. 20
*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
   31 F.4th 651 (9th Cir. 2022)................................................................................... 10
*Phillips v. Sheriff of Cook Cnty.*,
   828 F.3d 541 (7th Cir. 2016) .................................................................................. 16
*Reno v. Am.-Arab Anti-Discrimination Comm.*,
   525 U.S. 471 (1999) .................................................................................................. 9
*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) .............................................................................................. 5, 6
*Turner v. Safley*,
   482 U.S. 78 (1987) ................................................................................................. 16
*United States v. Barajas-Alvarado*,
   655 F.3d 1077 (9th Cir. 2011) ................................................................................ 21
*United States v. De La Mora-Cobian*,
   18 F.4th 1141 (9th Cir. 2021)................................................................................. 21

**Page iii -**   **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

*Van Dinh v. Reno*,
    197 F.3d 427 (10th Cir. 1999) ..................................................................... 10
*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .................................................................... passim
*Warth v. Seldin*,
    422 U.S. 490 (1975) ............................................................................... 8
*White v. Symetra Assigned Benefits Serv. Co.*,
    104 F.4th 1182 (9th Cir. 2024) ................................................................. 5
*Willis v. City of Seattle*,
    943 F.3d 882 (9th Cir. 2019) .................................................................. 13
*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ............................................................... 21
*Zadvydas v. Davis*,
    533 U.S. 678 (2001) ....................................................................... 20, 21
*Zimmerman v. Cedars-Sinai Med. Ctr.*,
    No. 5:23-cv-01124, 2024 WL 5274600 (C.D. Cal. Dec. 18, 2024) ........................... 23

## Statutes

8 U.S.C. § 1229(a) ................................................................................ 10
8 U.S.C. § 1231 ...................................................................................... 9
8 U.S.C. § 1231(a) ................................................................................ 20
8 U.S.C. § 1231(a)(5) ............................................................................ 20
8 U.S.C. § 1231(g) ............................................................................ 9, 10
8 U.S.C. § 1252(b)(9) ............................................................................ 10
8 U.S.C. § 1252(f)(1) ...................................................................... i, 3, 8

## Rules

Fed. R. Civ. P. 23(a) ........................................................................... 4, 5
Fed. R. Civ. P. 23(a)(3) ..................................................................... 21, 24
Fed. R. Civ. P. 23(b)(1)(A) ..................................................................... 28
Fed. R. Civ. P. 23(b)(2) .................................................................... passim

## Regulations

8 C.F.R. § 235.3(b)(2)(ii) ....................................................................... 21
8 C.F.R. § 241.13(i) ............................................................................. 20

Defendants Kristi Noem, Todd Lyons, Laura Hermosillo, Pete Flores,
U.S. Department of Homeland Security ("DHS"), U.S. Immigration and Customs
Enforcement ("ICE"), and U.S. Customs and Border Protection ("CBP") (collectively,
"Defendants"), hereby respond to Plaintiffs' Motion for Class Certification ("Motion"
or "Mot."), ECF 56.

## INTRODUCTION

When Defendants arrest individuals in Oregon for civil immigration law
violations, they are immediately brought to one of ICE's three field offices in Oregon
located in Portland, Eugene, and Medford.  At the field offices, the individuals are
fingerprinted, photographed, and processed for intake.  This process is usually
completed within a few hours of an individual's arrival at a field office and cannot
exceed the 12-hour holding limit[1] established by agency policy, leasing agreements,
and local conditional use permit.  Then, the arrested individuals are promptly
transferred to the Northwest ICE Processing Center ("NWIPC") in Tacoma,
Washington, which, unlike the Oregon field offices, is a detention facility where
individuals can be housed.

Because of the need to process and transfer individuals in custody at Oregon
ICE field offices within 12 hours, and other operational, logistical, and safety needs
and limitations that exist at these facilities, it is not always possible to
accommodate immediate in-person visitation with retained counsel or unretained

---

[1] "ICE has adhered to this limit in almost all cases, with any exceptions being rare, inadvertent, and resulting from exigent circumstances." Second Declaration of Jeffrey Chan ("Second Chan Decl."), ECF 68, at ¶ 10.

**Page 1 -    DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION**

potential counsel at the Oregon facilities before transport.  Some individuals do meet with their retained counsel.  For other individuals, there may be brief deferral of attorney access to retained attorneys until arrival at the NWIPC.

Through this lawsuit, Plaintiffs seek to interfere with the brief processing and transfer of individuals in Oregon ICE field offices.  They claim that Defendants have a policy or practice of denying arrested individuals attorney access prior to transfer, in violation of the First and Fifth Amendments and the Immigration and Nationality Act ("INA").[2]  As discussed in Defendants' Response in Opposition to Plaintiffs' Motion for Preliminary Injunction ("PI Opposition"), ECF 66, Plaintiffs are unlikely to succeed on these claims.

Plaintiffs seek to certify a broad putative class they define as:

> All persons, since October 16, 2025 who have been arrested or are at risk of arrest for alleged civil immigration violations in the District of Oregon by Defendants or entities working in concert with them.

Plaintiffs ask the Court to appoint Plaintiff Leon X (who seeks to proceed anonymously in this lawsuit, ECF 58) as the class representative even though Plaintiffs present no evidence to establish that he is likely to be arrested at all, much less arrested and then unlawfully denied attorney access while he is in custody in Oregon.

---

[2] Although Plaintiffs repeatedly use the term "policy or practice of denying access to counsel," a more accurate description of Plaintiffs' allegations is that ICE temporarily defers attorney access to some individuals processed in Oregon field offices.

Page 2 -    **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

As a threshold matter, because Leon X lacks standing, the motion should be denied. Moreover, the classwide injunctive relief sought is precluded by 8 U.S.C. § 1252(f)(1).

The Court should also decline to certify the proposed class because Plaintiffs do not prove (or even plausibly allege) the existence of a uniform policy or practice they seek to challenge, or that a policy or practice they seek to challenge causes an injury to the entire class.   At every turn, the putative class claims raise legal and factual issues that cannot be resolved without the need to make individualized determinations about whether any temporary deferrals of access to retained counsel or unretained potential counsel was unlawful, including whether each class member suffered the same injury—or any injury at all— as a result of the alleged policy or practice.

It is not possible to resolve "in one stroke" that all putative class members experienced a constitutional injury because of the wide variety of circumstances at play.  Some putative members who have been arrested have had, and will continue to have, the ability to consult with retained counsel at the ICE field offices before transfer to Tacoma.  Other arrested putative members with retained counsel may see communication with counsel temporarily deferred for legitimate security and/or administrative reasons until he or she reaches Tacoma.  Some arrested putative members undoubtedly have no retained counsel at all or choose not to retain counsel.  And of course, the remainder of the class has not even been arrested. Plaintiff class is defined so broadly as to include every permutation of

circumstances, regardless of the implications of Rule 23. If you live in Oregon and are "at risk" of arrest, that is enough. For these reasons, classwide relief in this case is impracticable or impossible.

The Court should deny the Motion because Plaintiffs have not met their burden to satisfy each of the requirements under Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(1)(A).

## BACKGROUND

Defendants incorporate by reference the background section of their Response in Opposition to Plaintiffs' Motion for Preliminary Injunction. ECF 66 at Sections I-IV.

## CLASS CERTIFICATION LEGAL STANDARD

The class action "'is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). To fall within this narrow exception, Plaintiffs, as the party seeking class certification, must affirmatively demonstrate their compliance with Rule 23, by a preponderance of the evidence. "[A]ctual, not presumed, conformance" with Rule 23 is "indispensable," *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982), and certification is proper only if the Court is satisfied "after a rigorous analysis" that Plaintiffs have shown that each requirement of the rule has been met. *Wal-Mart*, 564 U.S. at 350-51. Thus, Plaintiffs "must actually *prove*—not simply plead—

that their proposed class satisfies each requirement of Rule 23." *White v. Symetra Assigned Benefits Serv. Co.*, 104 F.4th 1182, 1192 (9th Cir. 2024) (cleaned up).

To merit class certification, Plaintiffs must demonstrate each element of Rule 23(a) is met: (1) the class is so numerous that joinder is impractical ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the named plaintiff are typical of claims or defenses of the class ("typicality"); and (4) the named plaintiffs and counsel will fairly and adequately protect the interests of the class ("adequacy of representation"). Fed. R. Civ. P. 23(a). Additionally, the proposed class must also qualify under one of the subsets of Rule 23(b). *AmChem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

## ARGUMENT

### I.    Leon X Lacks Article III Standing as He Cannot Demonstrate the Requisite Injury-in-Fact for the Harm Alleged.

A motion to certify a class should be denied when the named plaintiff does not have standing. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978-79 (9th Cir. 2011); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016), *as revised* (May 24, 2016) ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong") (citation omitted).

"Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy. The doctrine developed in our case law to ensure that federal

courts do not exceed their authority as it has been traditionally understood." *Spokeo*, 578 U.S. at 338. This constitutional limitation requires plaintiffs to demonstrate they have standing to sue so that courts do not operate as an open forum for "general complaints about the way in which government goes about its business." *Allen v. Wright*, 468 U.S. 737, 760 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). "To have standing under Article III, a plaintiff must have (1) a concrete and particularized injury that (2) is caused by the challenged conduct and (3) is likely redressable by a favorable judicial decision." *Juliana v. United States*, 947 F.3d 1159, 1168 (9th Cir. 2020).

To establish injury in fact, a plaintiff must show that he suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc.*, 578 U.S. at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)); *see Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) ("[T]he injury must affect 'the plaintiff in a personal and individual way' and not be a generalized grievance.") (quoting *Lujan*, 504 U.S. at 560). "[W]hen a plaintiff seeks prospective relief such as an injunction, the plaintiff must establish a sufficient likelihood of future injury." *All. for Hippocratic Med.*, 602 U.S. at 381.

Here, Leon X does not allege (or show) he has been arrested during the proposed class period or that he is sufficiently likely to be arrested in Oregon for immigration violations. Nor does he show that, if he is arrested in Oregon, there is

a sufficient likelihood that, while in custody in Oregon, he will be denied attorney access or will be coerced or threatened to make a statement or waive a right.[3]  Yet, Leon X seeks to represent a class of individuals based on the speculative risk that he will be arrested for immigration violations and then, after arrest, he will be denied attorney access and other process to which he claims he is entitled.  For these reasons, Plaintiffs fail to establish that Leon X has standing.

Leon X claims to fear arrest and a post-arrest denial of access to his legal team.  Declaration of Leon X ("Leon X Decl.") ¶¶ 7-8.  That is not enough to establish a concrete and particularized injury under Article III.  The alleged harms to Leon X are conjectural and speculative. They are contingent on a hypothetical arrest and projected post-arrest treatment that, on this record, has not been established as a pattern or practice. Conditions at the Oregon ICE field offices during the relatively short period he would remain there for initial processing

---

[3] The Amended Complaint alleges that Defendants have a policy or practice of violating 8 C.F.R. § 287.8(c)(2)(vii).  Am. Compl. ¶¶ 135-37.  Section 287.8(c)(2)(vii) prohibits the "use of threats, coercion, or physical abuse by the designated immigration officer to induce a suspect to waive his or her rights or to make a statement."  The Amended Complaint fails to plausibly allege that anyone was actually subjected to this purported policy or practice in Oregon.  Plaintiffs' claim under Section 287.8(c)(2)(vii) should therefore be dismissed.  *See Grundmeyer v. Allstate Prop. & Cas. Ins. Co.*, No. 15-cv-0464, 2015 WL 9487928, at *1 (W.D. Wash. Sept. 29, 2015) ("The question, therefore, is whether the allegations in the [operative] Complaint state 'plausible' grounds for class certification or whether they are so conclusory or formulaic that they should be disregarded . . . . If the class allegations are legally or factually defective, . . . dismissal is appropriate.") (citations omitted).

**Page 7 -    DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

during his speculative arrest are not "tantamount" to the denial of counsel, nor has he shown any evidence beyond his asserted "fear" that he would be coerced or "threatened" to waive his rights. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111-13 (1983)("[t]he equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again"); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409-10 (2013) (reiterating that "threatened injury must be certainly impending to constitute injury in fact" and that "allegations of possible future injury" are not sufficient) (cleaned up); *Warth v. Seldin*, 422 U.S. 490, 502 (1975) ("Petitioners must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."); *Johnson v. District of Columbia*, 248 F.R.D. 46, 54-56 (D.D.C. 2008) (declining to certify Rule 23(b)(2) classes where the plaintiffs lacked standing to seek prospective injunctive relief).

## II.  8 U.S.C. § 1252(f)(1) Bars Classwide Injunctive Relief and Prohibits the District Court from Enjoining Defendants' Actions to Commence Removal Proceedings and Execute Removal Orders.

Section 1252(f)(1) bars the injunctive relief Plaintiffs seek. That provision states "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of" all statutory provisions governing the inspection, apprehension, examination, exclusion, or removal of aliens. 8 U.S.C. § 1252(f)(1). The Supreme Court held that this provision "generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified

statutory provisions." *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022); *see also* 8 U.S.C. §§ 1221–32 (providing the covered statutory provisions). In *Aleman Gonzalez*, the Supreme Court made clear that § 1252(f)(1) "prohibits federal courts from granting classwide injunctive relief" but does not preclude injunctive relief on behalf of a particular individual alien. *Id.* (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481-82 (1999)). "Putting these terms together, § 1252(f)(1) generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions." *Id.* at 550. This bar on class-wide injunctions applies to constitutional claims and covers the operation of a covered provision even if that operation is "unlawful" or "improper." *Id.* at 552-54.

The breadth of Plaintiffs' class-wide relief encompasses anyone apprehended based on the execution of a final order of removal, those subject to expedited removal proceedings, as well as removal proceedings. One of those "specified statutory provisions" is 8 U.S.C. § 1231, which authorizes the detention and removal of individuals ordered removed and specifies the government's discretion, among other things, to determine where to detain individuals who have been ordered removed. 8 U.S.C. § 1231(g) ("The Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal."). Actions taken to apprehend, process, and transfer detainees from the Oregon ICE field offices to the NWIPC fall within that grant of discretionary

authority to agencies under §§ 1226(a)–(c), 1226a, 1229a, 1231(g) and the mandatory injunctive relief sought by Plaintiffs, which would delay and prevent action, would "restrain" and directly affect the government's ability to carry out those critical administrative functions. *See Aleman Gonzalez*, 596 U.S. at 550; *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (Section "1252(f) forecloses jurisdiction to grant class-wide injunctive relief to restrain operation of §§ 1221–31 by any court other than the Supreme Court. It is therefore apparent that a district court has no jurisdiction to restrain the Attorney General's power to transfer aliens to appropriate facilities by granting injunctive relief in a Bivens class action suit."). Since Plaintiffs seek to apply this relief to a Rule 23(b)(2) class, Am. Compl. ¶¶ 98-108, the injunctive relief sought it is barred by § 1252(f)(1) as to the putative class claims.[4]

## III. Plaintiffs Fail to Meet All Rule 23(a) Requirements

### A. The Class Definition is Overbroad

When a proposed class definition "include[s] a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct, the class is defined too broadly to permit certification." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 n.14 (9th Cir. 2022)

---

[4] As discussed in the PI Opposition at 23-25, the INA's zipper clause, 8 U.S.C. § 1252(b)(9), precludes judicial review of Plaintiffs' access-to-counsel claims and requires that those claims be consolidated with putative class members' immigration proceedings, to the extent they have such claims.

Page 10 -    **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

(quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 826 n.15 (7th Cir. 2012)).  As the Ninth Circuit has determined, "a court must consider whether the possible presence of uninjured class members means that the class definition is fatally overbroad."  *Id.*

Plaintiffs' class claims are based on the brief period that individuals are in custody at Oregon ICE field offices. *See* Second Chan Decl. at ¶¶ 10-11.  A similar, but even narrower proposed class, has already been rejected.  Like the Plaintiffs here, the plaintiff in *Mercado v. Noem* alleged that the government was unlawfully restricting attorney access at an immigration facility and defined the class as "all immigration detainees who are or will be detained in" the facility.  No. 25-cv-6568, 2025 WL 2658779, at *18 (S.D.N.Y. Sept. 17, 2025).  The court rejected that class definition because "[i]t is only once a detainee is held for a substantial amount of time that alleged constitutional violations arise."  *Id.*  The court determined that 12 hours or more was the "minimum amount of time in detention" that "would yield a class that would satisfy the requirements of Rule 23(a)."  *Id.*

Given that the Oregon ICE field offices do not hold arrestees longer than 12 hours,[5] Plaintiffs' class definition necessarily falls short of the "substantial amount of time" required for a violation of the claimed constitutional protections to be triggered.  But more than that, Plaintiffs' class definition is overbroad because of its breathtakingly broad reach to circumstances that have no connection beyond membership in the class.  As noted above, it includes people who have been

[5]Second Chan Decl., at ¶¶ 8-11.

**Page 11 -    DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

arrested; people who are vaguely "at risk" of being arrested; people who have

counsel; people who do not have counsel; and it also undoubtedly includes people

who do not want counsel. Even narrowing the class just to those who have actually

been arrested is not enough, because not all class members are entitled to the due

process rights, or would suffer the same injury, that Plaintiffs' class asserts.

### B.    The Proposed Class Lacks the Commonality Required under Rule 23(a)(2)

"Any competently crafted class complaint literally raises common questions."

*Wal-Mart*, 564 U.S. at 349 (citation omitted). Satisfying the commonality element

requires more: a plaintiff must "demonstrate that the class members have suffered

the same injury[.]" *Id.* at 349-50 (cleaned up). "What matters to class

certification . . . is not the raising of common 'questions'—even in droves—but

rather, the capacity of a class-wide proceeding to generate common *answers* apt to

drive the resolution of the litigation. Dissimilarities within the proposed class are

what have the potential to impede the generation of common answers." *Id.* at 350

(citation and internal quotations omitted).

### i.    Plaintiffs fail to establish a uniform policy or practice that is common to the proposed class

"The existence of shared legal issues with divergent factual predicates" can

establish commonality, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019

(9th Cir. 1998), but where a plaintiff alleges that there is a "common pattern and

practice that could affect the class *as a whole*," there must be evidence that the

common policy or practice actually exists; otherwise, there is "no question common to the class." *Ellis*, 657 F.3d at 983 & n.7 (citing *Wal-Mart, Inc.*, 564 U.S. at 355).

In their motion to certify, Plaintiffs string together anecdotal statements contained in a few attorney declarations about temporary access to counsel issues at different Oregon ICE field offices. Mot. at 5-8. These anecdotes describe when arrested aliens are within their first hours in custody while completing necessary intake processing. *Id.* These limited, selective, and likely incomplete,[6] anecdotes about attorney access do "not constitute a systemic deficiency or overarching policy of wrongdoing" that uniformly applies to all putative class members. *See Willis v. City of Seattle*, 943 F.3d 882, 885–86 (9th Cir. 2019) (finding that, although the record contained evidence "in support of a broad description of 'sweeps,'" there was no commonality where there was no "specific practice that applie[d] uniformly to all proposed class members."); *see also DL v. District of Columbia*, 713 F.3d 120, 126 (D.C. Cir. 2013) ("[i]n the absence of identification of a policy or practice that affects all members of the class in the manner *Wal–Mart* requires, the district court's analysis is not faithful to the Court's interpretation of Rule 23(a) commonality."); *In re Navy Chaplaincy*, 306 F.R.D. 33, 48 (D.D.C. 2014) (finding no commonality when the case rested on "an array of individual anecdotes . . . [where] the theories of religious discrimination varied widely"); *see also Lightfoot v. D.C.*, 273 F.R.D. 314,

---

[6] The declarations do not supply any identifying information about the individuals processed at the Oregon ICE field offices and they provide no corroborating documentary evidence about any communications with Defendants or these individuals. *See, e.g.*, Second Chan Decl. at ¶¶ 35-40.

326 (D.D.C. 2011) (commonality cannot be established by identifying "a constellation of disparate but equally suspect [alleged] practices . . . distilled from the varying experiences of the class" and then asking the court to enjoin them all as a "policy or custom[.]").

Indeed, Plaintiffs' own submissions confirm that there is no uniform policy or practice to deny access to counsel before transfer from Oregon. For example, one declaration from Attorney Natalie Lerner states that on October 17, 2025, at the Portland ICE field office, she and her colleague met with four people who had been arrested. *See* ECF 29 at ¶¶2, 6-7. Another Natalie Lerner declaration states that, at the Portland ICE field office, she was "permitted to meet with 11" people in custody on October 30, 2025 and, on November 7, 2025, she and a colleague met with another person in custody at the Portland ICE field office. ECF 53 at ¶¶9, 12-13. Attorney Josephine Moberg's Supplemental Declaration states that on October 17, 2025, she was "let into the visiting room and allowed to meet with E.O.R." at the Portland Ice field office. ECF 33 at ¶¶ 5, 13-16. Moreover, the motion to certify acknowledges that there are, in fact, attorney visitation hours at the Oregon ICE field offices. Mot. at 5 (Plaintiffs vaguely claim that Defendants are "severely limiting" those hours without acknowledging any operational reality at the facilities that affect those visitation hours).

Based on this record, Plaintiffs fail to establish a uniform policy or practice of denying attorney access at Oregon ICE field offices. *See* Second Chan Decl. at ¶¶ 27, 36, 38-39; Declaration of Jason Weiss ("Weiss Decl.") at ¶ 18, ECF 69;

**Page 14 -    DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Declaration of David Cabrera, Jr., ("Cabrera Decl."), ECF 70, at ¶18.  Because the putative class claims rely on the existence of such a uniform policy or practice, commonality is not met.

### ii.    No "Common Questions" satisfy commonality for the putative class claims

Plaintiffs argue that "[a]t its core, this case seeks to enforce the right to access to counsel" and they purport to identify seven "questions of law or fact common to the class" that they say will generate "[c]ommon answers as to the legality of Defendants' policies and practices [as to class members' right to counsel] and their implementation will drive the resolution of this litigation." Mot. at 8-9, 13, 14.  But the common questions they identify cannot be answered in binary ways (e.g. as a "yes or no" or a "true or false") that would resolve any attorney access issues "in one stroke." *See Wal-Mart*, 564 U.S. at 350.[7]

*First*, whether there is a policy or practice to deny access to counsel during a temporary stopover (of fewer than 12 hours)[8] in Oregon ICE field offices—which

---

[7] "While common questions need not predominate over individual questions for a class to be certified as a Rule 23(b)(2) injunctive class, district courts still must identify what questions are common to the class and how the plaintiffs will present evidence about those questions on a class-wide basis." *Black Lives Matter Los Angeles v. City of Los Angeles*, 113 F.4th 1249, 1265 (9th Cir. 2024).

[8] Plaintiffs argue that "[w]hether Defendants' policy/practice of denying access to counsel in Oregon is actively intended to undermine noncitizens' rights to counsel" is a common question.  But this question is not apt to drive resolution of any classwide claim; even if the alleged policy or practice exists, whether it is intended to undermine any individual's right to counsel is not central to resolution of any claim on behalf of the entire class. Here too, to determine intent as to each instance where there was a temporary deferral of attorney access would require individualized determinations about each instance.

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Plaintiffs' own evidence shows there is not—that will not drive resolution of this class action. *See id.* at 350; *Phillips v. Sheriff of Cook Cnty.*, 828 F.3d 541, 552 (7th Cir. 2016) (plaintiffs seeking to certify a class must "articulate at least one common question that is central to the resolution of all of their claims"). Moreover, any temporary deferral of attorney access that impinges on the constitutional rights of putative class members is "valid if [the deferred access is] reasonably related to legitimate government interest." *See Mercado*, 2025 WL 2658779, at *34 (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)); *see also Carnegie v. Plummer*, No. 95-cv-1884, 1997 WL 638449, at *2 (N.D. Cal. Oct. 6, 1997) ("The right of access to counsel, however, may be limited if prison officials can show that limitations are 'reasonably related to legitimate penological interests.'") (citing *Casey v. Lewis*, 4 F.3d 1516, 1520–21 (9th Cir. 1993); *Bell v. Wolfish,* 441 U.S. 520, 547 (1979) ("[W]hen an institutional restriction infringes a specific constitutional guarantee . . . the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security.").

Thus, questions about the existence of a policy or practice to deny access to counsel during a temporary stopover at Oregon ICE field offices involve legal and factual issues that cannot be answered "in one stroke." They involve the unique and legitimate governmental interests behind incidents where attorney access was deferred, which cannot be addressed commonly among all class members.[9] Any

---

[9] The instant lawsuit is distinguishable from cases involving allegations about denial of attorney access at prisons or detention facilities because Oregon ICE field offices are not detention facilities. They are small and limited facilities that are

temporary deferrals of attorney access at Oregon ICE field offices may occur for a variety of legitimate reasons, such as ongoing processing attendant to an alien's intake into custody, operational, logistical, and security considerations, and/or attorneys may arrive without the documentation necessary to establish their relationship with an individual in custody.  Second Chan Decl. at ¶¶ 26–32; Cabrera Decl. at ¶¶ 17–23; Weiss Decl. at ¶¶ 17–23.[10]  To determine whether there is an unlawful policy or practice to deny attorney access at Oregon ICE field offices will necessitate highly individualized assessments, across the ICE field offices, about whether access was deferred because of legitimate government interests.

*Second*, even if a temporary deferral of attorney access can constitute a constitutional harm, whether a putative class member suffered that harm cannot be answered "in one stroke." To answer it will require individualized inquiries.  Such inquiries could include, *inter alia*, whether deferred attorney access occurred when the attorney was already retained and whether there was any prejudice from any deferred attorney access, and whether putative class members choose not to be

---

temporary stopovers used for ministerial tasks. *Lyon v. United States Immigr. & Customs Enf't*, 300 F.R.D. 628, 631 (N.D. Cal. 2014), a case that Plaintiffs cite, Mot. at 17, involved allegations about attorney access issues at immigration detention facilities.

[10] Determinations regarding attorney access at Oregon ICE field offices "should be accorded wide-ranging deference" to ICE Oregon field officers.  *See Bell*, 441 U.S. at 547 ("judicial deference is accorded [to prison administrators] not merely because the administrator ordinarily will, as a matter of fact in a particular case, have a better grasp of his domain than the reviewing judge, but also because the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial.").

**Page 17 -    DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

represented by counsel. Plaintiffs acknowledge, there are individuals in custody who do not have counsel and also "decline the opportunity for free orientation on their legal rights." ECF 37 (TRO Tr. at 22:12-23:1). In Plaintiff Clear Clinic's experience, this is infrequent, but those individuals are still members of the proposed class if arrested in Oregon on or after October 16. Assessing harm as to all these groups requires a highly individualized inquiry.

*Third*, Plaintiffs suggest there is a common question as to whether security concerns are the reason Defendants transferred detainees from Oregon when they did. The question Plaintiffs pose is "[w]hether recent First Amendment activity outside the ICE [f]ield [o]ffices poses a security concern that reasonably requires ICE to rush individuals out of the state, and whether any such activity has been actually observed to 'escalate' when an individual is detained at an ICE Office." Mot at 15.

But this question, too, lacks commonality. To answer it would again require individualized determinations for each transfer, including the existing security concerns, if any, at the time of transfer, and whether those security concerns factored into a transfer decision. Moreover, the reasons for the timing of transfers are irrelevant to the putative class claims; the veracity of those reasons are not part of any claim raised in the Amended Complaint.

*Finally*, Plaintiffs identify three other questions of fact or law that are unrelated to any claims asserted in the Amended Complaint, or any relief sought in the Amended Complaint. Specifically, whether (i) proposed class members have

"meaningful" attorney access after being transferred outside Oregon;[11]

(ii) immigration arrests since October 16, 2025 are lawful; and (iii) detained

individuals can be "timely located by counsel following their transfer out of

Oregon."[12]  Even if these questions are "apt to drive resolution" of this case, which

they are not, they still lack commonality because there are no uniform answers to

these questions.  *Wal-Mart*, 564 U.S. at 349-50.

### iii.    The legal relief available to putative class members is not common

A class action may not be the proper vehicle to resolve due process claims,

which "call[] for such protections as the particular situation demands."

*Jennings v. Rodriguez*, 583 U.S. 281, 314 (2018) (internal quotation and citations

omitted); *see also Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 196 (2001)

("The very nature of due process negates any concept of inflexible procedures

universally applicable to every imaginable situation.").  This is especially true in the

immigration context, where "claims of [due process] constitutional

violations . . . [are] not always fully available to every claimant."  *Las Americas*

---

[11] The Amended Complaint does not appear to allege that putative class members
are unlawfully denied access to counsel at NWIPC, or at any other detention
facility.

[12] There are multiple ways that a detainee's registered legal representative can
locate the detainee.  Declaration of Matthew Cantrell, at ¶¶ 19–20, 22, ECF 67.
Although it may take time for a detainee's attorney to locate the attorney's client
while the client is in transit, that does not give rise to an unconstitutional denial of
counsel.  *See Biwot v. Gonzales*, 403 F.3d 1094, 1098 (9th Cir. 2005) (the right to
access counsel is violated only when conditions are "tantamount to denial of
counsel").

**Page 19 -    DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION**

*Immigrant Advoc. Ctr. v. Wolf,* 507 F. Supp. 3d 1, 39 (D.D.C. 2020), *dismissed sub nom. Las Americas Immigrant Advoc. Ctr. v. Mayorkas*, No. 20-5386, 2024 WL 3632500 (D.C. Cir. Aug. 1, 2024); *Zadvydas v. Davis*, 533 U.S. 678, 694 (2001) ("this Court has held that the Due Process Clause protects an alien subject to a final order of deportation, though the nature of that protection may vary depending upon status and circumstance.") (citations omitted).

The due process protections at issue in Count I of the Amended Complaint is not common among all proposed class members, which makes classwide injunctive relief on that count impracticable and legally impermissible. The proposed class potentially includes those arrested or "at risk" of arrest since October 16, 2025 who either (1) have final orders of removal, which itself includes two subclasses of individuals who are either subject to reinstatement of an executed removal or whose removal orders have not yet been executed; or who (2) entered the United States without admission and cannot establish they have been here for more than two years and are in expedited removal proceedings. *See* Second Chan Decl. at ¶ 15; Declaration of Wilfredo Baez Santiago at ¶ 3. But it is well-settled that these individuals are not entitled to the same process – including the right to counsel – as individuals who are placed into removal proceedings before an immigration judge. *See* 8 U.S.C. § 1231(a)(5) (governing reinstatement of removal); *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 497 (9th Cir. 2007) (en banc) (limited rights and no right to counsel in reinstatement proceedings); 8 U.S.C. § 1231(a) (authorizing detention while the government works to execute the removal order); 8 C.F.R. § 241.13(i)

**Page 20 -    DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

(same); *Zadvydas*, 533 U.S. at 701 (discussing custody process for noncitizens pending execution of the removal order); 8 C.F.R. § 235.3(b)(2)(ii) (noncitizens in expedited removal are "not entitled to a hearing before an immigration judge" except regarding credible fear appeals); *United States v. De La Mora-Cobian*, 18 F.4th 1141, 1146 n.1 (9th Cir. 2021) (noncitizens in expedited removal proceedings have no right to see an immigration judge); *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1088 (9th Cir. 2011) (same); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) (noncitizen in expedited removal after illegally entering the United States "has only those rights regarding admission that Congress has provided by statute"); *Am. Immigr. Laws. Ass'n v. Reno*, 199 F.3d 1352, 1354-55 (D.C. Cir. 2000) (same).

Because commonality "requires the [Plaintiffs] to demonstrate that the class members 'have suffered the same injury,'" that the members of the putative class here possess differing levels of entitlement to due process protections is necessarily fatal to their ability to demonstrate the requisite commonality for class certification. *Wal-Mart*, 564 U.S. at 349-50.

## C.    Leon X's Claims Are Not Typical of the Claims of the Proposed Class

Typicality requires a party to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement "'assure[s] that the interest of the named representative aligns with the interests of the class.'" *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citing *Hanon v. Dataproducts*

*Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).  "'The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'"  *Id.*  Thus, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members."  *Falcon*, 457 U.S. at 156.  A named plaintiff does not satisfy the typicality requirement when his "unique background and factual situation require him to prepare to meet defenses that are not typical of the defenses which may be raised against other members of the proposed class."  *Hanon*, 976 F.2d at 508.

Plaintiffs argue that Leon X satisfies the typicality requirement because he "is an Oregonian who is at risk of immigration enforcement for alleged immigration violations and would likely be deprived of meaningful access to counsel if detained." Mot. at 17.  Beyond being wholly speculative, Plaintiffs are mistaken.  Because Leon X effectively concedes that he has not been arrested since October 16, 2025, has not suffered the same alleged injury and does not necessarily have the same interests in fact as those who have been arrested and processed at an Oregon ICE field office.  As discussed above, Leon X lacks standing because he does not allege an injury in fact.  This alone shows that Leon X's claims or defenses cannot be typical of the members of the proposed class.

### D.    Leon X is Not an Adequate Class Representative

For similar reasons, Plaintiffs fail to demonstrate that Leon X is an adequate class representative.  Rule 23(a)(4) requires that the named parties be able to "fairly and adequately protect the interests of the class."  *Amchem Prods. Inc.*, 521 U.S. at 625.  "A class representative must be part of the class and possess the same interest and suffer the same injury as the class members."  *Id.* at 625-26 (cleaned up).  The nature of class certification under Rule 23(b)(2) amplifies the need to confirm the commitment of the class representatives, because members of a Rule 23(b)(2) class are not afforded the right to opt out of the class and are bound by any judgment.  *See Crawford v. Honig*, 37 F.3d 485, 487 n.2 (9th Cir. 1994), *as amended on denial of reh'g* (Jan. 6, 1995) ("In a Rule 23(b)(2) class action for equitable relief, the due process rights of absent class members generally are satisfied by adequate representation alone."); *Wal-Mart*, 564 U.S. at 362 ("[Rule 23(b)] provides no opportunity for (b)(1) or (b)(2) class members to opt out.")

Leon X fails to fairly and adequately protect the class interests because, like the discussion in the commonality and typicality requirements, the proposed class encompasses a broad range of individuals with different factual bases for their claims, different avenues of possible relief, etc.  As an example, Leon X cannot fairly and adequately protect the interests of those arrested because he does not claim that he has been arrested for immigration violations and cannot establish that he will be denied access to his pre-existing counsel if he is arrested.  *See Zimmerman v. Cedars-Sinai Med. Ctr.*, No. 5:23-cv-01124, 2024 WL 5274600, at *9 (C.D. Cal. Dec.

18, 2024), *reconsideration denied,* No. 5:23-cv-01124, 2025 WL 819060 (C.D. Cal. Jan. 30, 2025) ("So the Court begins its adequacy analysis by noting that, for the same reasons Plaintiffs' claims lack typicality, Plaintiffs are inadequate representatives; they do not have an incentive to pursue claims where they have no injury or where there is little to no overlap in proof.").

## IV.    The Proposed Class Does Not Satisfy Rule 23(b)(2)'s Requirements.

A class may be maintained under Rule 23(b)(2) only if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The requirements cannot be met here.

*First,* as discussed above, Leon X fails to establish that Defendants have a uniform policy or practice that unlawfully denies attorney access to individuals in custody in Oregon ICE field offices. Although Plaintiffs cited the 2011 Performance Based National Standards ("PBNDS") (rev. 2016) in their Amended Complaint and at the TRO hearing to justify their requested relief, *see* Am. Compl. ¶¶ 24, 30-32; TRO Tr., 12:18–24; 16:15–17:3; 19:15–20:7; 21:19–22:4; 29:5–23, the PBNDS does not apply to the Oregon ICE field offices. In their motion to certify, Plaintiffs do not point to any written policy. Nor does their evidence even anecdotally establish a uniform policy or practice. Consequently, Leon X cannot show that the government has "acted or refused to act on grounds that apply generally to the class." *Id.*

*Second*, Rule 23(b)(2) does not authorize certification "when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Wal-Mart*, 564 U.S. at 360; *see also Ellis*, 657 F.3d at 987 (same). Plaintiffs assert they seek "uniform relief from a uniformly applicable practice." Mot. at 21-22. But no injunction or declaratory relief can provide the relief sought to this entire putative class.

For example, the Amended Complaint seeks an injunction that requires Defendants to "provide meaningful access to counsel for individuals held in their civil immigration custody before transferring such individuals outside of the District of Oregon." Am. Compl. at 43. Although the Amended Complaint does not define what "meaningful access" means, or whether Plaintiff's version of "meaningful access" exceeds anything that may be legally required, the Motion for Preliminary Injunction more specifically identifies the type of injunctive relief that is sought. ECF, 40 at 32-34. For the reasons stated in the PI Opposition, the injunctive relief Plaintiffs seek cannot flow to each individual who is detained in an Oregon ICE field office. *See* PI Opposition at 60-65. Again, individuals arrested for immigration violations in Oregon who are in custody at Oregon ICE field offices do not typically remain in those field offices for more than a few hours. During that short period, legitimate operational needs and/or security concerns may—but as the record shows, do not always— result in temporary deferred attorney access for some. Classwide relief will not benefit the entire class because the injunctive relief that is sought is impossible to provide to those individuals. For this reason, the injunction

sought in this case would not benefit the entire class. Moreover, because "a single injunction or declaratory judgment" cannot provide relief to some proposed class members on the Amended Complaint's right to counsel claim (Count I), *e.g., supra* Section III.B.iii, the proposed class, as currently defined, cannot be certified or maintained under Rule 23(b)(2).[13]

For these reasons, the Court should also deny Plaintiff's motion to certify a Rule 23(b)(2) class.

## V.    Plaintiffs have not met their burden under Rule 23(b)(1)(A).

In addition to Rule 23(b)(2), Plaintiffs claim that they meet Rule 23(b)(1)(A)'s requirements. A class may be maintained under Rule 23(b)(1)(A) only if prosecuting separate actions "would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct" for the defendants. In other words, Rule 23(b)(1)(A) "'certification is appropriate when the class seeks injunctive or declaratory relief to change an alleged ongoing course of conduct that is either legal or illegal as to all members of the class.'" *Adair v. England*, 209 F.R.D. 5, 12 (D.D.C. 2002) (citing 5 Moore's Federal Practice § 23.41[4] (3d ed. 2000)).

But because there is "always *some* risk that individual actions may expose a defendant to conflicting judgments on liability, [such] certification requires something more—namely, a legitimate risk that separate actions may establish

---

[13] These divisions among the class and the different forms of relief sought raise adequacy concerns under Rule 23(a)(4).

incompatible standards of conduct, so as to make individual actions impossible or unworkable." *In re Navy Chaplaincy*, 306 F.R.D. at 55 (cleaned up). Here, Plaintiffs argue that "[i]ndividual actions challenging and seeking to define the Defendants' authority [to bar detained Oregonians from access to counsel before out-of-state transfer] present a significant risk of varying adjudications defining obligations and requirements in a manner that is confused[.]" Mot. at 22. This argument fails. There is nothing "confused" about assessing case-by-case circumstances to determine the appropriate outcome. That is how the law typically works. And for all the reasons described herein, there are innumerable circumstances that dictate what happens, and what the constitution entitles, after any given immigration arrest. An injunction covering this broad class simply would not provide relief to all proposed class members but would restrict the government to an unwarranted degree. For example, individuals in custody on Friday, October 17, 2025, may have had different attorney access than individuals in custody on Saturday, November 1, 2025, because Oregon field offices closed to the public on weekends. Second Chan Decl. at ¶¶ 20–21; Cabrera Decl. at ¶¶ 6, 12; Weiss Decl. ¶¶ 12–13. Some may have been processed and transferred soon after arrival due to the timing of arrests—itself dependent on particularized Oregon ICE field office conditions after any given arrest—and any pre-established departure of the daily transport run, or the need to coordinate transport runs due to safety risks existing on a particular day. Others may have been transferred several hours after arrival based on timing and security circumstances, thus permitting the logistical

**Page 27 -     DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION**

opportunity to meet with pre-existing counsel.  Second Chan Decl. at ¶¶11-13, 29-30, 32; Weiss Decl. at ¶¶8-9, 23.  Given these variables, bringing individual actions would not "create a risk of . . . inconsistent or varying adjudications" such that it "would establish incompatible standards of conduct" for Defendants.

Fed. R. Civ. P. 23(b)(1)(A).

<div align="center">

**CONCLUSION**

</div>

Based on the foregoing, Defendants respectfully request that the Court deny Plaintiffs' Motion for Class Certification.

DATED this 15th day of December 2025.

<div style="margin-left: 40%;">

SCOTT E. BRADFORD
United States Attorney
District of Oregon

*/s/ Joshua Keller*
JOSHUA KELLER
Assistant United States Attorney
Attorneys for Defendants

</div>

## WORD COUNT CERTIFICATE

The preceding memorandum complies with the applicable word-count limit under LR 7-2(b), because it contains 8,167 words, based on the word-count function of the word processing system used to prepare the memorandum.  This word count includes headings, footnotes, and quotations, but excludes the caption, table of contents, table of authorities, signature block, and certificates of counsel.

Respectfully submitted this 15th day of December 2025.

SCOTT E. BRADFORD
United States Attorney
District of Oregon

*/s/ Joshua Keller*
JOSHUA KELLER
Assistant United States Attorney
Attorneys for Defendants