STEPHEN W MANNING, OSB No. 013373
stephen@innovationlawlab.org,smanning@ilgrp.com
TESS HELLGREN, OSB No. 191622
tess@innovationlawlab.org
JORDAN CUNNINGS, OSB No. 182928
jordan@innovationlawlab.org
KELSEY LYNN PROVO, OSB No. 145107
kelsey@innovationlawlab.org
NELLY GARCIA ORJUELA, OSB No. 223308
nelly@innovationlawlab.org
INNOVATION LAW LAB
333 SW 5th Ave., Suite 200
Portland, OR 97204-1748
Telephone: +1 503-922-3042

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### Eugene Division

| | |
|---|---|
| CLEAR CLINIC, PINEROS Y CAMPESINOS UNIDOS DEL NOROESTE, and LEON X, individually and on behalf of others similarly situated; | |
| *Plaintiffs,* | |
| v. | Case No. 6:25-cv-01906-AA |
| KRISTI NOEM, Secretary of the Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY ("DHS"); TODD LYONS, Acting Director of Immigration Customs Enforcement; LAURA HERMOSILLO, Seattle Acting Field Office Director, Immigration and Customs Enforcement and Removal Operations; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT ("ICE"); PETE FLORES, Acting Commissioner of Customs and Border Protection; and U.S. CUSTOMS AND BORDER PROTECTION ("CBP"), | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** |
| *Defendants.* | |

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................ii

INTRODUCTION .........................................................................................................1

ARGUMENT ..................................................................................................................1

**I.**    **Leon X has Article III standing.** ..................................................................1

   A.    Leon X is a target under Defendants' mass arrest policy. ............................2

   B.    Defendants' access to counsel policy applies to Leon X. ............................5

**II.**    **8 U.S.C. § 1252(f)(1) does not bar the classwide relief that Plaintiffs seek.** .......6

**III.**    **Plaintiffs meet all requirements for class certification under Rule 23** ..............8

   A.    The proposed class definition is not overbroad. ..........................................8

   B.    Commonality is met. ...................................................................................10

1.    Plaintiffs have amply alleged the presence of a uniform policy and practice that limits access to counsel at the Oregon ICE Field Offices. ....................................................11

2.    Plaintiffs have asserted multiple common questions. .....................................12

3.    Plaintiffs request uniform legal relief that would remedy the claims of the class. ............13

   C.    Leon X's claims are typical of class members. ..........................................16

   D.    Leon X is an adequate class representative. ...............................................17

**IV.**    **Plaintiffs satisfy the requirements of Rule 23(b)(2).** ....................................17

**V.**    **Plaintiffs satisfy the requirements of Rule 23(b)(1)(A).** ...............................19

**CONCLUSION** ...........................................................................................................19

**PLAINTIFFS' REPLY ISO MOTION FOR CLASS CERTIFICATION**

**INTRODUCTION**

Defendants oppose certification of the class because, from their point of view, the denial of access to counsel in Oregon is no denial at all because there is no right to counsel in Oregon for the class members arrested in Oregon. Defs. Opp'n to Class Certification ("Opp'n."), Dkt. 83 at 20-21.[1] They attack Leon X's standing asserting this his injury is speculative and hypothetical because it is contingent on a hypothetical arrest and post-arrest treatment; additionally, they assert that the conditions in Oregon are just merely deferral of the right to counsel and not a denial. Opp'n at 5-8. Defendants assert that § 1252(f) bars the District Court from asserting jurisdiction over class claims. Opp'n 8-10. Finally, they contest each of the requirements related to class certification. Opp'n 10-22.

Defendants' arguments in opposition are meritless and the motion for class certification should be granted.

**ARGUMENT**

**I.    Leon X has Article III standing.**

Defendants' attack on Leon X's standing lacks merit. Defendants assert that Leon X has no "injury-in-fact" because he has not been arrested; cannot show that he is likely to be arrested; and, even if arrested, he cannot show that he would suffer a denial of access to counsel. Opp'n 11-13. But their position is untethered from the reality of the facts on the ground in Oregon. They are wrong on each point because Leon X is a target of their mass arrest and deportation policy and, personal to him, Defendants have stated that, just like numerous individuals they have publicly demarcated as targets, he is subject to arrest, detention and deportation. *See* Defendants' Response to Motion for Preliminary Injunction, ECF 66 at 55 (acknowledging that "apprehension and initiation of removal proceedings [against Leon X] could be lawful"). And, once arrested, the Defendants' denial of counsel policy will implicate his right to counsel and block his access. *See Cent. Delta Water Agency v. United States*, 306 F.3d 938, 949-50 (9th Cir. 2002) (finding that "credible threat of harm is sufficient to constitute actual

---

[1] Pagination refers to Defendants' internal pagination.

injury for standing purposes") (collecting cases); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) ("An injury-in-fact may simply be the fear or anxiety of future harm."); *Vasquez Perdomo v. Noem*, 790 F. Supp. 3d 850, 879 (C.D. Cal. 2025) (finding standing where the "fear of being detained without access to counsel" was "well-grounded on the facts of this case and therefore reasonable" among the members of CHIRLA in the absence of the requested TRO is well-grounded on the facts of this case and therefore reasonable), *stayed*, 606 U.S. ____ (2025) (interim stay pending appeal).

### A.    Leon X is a target under Defendants' mass arrest policy.

The son of agricultural workers and PCUN members, Leon X's injury—a fear "that ICE will arrest and detain [him] without a warrant or cause" and that he will be "swiftly transferred without the opportunity to consult with [his] immigration counsel"— is concrete because *it is Defendants' policy and practice* to do exactly that. *See* Declaration of Leon X ISO Plaintiffs' Motion for a Preliminary Injunction ("Leon X Decl."), ECF. 46, ¶¶ 4, 7. Since the filing of this case and the present motion, high-ranking Government officials—including the President—have urged more and more arrests of people exactly like Leon X. On November 2, 2025, President Trump urged DHS to push its detention dragnet farther.[2] The President explained that Defendants "haven't gone far enough because we've been held back by the judges, by the liberal judges that were put in by Biden and by Obama" and that the tactics used—including warrantless arrests—are commendable "because you have to get the people out."[3] On November 14, 2025, DHS's Chief of the Border Patrol stated that no U.S. city, such as Portland, will be a sanctuary and that "we know who we are looking for and we have collaterals which are those other illegals that are in that area [such as a Home Depot]" and that every state is subject to the so-called rules of the border.[4] Later, on Thanksgiving Day, 2025, Trump denigrated all immigrants, urged the deportation of any "Foreign National" who is "non-compatible with Western Civilization[,]"

---

[2] Aliza Chasan, *Trump says immigration raids "haven't gone far enough"*, CBS News, Nov. 2, 2025, https://www.cbsnews.com/news/trump-says-ice-raids-havent-gone-far-enough-60-minutes/.
[3] *Id.*
[4] Ali Bradley, Jeff Arnold, *No US city will be 'sanctuary' for migrants: Border Patrol chief*, NewsNation, Nov. 14, 2025, https://www.newsnationnow.com/us-news/immigration/no-sanctuary-migrants-patrol-chief/.

including noncitizens with lawful status, with the purpose of "REVERSE MIGRATION" and explicitly threatening noncitizens whom the President dislikes with "You won't be here for long.[5]

There is ample evidence of the implementation of the mass arrest policy in Oregon both in the community and on the Court's own docket.[6] Local communities across Oregon have recognized the impacts of Defendants' widespread arrests on community members, declaring a state of emergency in cities including Hillsboro, Forest Grove, Cornelius, Woodburn and Salem, as well as Washington and Multnomah Counties.[7] On December 9, 2025, the City of Eugene, Oregon also set aside public funds for immigrant community support because of the impacts of the Defendants' actions.[8] Other Oregon

---

[5] Donald J. Trump, @realDonaldTrump, Truth Social, Nov. 27, 2025, 8:26 PM, https://truthsocial.com/@realDonaldTrump/posts/115625427648743414.

[6] *See* Declaration of Emily Ryo, ECF 78 (D. Or. 2025) (concluding that since October 2025, civil immigration arrests in Oregon soared 1,400% over prior months, and more than 7,900% over the prior year).

[7] Hillsboro City Council, Resolution No. 2906, *A Resolution of the City of Hillsboro Recognizing that a State of Emergency Exists Within the Community due to the Impacts of Federal Immigration Enforcement Actions and Setting Forth Various Actions the City Should Take to Address Such Impacts* (Nov. 18, 2025), https://perma.cc/XJB5-7XGK; Forest Grove City Council, Resolution No. 2025-61, *Resolution Declaring a State of Emergency to Address Community Impacts of Federal Immigration Enforcement* (Nov. 10, 2025), https://perma.cc/7QEM-JFBJ; Cornelius City Council, Resolution No. 2025-61, *Ratifying a State of Emergency Proclamation* (Nov. 17, 2025), https://perma.cc/E5YX-T9ZL; Sophia Cossette, *Woodburn declares state of emergency due to federal immigration crackdown*, Woodburn Independent (Nov. 21, 2025), https://perma.cc/QM48-ZL7H; Salem City Council, Resolution No. 2025-33, *A Resolution of the City of Salem Recognizing that a State of Emergency Exists within the Community due to the Impacts of Federal Immigration Enforcement Actions and Setting Forth Actions the city Should Take to Address Such Impacts* (Dec. 1, 2025), https://www.cityofsalem.net/home/showpublisheddocument/28579/639003687626500000J;
Washington County Board of Commissioners, Resolution & Order 25-72, *In the Matter of Declaring a State of Emergency Regarding Federal Immigration Enforcement* (Nov 4, 2025), https://perma.cc/NM89-T7CP; Multnomah County Board of Commissioners, Executive Rule No. 432, *Declaration of Emergency Due to the Impacts of Federal Immigration Enforcement Actions* (Dec. 12, 2025), https://perma.cc/6CW3-MKT8.

[8] Grace Chinowsky, *Eugene sets aside funds for future immigrant community support*, LookOut Eugene-Springfield (Dec. 9, 2025), https://lookouteugene-springfield.com/story/government-politics/2025/12/09/eugene-sets-aside-funds-for-future-immigrant-community-support/.

jurisdictions are considering similar declarations because of the impacts of Defendants' actions, including the Cities of Gresham and Springfield.[9]

The regional Courts dockets demonstrate that Leon X's injury is concrete and particularized because Plaintiffs have submitted evidence demonstrating that it is Defendants' policy to target people exactly like him for civil immigration arrests, including unlawful arrests for people with the same "deferred action" status held by Leon X. *See, e.g., B.D.A.A. v Bostock*, 2025 WL 3484912 at *7 (D. Or. 2025) (warrantless arrest of immigrant with deferred action); Zane Sparling, *An Oregon man was on the path to citizenship. Now he's in ICE detention, fighting to stay*, The Oregonian, Nov. 07, 2025, 5:45 p.m., available at https://www.oregonlive.com/washingtoncounty/2025/11/ice-detention-of-oregon-business-owner-highlights-conflicting-immigration-policies.html (same). Leon X's fear "lives in every knock on the door, every commute to work or trip to the grocery store" which happens every day as people are "taken away" by DHS. Leon X Decl. ¶¶ 4, 5. Leon X's fear merely echoes Defendants' on-the-ground implementation of their mass arrest policy, which is to arrest people when they are on their way to work, *M-J-M-A- v. Wamsley, No.* 6:25-cv-02011-MTK (D.Or. 2025), when they are coming home from work (like Victor Cruz-Gamez),[10] when they go grocery-shopping, *L-A-R-A- v. Wamsley*, No. 3:25-cv-01994-AB (D.Or. 2025), and when they are merely lawfully driving on the highway, *B.D.A.A.*, 2025 WL 3484912 at *7. *See Vasquez Perdomo v. Noem*, 148 F.4th 656, 675 (9th Cir. 2025) ("There is no predicate action that the individual plaintiffs would need to take, other than simply going about their lives, to potentially be subject to the challenged [immigration] stops."); *Escobar Molina v. U.S. Dep't of Homeland Sec.*, No. 25-3417 (BAH), 2025 WL 3465518 at *16 (D.D.C. Dec. 2, 2025) ("plaintiffs have sufficiently shown that they cannot avoid repeating the quotidian conduct that led to

---

[9] Christopher Keizer, *Gresham Mayor: 'We are a nation of laws. We are a nation of immigrants'*, Portland Tribune (Dec. 16, 2025), https://perma.cc/94B8-BCB8; Callee Ackland, *Springfield, Do Something: The city council should not be silent about the humanitarian crisis for immigrants*, Eugene Weekly (Dec. 31, 2025), https://perma.cc/S8DK-CJ3G.

[10] *See*, Zane Sparling, *An Oregon man was on the path to citizenship. Now he's in ICE detention, fighting to stay*, The Oregonian, Nov. 07, 2025, 5:45 p.m., available at https://www.oregonlive.com/washingtoncounty/2025/11/ice-detention-of-oregon-business-owner-highlights-conflicting-immigration-policies.html

their original arrests" and were previously arrested "while going about unavoidable, lawful activities of daily life").

Courts have found that similarly situated individuals have standing. *See Escobar Molina*, 2025 WL 3465518, at *16 (putative class challenge to Defendants' policy of widespread warrantless arrests). In *Escobar Molina*, the D.C. District Court found that plaintiffs established standing for injunctive relief where defendants' challenged conduct was part of "a systemic policy and practice," Plaintiffs "proffered evidence suggesting that they were among the group of individuals targeted by defendants[,]" and Plaintiffs showed that "they cannot avoid run-ins with [Defendants'] agents lest they avoid 'going about … daily life." *Id.* Such is the case here. "[D]efendants are under pressure from the White House to meet increasing goals in the number of arrests of individuals," *id.*, and as such are systematically engaging in warrantless arrests and rapid transfers out of Oregon without affording individuals their right to counsel. Leon X is among the group targeted, and he cannot avoid immigration agents: they could come to his door, stop him on his way to work, or on his way to run errands. *See* Leon X Decl. ¶¶ 3-6. Leon X thus reasonably fears *imminent* detention without access to counsel. *See Vasquez Perdomo*, 790 F. Supp. at 877 (finding article III standing due to "reasonable fear of imminent detention without access to counsel). In other words, Leon X's injury is "certainly impending." *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013).

## B.    Defendants' access to counsel policy applies to Leon X.

There is copious evidence in this record that individuals detained by Defendants in civil immigration arrests in Oregon are subject to a policy – by Defendants' own admissions – of "limited" access to counsel – a policy in which counsel is facilitated only "where feasible", according to Defendants' unilateral operational preferences. Second Declaration of Assistant Field Office Director Jeffrey Chan ("Second Chan Decl."), ECF 68, ¶ 27. This means in plain language, that access to counsel is denied unless, by Defendants pure prerogative, they chose to grant it. Absent relief from this Court, if Leon X is apprehended, he will be subject to this same limited access to counsel, if not outright denial. Leon X's "exposure to [the allegedly unlawful] policy is both itself an ongoing harm and

evidence that there is 'sufficient likelihood' that [his] rights will be violated" through a denial of access to counsel if he is detained. *See Ortega-Melendres v. Arpaio*, 836 F. Supp. 2d 959, 979 (D. Ariz. 2011), *aff'd sub nom. Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012).

## II.    8 U.S.C. § 1252(f)(1) does not bar the class wide relief that Plaintiffs seek.

Plaintiffs do not seek to enjoin Defendants from any operation of the provisions of the INA referenced in § 1252(f), which govern, in part, procedures for the apprehension and removal of noncitizens. Instead, they seek an order protecting their constitutional rights under the Fifth and First Amendments. *See* ECF 39 at 42-43. Accordingly, Defendants' § 1252(f) argument is meritless.

Plaintiffs do not challenge Defendants' authority to lawfully "apprehend, process, and transfer" individuals detained in Oregon, *contra* Resp. at 9; instead, Plaintiffs seek to enforce these individuals' right to access counsel – a right that Defendants have no discretion to curtail. Each of Plaintiffs' constitutional claims "directly implicates" constitutional rights under the Fifth or First Amendment, and any impact on a covered statutory provision is collateral. *See* Plaintiffs' First Amended Complaint ("FAC"), ECF 39, ¶¶ 109-127; *Gonzales v. DHS*, 508 F.3d 1227, 1233 (9th Cir. 2007). Similarly, Plaintiffs' statutory claim relies on the Administrative Procedure Act ("APA") and seeks to enforce the right to counsel that is further enshrined in multiple provisions of the Immigration and Nationality Act ("INA"). *See* FAC ¶¶ 128-133. While the right to counsel may be incorporated in the INA at 8 U.S.C. § 1229a(b)(4)(A), it is also rooted in a range of non-covered statutory provisions and regulations, such as § 1362. *Biwot v. Gonzales*, 403 F.3d 1094, 1098 (9th Cir. 2005) ("The right to counsel in immigration proceedings is rooted in the Due Process Clause and codified at 8 U.S.C. § 1362 and 8 U.S.C. § 1229a(b)(4)(A)"); 8 U.S.C. § 1362 ("In any removal proceedings before an immigration judge and in any appeal proceedings before the Attorney General from any such removal proceedings, the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel … as he shall choose."). Indeed, the Ninth Circuit has interpreted the right to counsel enshrined at § 1362 to be inclusive of—and *broader* than—that under 8 U.S.C. § 1229a. *See Orozco-Lopez v. Garland*, 11 F.4th 764, 777 (9th Cir. 2021) ("Congress's use of 'any removal proceedings' instead of

'removal proceedings under section 1229a of this title' in § 1362 must mean something. Specifically, for the word "any" to do any work as it must, and not be surplusage, § 1362 must include a broader class of removal proceedings than those described in § 1229a."). Plaintiffs' requested relief thus "directly implicates" the right to counsel endorsed *throughout* the INA, not a provision exclusively specified in § 1252(f)(1). *See Gonzales*, 508 F.3d at 1233. But most importantly, the relief does not request to enjoin or modify any of the procedures established by Congress regarding the legal removal process of non-citizens, but rather, the remedies requested seek to protect the provisions set therein, which is fully in line with the Congressional intent behind enacting the § 1252 (f)(1) limitations. *See* House Judiciary Committee Report No. 104–469(I) at 161.

If an "injunction would have at most a 'collateral' effect on [the] operation of proceedings under covered provisions, it does not fall "within the scope of § 1252(f)(1)." *Al Otro Lado v. Exec. Office for Immigr. Review*, 138 F.4th 1102, 1125 (9th Cir. 2025) (citing *Gonzales*, 508 F.3d at 1233; *Aleman Gonzalez*, 596 U.S. 543, 553 n.4 (2022) (acknowledging the "proposition that a court may enjoin the unlawful operation of a provision *that is not specified in § 1252(f)(1)* even if that injunction has some collateral effect on the operation of a covered provision") (emphasis in original). The Ninth Circuit has repeatedly rejected application of § 1252(f)(1) where the case brings claims that do not directly challenge provisions within 8 U.S.C. §§ 1221-1332, even if the result of the requested injunctive relief may have some impact on a covered provision. *See, e.g.*, *Gonzales*, 508 F.3d at 1233; *Catholic Social Services, Inc. v. INS*, 232 F.3d 1139 (9th Cir. 2000) (en banc).

The recent decision in the *Escobar Molina* case further demonstrates why 8 U.S.C. § 1252(f)(1) does not bar class wide relief here. In *Escobar Molina*, as here, the government argued that "because the government must first arrest someone in order to detain them, any injunction affecting the way arrests are made will necessarily affect the 'operation of' provisions governing detention", such as sections 1225, 1226, and 1231, that are within the scope of section 1252(f)(1). *Escobar Molina*, 2025 WL 3465518, at *31. The court squarely rejected this argument, applying *Aleman Gonzalez* and concluding that "[j]ust because a warrantless civil immigration arrest, governed by § 1357(a), may lead to detention or other consequences governed by §§ 1221-31 does not mean that an injunction

implicating § 1357(a)(2) is effectively an injunction impairing the operation of the covered sections." *Id.* at *32. So too here. Plaintiffs do not dispute Respondents' factual assertions that ensuring the right to counsel may have implications for the manner of processing or the timing of certain individuals' transfers; however, such "downstream effects" do not strip this Court of jurisdiction over claims that pertain to the right to counsel. *See id.* at *31. Section 1252(f)(1) does not limit this Court's jurisdiction to grant class wide relief.[11]

### III.    Plaintiffs meet all requirements for class certification under Rule 23.

#### A.    The proposed class definition is not overbroad.

Defendants do not contest that Plaintiffs' putative class meets Rule 23's numerosity requirement. *See* Resp.; *see also Mercado v. Noem*, No. 25-cv- 6568 (LAK), 2025 WL 2658779, at *19 (S.D.N.Y. Sept. 17, 2025) ("Classes including future [members] generally meet the numerosity requirement due to the impracticality of counting such class members, much less joining them.") (cleaned up). Instead, Defendants cite *Mercado* to argue that the class "is defined too broadly," Resp. at 10-12.

The class is not overbroad. Plaintiffs challenge Defendants' policy and practice of restricting access to counsel that impacts every individual who is subject to a civil immigration arrest in Oregon. This challenge directly maps onto the class definition, which encompasses individuals who have been or will be impacted by Defendants' unlawful actions because they are subjected to a civil immigration arrest. *See* Plaintiffs' Motion for Class Certification ("Motion"), ECF 56, 1. Indeed, Plaintiffs' proposed class mirrors class definitions that have been certified or provisionally certified in many recent cases similarly challenging the government's unlawful policies and practices relating to immigration enforcement. *See, e.g.*, *Escobar Molina*, 2025 WL 3465518, at *36 (provisional certification); *Ramirez Ovando*, -- F.Supp.3d --, 2025 WL 3293467, at *14 (D. Colo. Nov. 25, 2025) (provisional certification);

---

[11] Defendants' argument that 8 U.S.C. § 1252(b)(9) applies here, Resp. at 10 n.4, is meritless because they wrongly conflate Plaintiffs' causes of action with challenges to a removal order, as explained in Plaintiffs' Reply In Support of Plaintiffs' Motion for a Preliminary Injunction, ECF 77, at 5-6.

*United Farm Workers v. Noem*, 785 F. Supp. 3d 672, 731 (E.D. Cal. 2025) (provisional certification); *Gonzalez v. Noem*, 2025 WL 3204602, at *5 (N.D. Ill. Nov. 17, 2025) (certification of similar class of "immigration detainees who are detained and those who will be detained in the future" at a particular ICE facility).

Mercado does not instruct otherwise. There, the district court found plaintiffs' proposed class definition overbroad because the plaintiffs' alleged claims that arise only "once a detainee has been held for a meaningful amount of time." *Mercado*, 2025 WL 2658779, at *18. The court distinguished the proposed class in *Mercado* from the proposed class in *Unknown Parties v. Johnson*, in which "the conditions complained of allegedly affected the rights of all individuals within the putative class." *Id.* So too, here: Plaintiffs allege that Defendants' challenged practices and policies regarding access to counsel impact the rights of *all* individuals encompassed in Plaintiffs' proposed class. *See* Plaintiffs' Motion for Class Certification, ECF 56 at 14-16. The "12 hours" limitation that Defendants reference comes from a framework their declarations introduce, *see* Resp. at 11; as Respondents themselves recognize, it is not a substantive aspect of *any* of Plaintiffs' claims, *see id.* ("Plaintiffs' class claims are based on the *brief period* that individuals are in custody at Oregon ICE field offices") (emphasis added). Instead, the injury that Plaintiffs allege – denial of access to counsel at a legally critical moment for individuals' liberty and rights – would injure all class members, not just those who were detained "for a relatively longer duration." *See Gonzalez*, 2025 WL 3204602, at *3 (finding commonality where "denial of access to counsel" and the "practice of agents pressuring detainees to sign legally binding documents" would "injure all detainees, not just long-term detainees").

Defendants further argue that the class definition is overbroad because class members may have varying levels of representation. Resp. at 11-12. But Plaintiffs have amply alleged that Defendants' unlawful restriction of access to counsel impacts both represented and unrepresented individuals who are detained, however; and individuals who wish to forego counsel still have a right to be advised of their right to access legal representation before Defendants make decisions about their custody and ask them to waive their rights. *See, e.g.*, 8 C.F.R. § 287.3(c) ("a[ noncitizen] arrested without warrant and placed in formal proceedings under section 238 or 240 of the Act will be advised of the reasons for his

or her arrest and *the right to be represented at no expense to the Government*" (emphasis added); (emphasis added); *Tawadrus v. Ashcroft*, 364 F.3d 1099, 1103 (9th Cir. 2004) (explaining that in the context of removal proceedings "[w]e have repeatedly explained that for an applicant to appear pro se, there must be a knowing and voluntary waiver of the right to counsel"); *id.* ("In order for a waiver to be valid, an IJ must generally: (1) inquire specifically as to whether petitioner wishes to continue without a lawyer; … and (2) receive a knowing and voluntary affirmative response) (internal citations omitted)).

As to Defendants' argument that "not all class members are entitled to the due process rights . . . that Plaintiffs' class asserts", the U.S. Constitution says otherwise. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."); *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)); *Mercado v. Noem*, — F. Supp. 3d —, No. 25-CV-6568 (LAK), 2025 WL 2658779, at *34 (S.D.N.Y. Sept. 17, 2025) ("detained [noncitizens] are entitled to the minimum levels of humane treatment and access to counsel that are required by the Constitution").[12]

## B.  Commonality is met.

Plaintiffs amply meet Rule 23's requirement of commonality. "What matters to class certification . . .[is] the capacity of a class wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Parsons v. Ryan*, 754 F.3d 657, 674–75 (9th Cir. 2014). Whether or not the individual circumstances of each class member vary, where, as here, all individuals "retain a common core of factual or legal issues with the rest of the class, commonality exists." *Evon v. Law Offices of Sidney Mickell,* 688 F.3d 1015, 1029 (9th Cir.2012) (quotation marks and citation omitted).

---

[12] Even if the Court found the proposed class definition overbroad, "overbreadth of plaintiff's proposed class is not fatal to provisional certification. The Court has authority *sua sponte* to modify a proposed class definition by carving out a narrower class from an overbroad class proposed in the complaint." *Mercado*, 2025 WL 2658779, at *19. The *Mercado* court did just that, proceeding to provisionally certify the class of "all immigration detainees who now or will be detained for 12 or more hours" at a particular ICE site. *Id.*

1. **Plaintiffs have amply alleged the presence of a uniform policy and practice that limits access to counsel at the Oregon ICE Field Offices.**

Respondents characterize Plaintiffs' challenged policy as "temporary access to counsel issues" based on "anecdotal statements contained in a few attorney declarations." Resp. at 13. Not so. Respondents ignore the substantial evidence that Plaintiffs have presented, through numerous sworn declarations and testimony in court, that Defendants impermissibly restrict access to counsel for individuals detained in civil immigration enforcement actions in Oregon. Indeed, Defendants' own declarations assert that ICE may unilaterally deny access to counsel when circumstances including ongoing processing, security risks, and imminent transfer are in play. *See* Second Chan Decl. ¶ 27; Declaration of Supervisory Detention and Deportation Officer Jason Weiss ("Weiss Decl."), ECF 69, ¶ 18; Declaration of David Cabrera Jr. ("Cabrera Decl."), ECF 70, ¶ 18. And according to Defendants, these circumstances *are always in play* such that access to counsel at Oregon ICE Field Offices is available in theory but not practice. Second Chan Decl. ¶¶ 14 (asserting access to counsel is limited while active booking and processing is in progress, which often accounts for the majority of time spent at the Portland ICE office), 28 (asserting transport plays a significant factor in the timing of transfers and transport runs are limited), 31 (asserting safety and security concerns impact attorney access), 32 (asserting expeditious transfer necessary because "the longer an individual remains in custody in an ERO office in Oregon prior to transport," the higher the security risk).

Plaintiffs' First Amended Complaint clearly alleges that "Defendants have adopted a policy, pattern, and practice of limiting and outright denying attorneys access to their facilities" in Oregon. *See* FAC ¶ 57; *see also id.* ¶¶ 58-76 (providing additional allegations). Plaintiffs have substantiated these allegations with copious evidence of how Defendants have erected and maintained barriers to individuals' access to counsel in Oregon. *See, e.g.*, Plaintiffs' Motion for Preliminary Injunction, ECF 40, 9-14 (summarizing factual allegations supporting lack of access to counsel); Plaintiffs' Reply In Support of Plaintiffs' Motion for Preliminary Injunction, ECF 77, 21-24 (further detailing factual allegations supporting the conclusion that "Defendants' access to counsel policies and practices in Oregon are tantamount to denial of counsel"). Indeed, Defendants themselves admit that they permit

access to counsel in Oregon *only* at their discretion and *only* then when they unilaterally decide that such access "is feasible." *See, e.g.*, Second Chan Decl. ¶¶ 27-32. In Oregon, "[a]ttorney access to an individual in ICE custody is limited while ERO is actively booking and processing the individual, which often accounts for the majority of time spent in the [Oregon Field Office] prior to transfer to the NWIPC." Second Chan Decl. ¶ 14; *see also* Weiss Decl. ¶ 9 (same); Cabrera Decl. ¶ 9 (same). Defendants also deny access because of "incomplete documentation, ongoing processing (e.g. fingerprinting or interviews), security risks, or the detainee's refusal" or where "a meeting would delay imminent transfer" or "the visitation room is already in use." Weiss Decl. ¶ 18; Cabrera Decl. ¶ 18; *see also* Second Chan Decl. ¶ 30 (describing how transport schedule is prioritized and "ICE cannot always accommodate visitation requests at the processing offices").

Defendants argue that any access to counsel that has been provided to attorneys at the Oregon Field Offices in the past somehow invalidates Plaintiffs' allegations of a policy to restrict access to counsel. *See* Resp. at 14. Not so. First, Defendants omit that, in the few times they have allowed attorneys to meet with clients at Macadam, they have still limited access. They cite Attorney Moberg's meeting with client E.O.R. as a success, *id.*, but conveniently omit that they refused to provide important legal documents during the visit, preventing her from providing complete advice, *see* Second Declaration of Josephine Moberg, ECF 33 ¶ 17. Plaintiffs have also submitted declarations repeatedly documenting how even when some attorney-client contact is allowed, it routinely falls below the standard required for meaningful access to counsel. *See* First Declaration of Leni Tupper, ECF 7 ¶¶ 19-21(describing the requirements for meaningful access, which are not met here); First Declaration of Josephine Moberg, ECF 5 ¶¶ 22-31 (describing the denial of access to her client because he had purportedly refused a visit, which was false, and only being allowed to meet for about 30 minutes).

## 2.  Plaintiffs have asserted multiple common questions.

The Ninth Circuit has made clear that "[s]o long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." *Parsons*, 754 F.3d at 674–75. Plaintiffs have identified multiple such questions. *See* Motion at 15. At minimum, at the core of

this case are the questions of whether Defendants engage in a policy and practice of restricting access to counsel before transferring detained Oregonians out of the state, and whether this denial of counsel causes harm to class members. The fact that Defendants answer both questions in the negative does not somehow negate them. *See* Resp. at 15-16.

Contrary to Defendants' contentions, whether Defendants have adopted an unlawful policy of limiting attorney access, and whether this policy harms class members, is both a factual and legal question that can be answered *without* engaging in "individualized inquiries" about each class member. Plaintiffs' claims are based on overarching policies and practices that apply to *all* putative class members, irrespective of individual factors such as whether they have already retained counsel. *See Parsons*, 754 F.3d at 676 (finding commonality where "[t]he Complaint does not allege that the care provided on any particular occasion to any particular inmate (or group of inmates) was insufficient . . . but rather that [Defendant] policies and practices of statewide and systemic application expose all inmates in [Defendant] custody to a substantial risk of serious harm"); *see also* Plaintiffs' Reply ISO Motion for PI, 21-22 (summarizing "copious evidence demonstrating that ICE routinely deprives even represented noncitizens of their right to counsel at the Oregon ICE offices"). Plaintiffs' putative class is thus similar to other recently certified or provisionally certified classes in which questions regarding the existence of an alleged overarching policy were determinative of commonality, irrespective of any differences in individuals' particular experiences. *See, e.g.*, *United Farm Workers*, 785 F. Supp. 3d at 725 (finding arguments against commonality "unavailing" where Plaintiffs' claims were based on an overarching practice and policy, not the result of any individualized assessment); *Escobar Molina*, 2025 WL 3465518, at *33 (granting provisional certification where "the legality of the challenged policy and practice is not a question that requires wading into 'fact-specific and individualized' determinations about each class members' arrest"); *Moreno*, 2014 WL 4911938, at *8 (finding commonality where "Plaintiffs are challenging the general policies and procedures used by Defendants" rather than "the reasonableness or constitutional of each individual decision").

    **3.  Plaintiffs request uniform legal relief that would remedy the claims of the class.**

Defendants are incorrect that there is not uniform legal relief for putative class members' claims. *Contra* Resp. at 19-21. All individuals in Plaintiffs' proposed class have been or are at risk of arrest for alleged civil immigration violations in Oregon, meaning that they are subject – now or in the future – to Defendants' continued unlawful practices of restricting access to counsel at the Oregon Field Offices. In this way, the proposed class is like the class provisionally certified in *Ramirez Ovando*, in which the district court concluded that "[a]ll class members, by virtue of being in Colorado without lawful status, are subject to ICE's continued illegal practices." 2025 WL 3293467, at *13. The relief that Plaintiffs seek – the ability to meaningfully access counsel at a crucial moment when Defendants are making custody and even removal decisions, *see, e.g.*, Second Chan Decl. ¶¶ 15, 16, 33 – would equally guarantee all class members the ability to avail themselves of their constitutional and statutory right to counsel. In other words, "the potential factual differences that Defendants identify" – the presence of retained counsel, or even individuals' ultimate decision to access counsel[13] – "do not affect Plaintiffs' 'entitlement to relief' on their claims about statutorily and constitutionally required *process* . . . So they are not the kind that destroy commonality." *L.G.M.L. v. Noem*, 2025 WL 2671690, at *8 (D.D.C. Sept. 18, 2025).

Defendants also argue that "[t]he due process protections at issue in Count I . . .  is [sic] not common among all proposed class members." Resp. at 20. Far from being a "well-settled" proposition, *contra id.*, Plaintiffs vehemently reject this interpretation of the Constitution. The Due Process Clause of the Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property without due process of law." U.S. Const. amend V.  Defendants argue that such process does not apply to some individuals in immigration custody. Resp. at 20. Defendants are wrong. To be sure, different statutory and regulatory rights to counsel may apply to different individuals detained at the Oregon

---

[13] As in *L.G.M.L.*, in which Defendants argued that some parents wanted their minor children deported to Guatemala in the middle of the night, here Defendants argue that some individuals do not want access to counsel. Resp. at 17-18. Not only does the presence of such a view not defeat commonality, but as in *L.G.M.L.*, "in any event Defendants do not appear to have sought" information about individuals' desire for representation before limiting individuals' access to counsel at the Oregon Field Offices. *See L.G.M.L. v. Noem*, 2025 WL 2671690, at *8.

Field Offices; but the Fifth Amendment right to counsel encompasses more. *See Arrey v. Barr*, 916 F.3d 1149, 1157 (9th Cir. 2019) ("Both Congress and [the Ninth Circuit] have recognized the right to retained counsel as being among the rights that due process guarantees to petitioners in immigration proceedings."); *Biwot*, 403 F.3d at 1098 ("The right to counsel in immigration proceedings is rooted in the [Fifth Amendment] Due Process Clause[.]"). The applicability of the Due Process Clause to Oregon's immigrant community members, unfortunately, thus appears to be yet another common question of law at issue in this case.

"Freedom from imprisonment . . . lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690; *see also Jimenez v. Bostock*, No. 3:25-cv-00570-MTK, 2025 WL 2430381 at *6-7. Thus, "[d]etention, including that of a non-citizen, violates due process if there are not 'adequate procedural protections' or 'special justification[s]' sufficient to outweigh one's 'constitutionally protected interest in avoiding physical restraint.'" *Perera v. Jennings*, 598 F. Supp. 3d 736, 742 (N.D. Cal. 2022) (second alteration in original) (quoting *Zadvydas*, 533 U.S. at 690). Similarly, the Ninth Circuit has held that "[i]n the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (quoting *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011)). The Supreme Court has long underscored this point. *See, e.g.*, *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." (citation omitted)); *Mathews v. Diaz*, 426 U.S. 67, 77 (1976) ("There are literally millions of [noncitizens] within the jurisdiction of the United States. The Fifth Amendment … protects every one of these persons from deprivation of life, liberty, or property without due process of law. Even one whose presence in this country is unlawful, involuntary, or transitory is entitled to that constitutional protection.") (internal citations omitted).

Plaintiff Leon X and all putative class members have an exceptionally strong interest in freedom from physical confinement and in an opportunity to be heard prior to any restraint of their liberty. *See*

*Mathews*, 424 U.S. at 333  (holding that due process also requires notice and "the opportunity to be heard 'at a meaningful time and in a meaningful manner'") (citations omitted). The liberty interest for Plaintiff Leon X and proposed class members is particularly weighty given the civil context of immigration detention. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (explaining that "[g]iven the civil context, [a noncitizen's] liberty interest is arguably greater" that the interest of parolees in the criminal context). All putative class members would thus benefit from a remedy in this case, which would ensure that their due process right to access counsel at a critical moment is upheld. *See* Plaintiffs' Reply ISO Motion for PI, 20-21 (applying *Mathews* balancing test to demonstrate the merits of Plaintiffs' due process claim).

### C.    Leon X's claims are typical of class members.

The test of typicality serves to ensure that "the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Under the "permissive standards" of Rule 23, "representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1141 (9th Cir. 2016). The typicality analysis considers factors including "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* Typicality inquiries "tend to merge" with the issues considered for commonality. *General Tel. Co. v. Falcon,* 457 U.S. 147, 157 (1982).

As discussed *supra* section I, Leon X has alleged concrete injury sufficient for standing. *Contra* Resp. at 22. He is squarely representative of other proposed class members because he alleges his fear of being injured by the same course of unlawful conduct: being deprived of his right to access counsel following a civil immigration arrest. Because he fears being subject to the same practices as other class members, his claims are typical of the putative class members. *See United Farm Workers*, 785 F. Supp. 3d at 726–27 (finding typicality met where proposed class representatives were subjected to the same Border Patrol practices as the putative class members and suffered the same injuries).

### D.     Leon X is an adequate class representative.

 "Whether the class representatives satisfy the adequacy requirement depends on 'the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.'" *Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) (*quoting Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir.1994)).

Defendants identify no conflict of interest between Leon X and the putative class, nor do they raise any concerns as to putative class counsel's ability to vigorously "to prosecute the action vigorously on behalf of the class." *See* Resp. at 23-24; *Kim v. Allison*, 87 F.4th 994, 1000 (9th Cir. 2023). Instead, Defendants' sole objection to Leon X's adequacy as a class representative is based on their arguments regarding commonality and typicality. *See* Resp. at 23-24.

For the reasons explained *supra*, Leon X's interests are closely aligned with the interests of putative class members. His testimony during the evidentiary hearing on December 2, 2025, further established that he fears the same deprivation of access to counsel that other putative class members would experience if detained in civil immigration enforcement actions in Oregon. His willingness to testify in open court, even given the concerns for his anonymity that the Court recognized in granting his motion to proceed under pseudonym, *see* ECF 88, further establishes that Leon X is not only willing but also able to vigorously represent the interests of the class. *See Mercado*, 2025 WL 2658779 at *21 (finding class representative adequate given possibility of future harm and that "[t]here is no evidence undermining the sincerity of plaintiff's eagerness to pursue the interests of the class"); *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2025) (finding class representative adequate where Respondents "challenge Petitioner's adequacy only by re-asserting their commonality and typicality arguments" and finding those elements met).

### IV.     Plaintiffs satisfy the requirements of Rule 23(b)(2).

Defendants are incorrect that Plaintiffs fail to meet the requirements of Rule 23(b)(2). Rule 23(b)(2) is "unquestionably satisfied," as here, when "members of a putative class seek uniform

injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *B.K. ex rel. Tinsley v. Snyder*, 922 F.3d 957, 971 (9th Cir. 2019). As explained *supra* section III.B.1., Plaintiffs challenge Defendants' policy and practice of restricting access to counsel for all individuals who have been or will be subject to civil immigration arrests in Oregon. Similar to the class challenge in *United Farm Workers*, Plaintiffs' "evidence contradicts Defendants' assertions, because it shows agents engaged in a "pattern and practice" of violating [constitutional] rights" that properly supports certification under Rule 23(b)(2). *See United Farm Workers*, 785 F. Supp. 3d at 729; *see also Ramirez Ovando*, 2025 WL 3293467, at *14 (finding "sufficient cohesiveness among class members under Rule 23(b)(2)" where ICE continues to engage in unlawful practices "[d]espite its own proclaimed policies").

Nor does the varying nature of class members' individual legal needs defeat the uniformity of the remedy sought. *Contra* Resp. at 25; *see Rodriguez v. Hayes*, 591 F.3d 1105, 1126 (9th Cir. 2010) (certifying class under Rule 23(b)(2)  (explaining that despite variations in individual class members' process, "all class members' seek the exact same relief as a matter of statutory or, in the alternative, constitutional right"); *see also Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994) ("Indeed, (b)(2) classes have been certified in a legion of civil rights cases where commonality findings were based primarily on the fact that defendant's conduct is central to the claims of all class members irrespective of their individual circumstances and the disparate effects of the conduct."). The nature, and impact, of an attorney's advice may differ depending on the procedural posture of the person who is detained- someone with a final order of removal will have different legal options than someone who is subject to expedited removal. *See* Resp. at 25. But regardless of the procedural posture, the right to counsel remains meaningful even if the advice an attorney gives will differ. *See, e.g., M-L-G-G- v. Wamsley*, No. 6:25-cv-02012-AA, 2025 WL 3539183 (D. Or. Dec. 10, 2025) (granting habeas to petitioner with a final removal order); *Y-Z-L-H- v. Bostock*, 792 F.Supp.3d 1123, 1135-36, 1146 (D. Or. 2025) (granting habeas to petitioner whose case had been dismissed for the purposes of placement in expedited removal). To properly advise anyone at risk of removal, regardless of their procedural posture, an attorney needs adequate access, time, confidentiality, and interpretation services, as well as

Page 18 – PLAINTIFFS' REPLY ISO MOTION FOR CLASS CERTIFICATION

the ability to review the legal documents corresponding to the case. *See* First Tupper Decl., ECF 7 ¶ 19. The appropriate remedy sought here is sufficiently uniform as to satisfy the requirements of Rule 23(b)(2).

**V.      Plaintiffs satisfy the requirements of Rule 23(b)(1)(A).**

In arguing that Plaintiffs do not satisfy Rule 23(b)(1)(A), Defendants' own examples demonstrate clearly why uniform class wide relief is both appropriate and necessary. *See* Resp. at 26-28. Defendants confirm that individuals in custody on different days "may have had different attorney access" not because they had different legal rights, or because they were subject to different custody determinations or requested rights waivers – but rather because Defendants decided to detain them on a day that attorneys were not allowed to access the Oregon field offices which were "closed to the public on weekends", or because of the timing of arrests, or because of a pre-scheduled transport run. Resp. at 27. Defendants also re-affirm that an individual's transfer out of Oregon occurs without any consideration of its impacts on their right to counsel. *Id.* at 27-28.

This proves Plaintiffs' very point- Defendants' policy is a policy of *no* access other than at Defendants' varying whims. Though they belabor that Plaintiffs will have different procedural postures in their immigration cases, *see id.* at 25, the access to counsel provided is clearly not based on that but instead on factors of Defendants' own creation. Moreover, courts have often granted classwide relief on access to counsel claims in the immigration context similar to that requested here. *See, e.g., Torres v. U.S. Dep't of Homeland Sec.*, No. EDCV 18-2604 JGB, 2020 WL 3124216, at *11 (C.D. Cal. Apr. 11, 2020) (granting relief that benefited a putative class that included all persons held at the Adelanto immigration detention center, both represented and unrepresented); *Vasquez*, 790 F.Supp.3d at 896-97 (granting relief to benefit all members of a putative class of persons held at B-18 of the Federal Building in Los Angeles).  The right to counsel should not be subject to Defendants' whims; it should be afforded uniformly to all class members swept up in Defendants' civil immigration enforcement actions.

**CONCLUSION**

The Court should certify Plaintiffs' proposed class, appoint Leon X as class representative, and designate Plaintiffs' undersigned counsel as class counsel. If the Court requires additional evidence to support certification, the Court should at minimum provisionally certify the class for the purpose of entering a preliminary injunction. *Carrillo v. Schneider Logistics, Inc.*, 2012 WL 556309, at *9 (C.D. Cal. Jan. 31, 2012) ("courts routinely grant provisional class certification for purposes of entering injunctive relief"), *aff'd*, 501 F. App'x 713 (9th Cir. 2012).

Dated: January 12, 2026.                     Respectfully submitted,

                                             /s/  Jordan Cunnings

                                             JORDAN CUNNINGS, OSB No. 182928
                                             jordan@innovationlawlab.org
                                             STEPHEN W MANNING, OSB No. 013373
                                             stephen@innovationlawlab.org,
                                             smanning@ilgrp.com
                                             TESS HELLGREN, OSB No. 191622
                                             tess@innovationlawlab.org
                                             KELSEY LYNN PROVO, OSB No. 145107
                                             kelsey@innovationlawlab.org
                                             NELLY GARCIA ORJUELA, OSB No. 223308
                                             nelly@innovationlawlab.org
                                             INNOVATION LAW LAB
                                             333 SW 5th Ave., Suite 200
                                             Portland, OR 97204-1748
                                             Telephone: +1 503-922-3042

                                             Attorneys for Plaintiffs