STEPHEN W MANNING, OSB No. 013373
stephen@innovationlawlab.org,smanning@ilgrp.com
TESS HELLGREN, OSB No. 191622
tess@innovationlawlab.org
JORDAN CUNNINGS, OSB No. 182928
jordan@innovationlawlab.org
KELSEY LYNN PROVO, OSB No. 145107
kelsey@innovationlawlab.org
NELLY GARCIA ORJUELA, OSB No. 223308
nelly@innovationlawlab.org
INNOVATION LAW LAB
333 SW 5th Ave., Suite 200
Portland, OR 97204-1748
Telephone: +1 503-922-3042

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### Eugene Division

| | |
|---|---|
| CLEAR CLINIC, PINEROS Y CAMPESINOS UNIDOS DEL NOROESTE, and LEON X, individually and on behalf of others similarly situated; <br><br> *Plaintiffs,* <br><br> v. <br><br> KRISTI NOEM, Secretary of the Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY ("DHS"); TODD LYONS, Acting Director of Immigration Customs Enforcement; LAURA HERMOSILLO, Seattle Acting Field Office Director, Immigration and Customs Enforcement and Removal Operations; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT ("ICE"); PETE FLORES, Acting Commissioner of Customs and Border Protection; and U.S. CUSTOMS AND BORDER PROTECTION ("CBP"), <br><br> *Defendants.* | Case No. 6:25-cv-01906-AA <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CLAIMS AGAINST CBP DEFENDANTS** |

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................... 2

LEGAL STANDARD ........................................................................................................... 6

      I.      Plaintiffs' Complaint Sufficiently Pleads Allegations Specific to
            CBP Defendants. .................................................................................................. 6

      II.     Plaintiffs' Amended Complaint is Not a "Shotgun Pleading". .............................. 10

      III.    Plaintiffs' Requested Relief Would Remedy Harms From CBP
            Defendants. ......................................................................................................... 11

      IV.    If the Court Finds the Pleading Standard Not Satisfied as to
            Defendant CBP, the Court Should Grant Plaintiffs Leave to
            Amend. ............................................................................................................... 13

CONCLUSION ................................................................................................................... 15

# INTRODUCTION

On November 12, 2025, Plaintiffs filed an amended complaint challenging Defendants' unlawful obstruction of access to counsel for individuals subject to civil immigration arrests in Oregon. First Amended Complaint for Declaratory and Injunctive Relief, ECF 39 ("FAC"). Defendants seek to dismiss Plaintiffs' claims only as to Defendants U.S. Customs and Border Protection ("CBP") and Acting CBP Commission Pete Flores (collectively, "CBP Defendants"). *See* Defendants' Motion to Dismiss Claims Against CBP Defendants 2, ECF 91 (hereinafter, "MTD"). Defendants make three arguments: that Plaintiffs lack "any factual allegations specific to CBP Defendants", MTD at 4-5; that the FAC impermissibly "lumps all Defendants together" as a "shotgun pleading", MTD at 5-7; and that Plaintiffs' have no "entitlement to relief as to CBP Defendants", MTD at 7.

Defendants' arguments are factually and legally incorrect. Plaintiffs' FAC sufficiently pleads allegations that, as assumed true at this stage of the case, demonstrate that CBP works alongside Defendant Immigrations and Customs Enforcement ("ICE") in carrying out escalating immigration enforcement in Oregon – including the relevant challenged conduct of depriving detained individuals of their access to counsel. Nor is the FAC an impermissible "shotgun pleading"; references to multiple Defendants accurately reflect the fact that the federal government has actively mobilized multiple federal agencies to implement its immigration enforcement agenda. And the relief that Plaintiffs seek would remedy the harms they allege against all Defendants – the deprivation of access to counsel – by requiring meaningful access to counsel at a crucial site and stage of individuals' detention at the Oregon ICE Field Offices. The Court should deny Defendants' motion.

**FACTUAL BACKGROUND**

Defendant CBP is a sub-agency of the Department of Homeland Security ("DHS"). FAC ¶ 23. Defendant DHS is the largest law enforcement agency in the country responsible for administering U.S. immigration laws, including sub-agencies CBP and ICE. Defendant ICE is responsible for the apprehension, detention, and removal of noncitizens. FAC ¶ 22. Defendant CBP is responsible for the apprehension, detention, and removal of noncitizens within 100 air miles of any external U.S. boundary. FAC ¶ 23. Defendant ICE is also responsible for the apprehension, detention and removal of noncitizens near the border and in the interior. FAC ¶ 21. A significant portion of the state of Oregon, including the cities of Portland, Eugene, and Medford (the sites of Oregon ICE Field Offices), is within 100 air miles of the United States' boundary.[1] In other words, Oregon falls not only within DHS's and ICE's remit, but also within CBP's immigration enforcement mandate. Defendants DHS, CBP, and ICE, and their leadership, including Defendant Flores, are all responsible for providing attorney access to individuals they detain in Oregon, in accordance with the law. FAC ¶¶ 17-23. The term "Defendants" – here, and in the FAC – is a broad reference encompassing *all* named Defendants, inclusive of Defendants CBP and Flores.

Following the Trump Administration's creation of an arrest quota of 3,000 individuals per day, "[t]he overriding message to agents and officers carrying out immigration operations on the

---

[1] *See* ArcGIS, "100-mile Border Zone", available at https://www.arcgis.com/apps/mapviewer/index.html?webmap=f43e135590624c8ebf959b02d4d0745b (last accessed Feb. 4, 2026). The Court should take judicial notice of this fact because it is "not subject to reasonable dispute" both because "it is generally known within the trial court's territorial jurisdiction" and because it "can be readily determined from sources whose accuracy cannot reasonably be questioned." *Clark v. Wells Fargo Bank*, No. 6:20-CV-00253-AA, 2021 WL 1232785, at *3 (D. Or. Mar. 31, 2021) (quoting Fed. R. Evid. 201(b)).

ground was to prioritize arrest numbers, regardless of the law." FAC ¶¶ 41-42. This directive applied to all Defendants. White House "Border Czar" Tom Homan made clear that Portland would be targeted: "I'm gonna head to Portland. . . . We're going to double down and triple down on sanctuary cities." FAC ¶ 44. Gregory Bovino, until recently the "commander at large" for U.S. Border Patrol[2]—a sub-component of Defendant CBP[3]—"posing with a gun on his hip and canisters on his vest" declared in a similar vein, "Folks, there is no such thing as a sanctuary city," and thereafter led a warrantless immigration enforcement raid at a Home Depot in Sacramento County, California. FAC ¶ 45; *see also* ¶ 40 n.17 (citing Elizabeth Findell, *et al.*, "The White House Marching Orders That Sparked the L.A. Migrant Crackdown," *The Wall Street Journal* (June 9, 2025), https://www.wsj.com/us-news/protests-losangeles-immigrants-trump-f5089877 (reporting on the activities of Border Patrol in Southern California, including denying attorney access to a woman after she had just given birth and had requested access to counsel). The Trump Administration—including Border Patrol Sector Chief Bovino—has made clear that "immigration agents [including CBP agents] should do whatever they need to deliver mass arrests and detentions—especially in places like Oregon[.]" FAC ¶ 47; *see also* FAC ¶ 3 n.2 (*citing* Jennie Traer, "Trump admin's 3,000 ICE arrests per day quota is taking focus off criminals and

---

[2] Mr. Bovino was removed from this leadership position after Alex Pretti was killed by CBP agents in Minneapolis, Minnesota; further underscoring the fluidity and collaboration between agencies, Mr. Bovino's oversight of federal immigration enforcement in Minnesota has now been delegated to "border czar" Tom Homan, the former head of ICE. See Nick Miroff, "Greg Bovino Loses His Job," *The Atlantic* (Jan. 26, 2026), https://www.theatlantic.com/politics/2026/01/greg-bovino-demoted-minneapolis-border-patrol/685770/.

[3] *See* U.S. Customs and Border Protection, CBP Organization Chart (last modified Mar. 20, 2025), https://www.cbp.gov/document/publications/cbp-organization-chart (showing that U.S. Border Patrol is a sub-entity that falls under CBP). The Court should take judicial notice of this fact because it is "not subject to reasonable dispute" because it "can be readily determined from sources whose accuracy cannot reasonably be questioned." *Clark v. Wells Fargo Bank*, No. 6:20-CV-00253-AA, 2021 WL 1232785, at *3 (D. Or. Mar. 31, 2021) (quoting Fed. R. Evid. 201(b)).

'killing morale': insiders warn," *NY Post* (June 17, 2025) ("I want ICE, Border Patrol, and our Great and Patriotic Law Enforcement Officers, to FOCUS on our crime ridden and deadline Inner Cities.")) ; *id.* 43 n.23 (same). Indeed, "President Trump personally fired an acting U.S. Attorney merely for reminding the Border Patrol chief to follow a court order and the Constitution." FAC ¶ 5 n.2 (*citing* Heather Knight and Hamed Aleaziz, "Trump Fired a U.S. Attorney Who Insisted on following a Court Order," *New York Times* (Sept. 26, 2025)).

Against this backdrop, Defendants, including CBP Defendants, "escalated their assaults on Oregon's immigrant communities" in the month preceding the filing of the FAC, with immigration enforcement practices "targeting farmworkers and Latinx communities" becoming "increasingly aggressive." FAC ¶ 7. These expanded immigration enforcement efforts draw not only upon ICE officers, but also upon officers mobilized from CBP. *See id.* ¶ 39 n. 13 (*citing* Press Release, DHS, *Statement from a DHS Spokesperson on Directives Expanding Law Enforcement and Ending the Abuse of Humanitarian Parole* (Jan. 21, 2025) (quoting DHS spokesperson statement that policy is intended to empower "CBP and ICE to enforce our immigration laws and catch criminal aliens")); ¶ 44 n.24 (citing interview with "border czar" Tom Homan who describes immigration enforcement as the responsibility of "border patrol" and "ICE"); *see also id.* ¶¶ 37 n. 7, 40 n. 19, 41 (citing articles describing mobilization of federal agents across law enforcement agencies to supplement ICE operations). The result has been that "Defendants have conducted widespread stops, arrests, and detentions of individuals across Oregon and denied those arrested access to counsel." FAC ¶ 49; *see also id.* ¶¶ 50, 51, 53, 58-76.

Individuals arrested in Oregon are generally held at one of three field offices operated by Defendant ICE. FAC ¶ 57. Defendants—including CBP Defendants—"maintain policies, patterns, and practices denying access to counsel to individuals detained in their Portland and Eugene

Offices." FAC ¶ 55; *id.* ¶¶ 58-59, 63-64, 68-69, 76-77 (detailing policies and practices that obstruct the right to access counsel). "ICE is responsible for ensuring its officers and facilities provide attorney access that complies with the rule of law, including at its Field Office sites." FAC ¶ 21. CBP too "is responsible for ensuring its officers provide attorney access in accordance with law to individuals they have detained." FAC ¶ 23. In other words, a CBP officer may not conduct an immigration arrest and then deny the detained individual access to counsel by transporting them to a facility where they will be withheld from counsel. As alleged, even though the Defendant ICE Field Offices are the sites of denial of attorney access, it is Defendants collectively who "arrest people, bring them into these facilities, and detain them" and then deny them access to counsel. FAC ¶ 57; *see also id.* ¶¶ 55, 77, 79. The Oregon ICE Field Offices routinely deny detained individuals access to counsel, whether those individuals are brought to the facility by CBP or by ICE. *See, e.g., id.* ¶¶ 58-67 (describing violations of access to counsel at Portland Field Office); ¶¶ 68-76 (describing violations of access to counsel at Eugene Field Office).

Notably, Defendants' immigration officers conceal their identity from those they seek to arrest and from the broader public, routinely making it impossible to distinguish an officer's particular agency within DHS. *See, e.g.*, FAC ¶ 7 (describing "masked immigration agents" carrying out enforcement operations within the state). Plaintiff PCUN's members "are terrified that *masked and unidentifiable immigration agents* will invade their workplaces without a warrant, grab them, handcuff them, and take them away without an opportunity to consult with an attorney." *Id.* ¶ 90 (emphasis added). "PCUN's members are fearful of being racially profiled and stopped by *immigration agents* while in public or at their places of employment." *Id.* ¶ 91 (emphasis added).

CLAIMS AGAINST CBP DEFENDANTS                                    Page  5

**LEGAL STANDARD**

Defendants seek to dismiss the claims in the First Amended Complaint against CBP Defendants under Rule 12(b)(6). *See* MTD at 2. Dismissal for failure to state a claim "under Rule 12(b)(6) is proper only when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013). "To survive a motion to dismiss, [under Rule 12(b)(6)] a complaint must contain sufficient factual material, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). For a Rule 12(b)(6) motion, "all well-pleaded allegations of material fact [are accepted as true] and construe[d] . . . in the light most favorable to the non-moving party." *Padilla v. Yoo*, 678 F. 3d 748, 757 (9th Cir. 2012) (citation and internal quotation marks omitted). "The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff." *Kurisu v. Svenhard's Swedish Bakery Supplemental Key Mgmt. Ret. Plan*, No. 3:21-CV-912-SI, 2022 WL 6733328, at *1 (D. Or. Oct. 11, 2022).

**ARGUMENT**

**I.    Plaintiffs' Complaint Sufficiently Pleads Allegations Specific to CBP Defendants.**

The First Amended complaint "contains sufficient factual material, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. "Rule 8 requires every 'pleading that states a claim for relief [to] contain' three things: 'a short and plain statement of the grounds for the court's jurisdiction,' 'a short and plain statement of the claim showing that the pleader is entitled to relief,' and 'a demand for the relief sought.'" *Gibson v. City of Portland*, No. 24-1663, 2026 WL 235118, at *16 (9th Cir. Jan. 29, 2026) (quoting Fed. R. Civ. P. 8(a)(1)–(3)). The "pleading standard Rule 8 announces does not require detailed factual allegations," and its

purpose "is to provide 'sufficient notice'" so the parties and the court can 'focus litigation on the merits of a claim.'" *Id.* at *16 (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

Contrary to Defendants' assertions, *see* MTD at 4–5, Plaintiffs have satisfied the pleading requirement, providing sufficient notice to CBP Defendants that when CBP agents participate in arresting, detaining and transferring noncitizens out of Oregon and denying them access to counsel, they are violating Plaintiffs' rights under the U.S. Constitution and federal law. As alleged—and must be taken as true at this stage—CBP Defendants are engaging in warrantless arrests and detentions in sanctuary jurisdictions, such as Oregon. FAC ¶ 5. Indeed, in the month leading up to the filing of the First Amended Complaint, CBP Defendants ramped up its immigration enforcement, targeting farmworkers and Latinx communities with escalating aggression. *Id.* ¶ 7. CBP Defendants have arrested and rapidly transferred individuals from the state, denying them the ability to speak with an attorney prior to their transfer. *Id,* ¶ 6; *see also id.* ¶¶ 49, 50, 51, 53. These actions have deprived Plaintiff CLEAR Clinic of access to their clients and prospective clients and have caused in Plaintiff Leon X and Plaintiff PCUN's members imminent fear of arrest and denial of access to counsel before Defendants transfer them out of Oregon and beyond the reach of their lawyers or prospective lawyers. FAC ¶¶ 83–87, 90. "If attorneys cannot access people detained in Oregon shortly after their arrest, those detained people thus become vulnerable to wrongful transfer beyond the reach of counsel and beyond any remedies a court may provide." FAC ¶ 79. Defendants are thus wrong that "the Amended Complaint lacks any factual allegations against [CBP]." MTD at 5.

Defendants also wrongly assert that "CBP Defendants are not involved in this litigation." *Id.* at 5. Plaintiffs' complaint clearly establishes the involvement and responsibility of CBP Defendants who, like other Defendants, are "responsible for ensuring . . . attorney access in

accordance with law to individuals" they detain. *See* FAC ¶¶ 22-23. As detailed *supra*, the FAC cites to Defendants' statements that make explicit CBP's role in immigration enforcement in Oregon. *See, e.g.*, FAC ¶¶ 3 n.2, 41-42, 43 n.23, 44, 47. Plaintiffs' allegations must be accepted as true at the 12(b)(6) stage. *Iqbal*, 556 U.S. at 678.

The fact that Plaintiffs are challenging the denial of access to counsel at ICE field offices does not absolve CBP officers from their responsibility to ensure access to counsel for the individuals they detain. *Contra* MTD at 5–7. While Plaintiffs do not allege that CBP Defendants are denying access to counsel at ICE field offices for those individuals *"detained by Defendant ICE,"* MTD at 5 (emphasis added), Plaintiffs can and do allege that CBP Defendants are responsible for denying attorney access to those *detained by Defendant CBP* when they transport them to the ICE field offices where they are held without access to counsel. FAC ¶¶ 58-76 (describing deprivation of access to counsel at the ICE Field Office, irrespective of the agency of the arresting officer). This allegation is not "speculative." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather the reality is that immigration agents—whether ICE, CBP or otherwise—are masked and unidentifiable. FAC ¶¶ 7, 90. As two branches of DHS tasked with carrying out immigration enforcement in Oregon, *see* FAC ¶¶ 22–23, they are also working in concert with one another. *See, e.g.*, FAC ¶¶ 3 n.2, 39 n.13, 40 n.17, 44 n.24, 45, 47 (describing collaboration of ICE and CBP in conducting immigration arrests). Additionally, to the extent that the factual allegations in Plaintiffs' complaint refers to Defendants together, rather than distinguishing between whether Defendant ICE or Defendant CBP is responsible for a given arrest resulting in the denial of access to counsel, this uncertainty is the direct result of Defendants' decision to shield the identify of its law enforcement agents, including officers' refusal to identify themselves at the ICE Field Offices themselves. *See, e.g.*, FAC ¶¶ 7 (describing how "Defendants' immigration enforcement practices

across Oregon have become increasingly aggressive, with masked immigration agents targeting farmworkers and Latinx communities for illegal stops and arrests"), 38 n.10 (referencing masked agents conducting courthouse arrests); *see also* ECF 5, Declaration of Josephine Moberg ¶¶ 12-13, 19-20 (describing two occasions in which officers at the Portland ICE field office refused to identify themselves).

References to multiple Defendants are intentional and encompass the actions of CBP as well as ICE officials. Plaintiff PCUN's members "have been harmed by the Defendants' ongoing practices and policies" because, among other reasons, they are "terrified that masked and unidentifiable immigration agents will . . . take them away without an opportunity to consult with an attorney." FAC ¶ 89. Plaintiff CLEAR Clinic similarly alleges harms from all Defendants. *Id.* ¶ 83 (describing how "Defendants have thwarted their efforts" to visit and contact clients and prospective clients by depriving them of access to counsel following an immigration arrest); *see also* FAC ¶¶ 84–87. Plaintiff Leon X "Leon X is particularly fearful that he is at risk of being detained in Oregon and swiftly transferred without the opportunity to consult with his existing immigration counsel," and seeks to represent a putative class "behalf of himself and all similarly situated individuals who have been arrested or are at risk of arrest for alleged civil immigration violations in this District by Defendants or entities working in concert with them." FAC ¶¶ 96–97.

Plaintiffs' pleadings thus "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" and also "plausibly suggest an entitlement to relief". *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Defendants' ability to sufficiently defend themselves is particularly fulfilled where Plaintiffs' challenge in identifying officers' relevant agency is due to all Defendants' decision to mask officers in immigration enforcement actions and refuse to identify agents even at the ICE Field Offices.

II.     **Plaintiffs' Amended Complaint is Not a "Shotgun Pleading".**

Whether pleadings are deficient "shotgun pleadings"—as Defendants' allege here—"will require judgment on the part of the district courts to determine those complaints that fail to provide the opposing parties and the district court with sufficient notice of the claims and their basis." *Gibson*, No. 24-1663, 2026 WL 235118, at *18 (9th Cir. Jan. 29, 2026). The Ninth Circuit recently held that "Rule 8 supplies a standard, not a rule," explaining that "we clarify today that Rule 8 provides district courts with an additional *tool* that they *may* use to dismiss shotgun pleadings when identified—not a *rule* necessarily *requiring* district courts to do so." *Id.* In other words, to the extent district courts identify shotgun pleadings, dismissal is permissive, not obligatory.

Defendants incorrectly argue that the FAC is a "'shotgun pleading' that lumps all Defendants together and does not specify which, if any, of its claims apply to CBP Defendants." MTD at 5. "In the absence of a well-pleaded allegation of joint conduct or an agency relationship, failing to allege specific facts relating to a specific defendant and lumping multiple defendants together is routinely rejected by courts." *Kurisu*, 2022 WL 6733328, at *3. Defendants ignore that Plaintiffs have alleged "joint conduct" among Defendants. First, Defendants ICE and CBP are two components of Defendant DHS, and both are tasked with immigration enforcement operations in Oregon. FAC ¶¶ 21–22. Defendants are working together—and at the direction of White House leadership—to conduct widespread arrests in sanctuary cities like Portland. *See* FAC ¶¶ 46-49. The allegations collectively plead are a result of the *joint nature of the conduct*: it is not just Defendant ICE denying access to counsel to plaintiffs, it is also CBP.  Second, and as explained *supra*, Defendants' immigration agents are *masked and unidentifiable*. *See, e.g.*, FAC ¶¶ 7, 90. CBP Defendants cannot use the fact that they are hiding their identity *both* as a sword with which to "become increasingly aggressive with masked immigration agents targeting farmworkers and

Latinx communities for illegal stops and arrests" FAC ¶ 7, and a shield to claim CBP Defendants "are not involved in this litigation," MTD at 5.

The cases on which Defendants rely, MTD at 5–6, are inapposite. None of the cases that Defendants cite involve the joint conduct at issue here, nor the reality of Defendants' agents deliberately concealing their identity, nor allegations of an ongoing patten and practice. *See Kurisu*, 2022 WL 6733328, at *3 (impermissibly lumping together "oral promises made to Plaintiffs about their retirement plains" without identifying which Defendant made which oral promise); *McKeon v. Cent. Valley Cmty. Sports Found.*, No. 1:18-CV-0358-BAM, 2018 WL 6436256, at *4 (E.D. Cal. Dec. 7, 2018) (impermissibly alleging discrimination based on Defendant's "status as owner/lessor of the real property" without any allegations that Defendant's "knew of and participated in" the discrimination); *Evans v. Sherman*, No. 119CV00226DADBAMPC, 2020 WL 1923176, at *3 (E.D. Cal. Apr. 21, 2020), *report and recommendation adopted*, No. 119CV00226DADBAMPC, 2021 WL 136394 (E.D. Cal. Jan. 14, 2021) (finding that individual plaintiff failed to identify which individual Defendants engaged in which conduct, despite the requirement to do so under Section 1983).

Plaintiffs' pleadings satisfy Rule 8 because they give "fair notice" to CBP Defendants; where CBP Defendants are working with Defendants ICE to engage in a pattern and practice of denying access to counsel and deliberately concealing their identities in do so, "it is not unfair to require [CBP Defendants] to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1215–16 (9th Cir. 2011).

### III. Plaintiffs' Requested Relief Would Remedy Harms From CBP Defendants.

Defendants misconstrue the declaratory and injunctive relief that Plaintiffs seek. *Compare* MTD at 8 *with* FAC at 42–43. Plaintiffs' claims seek relief running to all Defendants, including that Defendants are enjoined from "further violations of Plaintiffs' rights by requiring Defendants

to provide meaningful access to counsel for individuals held in their civil immigration custody before transferring such individuals outside of the District of Oregon." *Id.* at 43 (prayer for relief #8).

Among other relief, Plaintiffs are asking this Court to "Issue a preliminary and permanent injunction enjoining further violations of Plaintiffs' rights by requiring Defendants to provide meaningful access to counsel for individuals held in their civil immigration custody before transferring such individuals outside of the District of Oregon." FAC at 43 (prayer for relief #8). To vindicate the right to counsel under the First and Fifth Amendments and the Immigration and Nationality Act (Counts I, II & IV), the right to advise potential and existing clients (Count III), and the right to Due Process (Count V), Plaintiffs seek relief running equally to all named Defendants. These rights would not be fully realized were CBP Defendants carved out from the requirement to comply with them, given their active and integral role in carrying out immigration enforcement actions in the state of Oregon. While Defendants are not wrong that the *site* of denial of access to counsel is the ICE Field Offices, MTD at 7, they are incorrect that CBP Defendants are not involved in denial of access to counsel at the field offices, *see, e.g.*, FAC ¶¶ 22-23 (CBP and Defendant Flores are "responsible for ensuring . . . attorney access in accordance with law to individuals" CBP detains). Immigration officers—whether CBP, ICE, otherwise—arresting, detaining, and processing noncitizens at the ICE field offices must comport with the United States Constitution and federal laws. It cannot be that *only* Defendant ICE is required to do so, purely because Defendant ICE operates the building. *See* MTD at 7. Plaintiffs have sufficiently pled that CBP and ICE work in tandem to engage in immigration enforcement operations. And even if CBP Defendants are not responsible for the processing responsibilities at the ICE Field Offices, they maintain a responsibility to ensure that individuals they detain in immigration enforcement actions

are able to access their right to counsel; they cannot seek to evade this responsibility by transporting detained individuals to a site where such access is denied and turning a blind eye. *See Starr*, 652 F.3d at 1216 (denying motion to dismiss where complaint allegations "plausibly suggest that [the party] acquiesced in the unconstitutional conduct" of other officials). To make Plaintiffs whole, Plaintiffs' requested relief necessarily must also run to CBP Defendants.

## IV. If the Court Finds the Pleading Standard Not Satisfied as to Defendant CBP, the Court Should Grant Plaintiffs Leave to Amend.

In the alternative, should the Court determine that dismissal is warranted, it should be without prejudice to allow Plaintiffs to re-plead the complaint. *Gibson*, No. 24-1663, 2026 WL 235118, at *18 (9th Cir. Jan. 29, 2026) ("from a judicial policy perspective … allowing the party to re-plead the complaint, not only provides better notice to opposing parties of the claims against them, but prevents the needless expenditure of finite judicial resources."). Allowing Plaintiffs to amend their complaint would not be futile here. If given the opportunity to amend, Plaintiffs would provide additional allegations relating to Defendant CBP's involvement in the denial of access to counsel at the ICE Field Offices in Oregon.

The Trump Administration is coalescing government resources to achieve its mass deportation agenda, using agents from other federal agencies, including CBP, to carry out immigration raids alongside ICE within the interior of the United States. Declaration of Jordan Cunnings ("Cunnings Decl.") at Ex. 1. While ICE may be the most synonymous acronym for interior immigration enforcement in the United States, "[b]order patrol is increasingly involved in the [immigration enforcement] crackdown" and "some CBP officers have begun to play support roles at ERO [Enforcement and Removal Operations] offices away from the border." *Id.* Recent reporting describes Border Patrol, a sub-component of CBP, as having "become heavily involved in anti-immigration operations in US cities." *Id.* Former Border Patrol sector chief Gregory Bovino

has played a prominent role in the administration's interior enforcement surge, appearing in videos and photos of immigration raids in Minneapolis, Los Angeles, Charlotte, New Orleans and Chicago. *Id.*; *see also* Cunnings Decl. Ex. 2 (describing Bovino as leading the administration's big-city immigration campaign).

CBP agents are present in Oregon and working in tandem with Defendant ICE to achieve the federal government's mass deportation agenda. In early December 2025, at a two-day evidentiary hearing in this District, two CBP agents testified to carrying out an immigration enforcement operation in Woodburn, Oregon, where, in a single day, immigration agents, including agents with ICE and CBP, arrested and detained at least thirty Oregonians. *M-J-M-A- et al. v. Hermosillo*, No. 25-cv-02011-MTK (D.Or.) (Dec. 2-3, 2025); *see also* Cunnings Decl. Ex. 9 (describing testimony from ICE and CBP officers). The Border Patrol chief posted publicly about the agency's on-the-ground immigration enforcement efforts in Portland, Oregon, claiming to have apprehended "over 560 criminal illegal aliens" in Portland. *Id.* Ex. 8. On December 17, 2025, CBP boasted that the Border Patrol agents had apprehended 24 noncitizens in Oregon, *id.* Ex. 3, and on January 8, 2026, that the agency was conducting vehicle stops in Portland, Oregon, *id.* Ex 4. On January 9, 2026, Border Patrol agents shot and injured two Oregonians during a vehicle stop in Portland, Oregon. *Id.* Ex. 5; *see also id.* Ex. 7 (describing five CBP officer-involved shootings, including three that occurred while CBP agents were conducting immigration enforcement operations in the U.S. interior).

There is no question that CBP is heavily involved with interior enforcement in Oregon. High ranking CBP and Border Patrol officers continue to make repeated public statements that the agency is on the ground in Oregon carrying out the administration's mass deportation agenda. In this context, CBP officers must comply with federal laws and the U.S. Constitution. To the extent

the Court finds Plaintiffs' pleadings to lack sufficient specificity, Plaintiffs request an opportunity amend their complaint to add additional facts to support its allegations against Defendant CBP.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss as to CBP Defendants.

Dated: February 4, 2026.　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　/s/ Tess Hellgren
　　　　　　　　　　　　　　　　　　　TESS HELLGREN, OSB No. 191622
　　　　　　　　　　　　　　　　　　　tess@innovationlawlab.org
　　　　　　　　　　　　　　　　　　　STEPHEN W MANNING, OSB No. 013373
　　　　　　　　　　　　　　　　　　　stephen@innovationlawlab.org,
　　　　　　　　　　　　　　　　　　　smanning@ilgrp.com
　　　　　　　　　　　　　　　　　　　JORDAN CUNNINGS, OSB No. 182928
　　　　　　　　　　　　　　　　　　　jordan@innovationlawlab.org
　　　　　　　　　　　　　　　　　　　KELSEY LYNN PROVO, OSB No. 145107
　　　　　　　　　　　　　　　　　　　kelsey@innovationlawlab.org
　　　　　　　　　　　　　　　　　　　NELLY GARCIA ORJUELA, OSB No. 223308 nelly@innovationlawlab.org
　　　　　　　　　　　　　　　　　　　INNOVATION LAW LAB
　　　　　　　　　　　　　　　　　　　333 SW 5th Ave., Suite 200
　　　　　　　　　　　　　　　　　　　Portland, OR 97204-1748
　　　　　　　　　　　　　　　　　　　Telephone: +1 503-922-3042

　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiffs*